UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

CHARLES PATRICK PRATT and
A.E.P. through her parents and next friends
Bobbi Lynn Petranchuk and Todd Edward
Petranchuk,

                Plaintiffs,

    - vs. -

INDIAN RIVER CENTRAL SCHOOL
DISTRICT; INDIAN RIVER CENTRAL
SCHOOL DISTRICT BOARD OF
EDUCATION; JAMES KETTRICK,
Superintendent of Indian River Central School
District, in his official and individual
capacities; TROY DECKER, Principal of
Indian River High School, in his official and
individual capacities; and JAY BROWN,
JOHN DAVIS, KENDA GRAY, AMABLE
TURNER and PATRICIA HENDERSON, in
their individual capacities,

                Defendants.

**COMPLAINT** : 7:09-cv-411
(GTS/GHL)

**JURY DEMAND**

---

       Charles Patrick Pratt and A.E.P., through her parents and next friends Bobbi Lynn Petranchuk and Todd Edward Petranchuk, bring this civil rights action on behalf of themselves, as well as for the benefit of similarly situated students, to remedy past and continuing willful acts of unlawful and unconstitutional discrimination, harassment, and censorship by the Indian River Central School District (the "School District") and its governing body and current and former policymakers, officials, and employees.

## PRELIMINARY STATEMENT

       1.    Charles Patrick Pratt ("Charlie" or "Charles") endured a decade of discrimination and harassment based on sexual orientation and sex as a student in the Indian River Central

School District before he was forced to forsake his public education to escape the escalating abuse.  For Charlie, school was not a time to learn while making new friends – it was a course in cruelty that grievously impaired his education, health, and well-being, and threatened his dignity and personal safety.

2.      Beginning in Charlie's earliest years in the School District, students subjected him to antigay and sexist harassment, while school employees – ignoring multiple pleas from his parents – allowed the hostility to intensify.  In middle school, the discrimination and harassment became a near daily occurrence, as students attacked Charlie relentlessly and with impunity, hurling antigay and sexist slurs at him like "faggot," "sissy," "queer," and "fudgepacker" – sometimes many times in a single school day and often in the presence of teachers.  Students also physically intimidated and attacked Charlie in middle school, frequently shoving him in the hallways, knocking books from his hands and threatening to "beat [his] ass."

3.      At Indian River High School, the discriminatory abuse further intensified. In addition to the vicious name-calling, students repeatedly threatened Charlie with physical violence, vandalized his locker with antigay slurs, slammed him forcefully into walls and lockers, and humiliated him by spitting on him, hurling food and spitballs at him, grabbing and pinching his buttocks, taunting him with offensive gestures, and knocking his belongings from his hands.

4.      School District employees were aware of the rampant antigay and sexist harassment on campus but deliberately refused to undertake even the most basic corrective or remedial measures, despite these employees' clear authority and ability to do so.  Instead, staff members at the Indian River High School whose very job it was to monitor and supervise student behavior in the cafeteria and hallways frequently joined in on the harassment, ridiculing Charlie

with stereotypically effeminate gestures in front of other students and telling Charlie he was "disgusting" and "shouldn't be gay."

5.     Particularly egregious were the blatant discriminatory acts and callous indifference of Mr. James Kettrick, the Indian River High School principal at the time.  Rather than conduct investigations or implement remedial measures in response to known acts of antigay and sexist harassment, Mr. Kettrick responded to the abuse by blaming the victim, telling Charlie, for example, to "tone it down" if he wanted to avoid the verbal and physical intimidation and mistreatment from other students.

6.     Mr. Kettrick, whose responsibilities included ensuring the security and welfare of *all* students at Indian River High School, told Charlie's parents that their son's safety on campus could not be guaranteed.  When Charlie's parents decided that, to protect their son from further physical and emotional harm, they had no option other than to withdraw Charlie from Indian River High School, Mr. Kettrick did not propose or undertake any appropriate action to improve the school climate or change the conditions that led to this drastic measure.  Instead, he told Charlie's parents that he agreed with the decision.

7.     Mr. Kettrick's indifference and discrimination extended far beyond Charlie. Despite Mr. Kettrick's knowledge that antigay and sexist bullying was seriously impairing students' health and education, Mr. Kettrick refused to allow training of teachers to address the crisis, and he rejected proposals from Charlie and other students to be allowed to form a gay-straight alliance on campus.  Even after Charlie and another gay student were forced to withdraw to escape discriminatory harassment, Mr. Kettrick failed to amend the school's written policies to match state antiharassment law covering sexual orientation.

3

8.      Notwithstanding Mr. Kettrick's discriminatory policies at Indian River High School and his gross indifference to the abuse Charlie suffered there, Mr. Kettrick was appointed Superintendent of the Indian River Central School District in 2006.

9.      A.E.P. is Charlie's younger sister and currently is a sophomore at Indian River High School.  After seeing first-hand the destructive effects of discriminatory abuse endured by her older brother, A.E.P. was determined to create a safer, more supportive school environment for all students—regardless of sexual orientation—in the hope that no other student would be forced to endure the same harassment that drove her older brother from Indian River High.

10.     To this end, A.E.P. recently attempted to form a gay-straight student alliance at Indian River High School.   School administrators, however, have thwarted her attempts to organize and advocate on behalf of mistreated students.  Each time A.E.P. requested permission to form the student gay-straight alliance, school officials categorically, and unlawfully, denied her request.  The reason they gave was that they believed that other students and parents in the community would not approve of such a group.

11.     Meanwhile, harassment of students based on sex and sexual orientation continues at Indian River High, threatening the education, health, safety and well-being of students, and disrupting the school environment.  School District officials and other employees continue to ignore the discrimination.

12.     Accordingly, Plaintiffs seek a declaratory judgment, injunctive relief, and nominal, compensatory, and punitive damages to remedy violations of the federal Equal Access Act (the "EAA"), 20 U.S.C. § 4071 *et seq.*, the Free Speech Clause of the First Amendment to the United States Constitution as applied to the states by the Fourteenth Amendment, Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681 *et seq.*, the Equal Protection

Clause of the Fourteenth Amendment to the United States Constitution, the Free Speech Clause and the Free Association Clause of Article I § 8 of the New York State Constitution, section 296 of the New York Human Rights Law, and sections 40-c and 40-d of the New York Civil Rights Law.  Plaintiffs bring their claims pursuant to 42 U.S.C. § 1983, Title IX, the EAA, and state law.

13.     Immediate injunctive relief is necessary to protect the public interest and to stop the deprivation of A.E.P.'s rights under the EAA, 20 U.S.C. § 4071 *et seq.*, the First Amendment to the United States Constitution, Article I § 8 of the New York Constitution, New York Human Rights Law § 296, and New York Civil Rights Law § 40-c.

## JURISDICTION AND VENUE

14.     This Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. §§ 1331 and 1343 because the matters in controversy arise under the Constitution and laws of the United States.  Jurisdiction is also proper over A.E.P.'s claims under 28 U.S.C. §§ 2201-2202 because she seeks a declaration of her civil rights.  This Court has supplemental jurisdiction over Plaintiffs' related state law claims under 29 U.S.C. § 1367(a) because those claims arise out of the same case or controversy as Plaintiffs' federal claims.

15.     Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events that gave rise to Plaintiffs' claims took place within the Watertown Division of the Northern District of New York.

## PARTIES

### Plaintiffs

16.     Plaintiff CHARLES PATRICK PRATT ("Charlie" or "Charles") was a student at various schools in the Indian River Central School District in the County of Jefferson, New York, from approximately September 1993 through January 2004, and again for approximately three weeks in the fall of 2004.  Charlie is a natural person, a current resident of Jefferson County, and a citizen of the State of New York.  Charlie is a twenty-year-old gay male.  As a child and teenager, Charlie did not conform – and was perceived not to conform – to certain sexist stereotypes of "masculinity."   For example, certain aspects of Charlie's expressive gestures and manner of speaking were of a nature stereotypically associated with females.

17.     Plaintiff A.E.P. is currently a sophomore student at the Indian River High School in the County of Jefferson, New York.  A.E.P. is a natural person, a resident of Jefferson County, and a citizen of the State of New York.  A.E.P. is a fifteen-year-old female and sues here by and through her next friends, parents, and guardians, Bobbi Lynn Petranchuk ("Bobbi") and Todd Edward Petranchuk ("Todd").

### Defendants

18.     Defendant INDIAN RIVER CENTRAL SCHOOL DISTRICT (the "School District"), an education corporation and association existing pursuant to the New York Education Law, is a public school district predominantly in Jefferson County, New York.  The School District is a "person" within the meaning of 42 U.S.C. § 1983.  Upon information and belief, the School District and each of its component schools are recipients of federal financial assistance. The School District is non-sectarian and exempt from taxation pursuant to § 408 of New York's real property tax law. Theresa Primary School, Evans Mills Primary School (each a "Primary School" and together, the "Primary Schools"), Indian River Middle School (the "Middle

6

School"), and Indian River High School are schools in the School District.  Indian River High School has also been known as the Indian River Senior High School and the Indian River Central High School.

19.     Defendant INDIAN RIVER CENTRAL SCHOOL DISTRICT BOARD OF EDUCATION (the "Board of Education" or the "Board") is a public education corporation governing the School District pursuant to the laws of New York State.  The Board of Education is a "person" within the meaning of 42 U.S.C. § 1983.  Upon information and belief, the Board receives federal financial assistance.

20.     Defendant JAMES KETTRICK ("Mr. Kettrick"), sued in both his official and individual capacities, is the current Superintendent of the School District, a position he has held since 2006.  From 1993 to 2006, Mr. Kettrick was the Principal of Indian River High, including at all relevant times during which Charlie was a student there.  As Principal, Mr. Kettrick held final policymaking authority for the School District with respect to the day-to-day enforcement of equal opportunity, antiharassment, and antibullying policies at Indian River High.  He also held final policymaking authority for the School District with respect to the official approval of extracurricular student clubs and organizations at Indian River High.  On information and belief, at all relevant times Charlie was a student at Indian River High, Mr. Kettrick's approval was required for official recognition of a student extracurricular organization or club.  As Principal, Mr. Kettrick also had the ability and authority to take corrective action on behalf of the School District to stop discrimination and harassment at Indian River High and to discipline perpetrators of such discrimination and harassment.  Mr. Kettrick is a natural person and, upon information and belief, resides in Jefferson County, New York.

21.     Defendant TROY DECKER ("Mr. Decker"), sued in both his official and individual capacities, is the current Principal of Indian River High.  Mr. Decker has held that position at all relevant times during which A.E.P. has been a student at Indian River High.  Mr. Decker currently has—and has had at all relevant times during which A.E.P. has been a student at Indian River High—final policymaking authority for the School District with respect to the official approval of extracurricular student clubs and organizations at Indian River High.  At all relevant times that A.E.P. has been a student at Indian River High, Mr. Decker's approval has been required for official recognition of a student extracurricular organization or club.  Mr. Decker was also an Assistant Principal of Indian River High when Charlie was enrolled there.  Upon information belief, as Assistant Principal, Mr. Decker had the ability and authority to take corrective action on behalf of the School District to stop discrimination and harassment at Indian River High and to discipline perpetrators of such discrimination and harassment.  Mr. Decker is a natural person and, upon information and belief, resides in Jefferson County, New York.

22.     Defendant JAY BROWN ("Mr. Brown"), sued in his individual capacity, is currently an Assistant Principal of Indian River High.  Mr. Brown has held that position at all relevant times during which A.E.P. has been a student at Indian River High.  As Assistant Principal, Mr. Brown has the ability and authority to take corrective action on behalf of the School District to stop discrimination and harassment at Indian River High and to discipline perpetrators of such discrimination and harassment.  Mr. Brown is a natural person and, upon information and belief, resides in Jefferson County, New York.

23.     Defendant JOHN DAVIS ("Mr. Davis"), sued in his individual capacity, was an Assistant Principal of Indian River High when Charlie was a student there.  As Assistant Principal, Mr. Davis had the ability and authority to take corrective action on behalf of the

8

School District to stop discrimination and harassment at Indian River High and discipline perpetrators of such discrimination and harassment.  Mr. Davis is a natural person and, upon information and belief, resides in Jefferson County, New York.

24.     Defendant AMABLE TURNER ("Ms. Turner"), sued in her individual capacity, has been an employee of the School District during all relevant times at which Charlie and A.E.P. have been students at Indian River High.  Ms. Turner's primary job responsibilities have included, and still include, monitoring student conduct at Indian River High School in the lunch room, study hall, and/or other locations on campus to ensure a safe environment for all students. At all relevant times, Ms. Turner has had the ability and authority to take corrective action on behalf of the School District to stop discrimination and harassment among students occurring in school areas that she monitors and to discipline perpetrators of such discrimination and harassment.  Ms. Turner is a natural person and, upon information and belief, resides in Jefferson County, New York.

25.     Defendant KENDA GRAY ("Ms. Gray"), sued in her individual capacity, has been an employee of the School District during all times at which Charlie and A.E.P. have been students at Indian River High.  Ms. Gray's primary job responsibilities have included, and still include, monitoring student conduct at Indian River High School in the lunch room, study hall, and/or other locations on campus to ensure a safe environment for all students.  At all relevant times, Ms. Gray has had the ability and authority to take corrective action on behalf of the School District to stop discrimination and harassment among students occurring in school areas that she monitors and to discipline perpetrators of such discrimination and harassment.  Ms. Gray is a natural person and, upon information and belief, resides in Jefferson County, New York.

26.     Defendant PATRICIA HENDERSON ("Ms. Henderson"), sued in her individual capacity, has been an employee of the School District during all times at which Charlie and A.E.P. have been students at Indian River High.  Ms. Henderson's primary job responsibilities included, and still include, monitoring student behavior at Indian River High School in the lunch room, hallways, and/or other locations on campus to ensure a safe environment for all students. At all relevant times, Ms. Henderson has had the ability and authority to take corrective action on behalf of the School District to stop discrimination and harassment among students occurring in school areas that she monitors and to discipline perpetrators of such discrimination and harassment.  Ms. Henderson is a natural person and, upon information and belief, resides in Jefferson County, New York.


## STATEMENT OF FACTS

### Discrimination and Harassment of Charlie Based on Sexual Orientation and Sex

27.     From approximately September 1993 to January 2004, and briefly in the fall of 2004, Charlie was a student in the Indian River Central School District.  Charlie is a gay male, although he did not disclose this fact to school officials or his peers until the 2002-2003 school year when he was in eighth grade.

#### Theresa and Evans Mills Primary Schools

28.     From the fall of 1993 through the spring of 1998—from kindergarten through the end of fourth grade—Charlie was a student at Theresa Primary School and then Evans Mills Primary School.  As his Kindergarten teacher wrote in a Pupil Progress Report, Charlie entered school an "enthusiastic little boy who is always willing to help"; the teacher found it to be "a joy working with such a happy little boy."   And with a supportive instructor, Charlie departed Kindergarten after "work[ing] very hard . . . an asset to [the] classroom."

10

29.     As a young primary school student, however, Charlie had already begun to be harassed because of his sexual orientation,[1] as students began to taunt him with names like "gay" and "fairy."

30.     During this same period, Charlie also began to suffer harassment on the basis of sex.[2]  Specifically, Charlie's nonconformity to sexist stereotypes, including but not limited to his tendency to socialize with females and his relative disinterest in sports as compared to his male peers, made him the focus of additional ridicule.   Students taunted Charlie with words like "pussy," "sissy," and "girl," and purported to imitate him with stereotypically female mannerisms and gestures.   Students also mocked Charlie with feminized versions of his own name, calling him "Charlotte" and "Charlise."

**Indian River Middle School**

31.     Beginning with fifth grade in the fall of 1998 through the end of eighth grade in the spring of 2002, Charlie attended the Indian River Middle School (or "Middle School"), where the severe and pervasive harassment he experienced at the hands of his fellow students only escalated.  Students subjected him to ongoing antigay verbal harassment, calling him names like "gay," "fairy," "fag," "queer," "faggot," and "fudgepacker."   He again was ridiculed frequently based on sex and gender, as students purported to imitate him with mannerisms and gestures stereotypically considered female, and called him names like "pussy," "sissy," "Charlotte," and "Charlise."

---

[1]     References throughout the Complaint to discrimination and harassment "based on sexual orientation" "on the basis of sexual orientation" and "because of sexual orientation," as well as references to "antigay" discrimination and harassment, include but are not limited to discrimination and harassment based on perceived and/or presumed sexual orientation.

[2]     References throughout the Complaint to discrimination and harassment "based on sex," "on the basis of sex" or "because of sex," as well as references to "sex" or "sexist" discrimination and harassment, include but are not limited to discrimination and harassment because of nonconformity to stereotypes based on sex and gender.

32.     Throughout most of Middle School, the harassment of Charlie was a daily occurrence.  On the worst days, students hurled antigay and sexist slurs at Charlie many times in a single day and made him the focus of frequent physical harassment—including pushing, shoving, and knocking books from his hands.  Gym class was particularly difficult for Charlie, as it was in gym that he experienced some of the most regular physical abuse.  Beyond physical harassment, Charlie's classmates also threatened him with violence:  time and again, students told Charlie they would "beat [his] ass."

33.     Charlie's mother informed Charlie's Middle School teachers about the antigay and sexist harassment perpetrated against her son.  At one point she had a meeting with approximately five school employees to discuss the harassment, including the gym teacher, whose class was the site of particularly intense mistreatment.  Even after these meetings, however, no reasonable or appropriate remedial action was taken by the employees or administrators, and the harassment continued unabated.

34.     Bobbi also met with Charlie's Middle School guidance counselor—Brian Moore ("Mr. Moore")—to discuss the nature and frequency of the harassment.  But instead of taking Bobbi's reports seriously, Mr. Moore dismissed her concerns.  He told her, for example, that it was normal for middle school boys to engage in such harassment and that Charlie should endure it.  Mr. Moore also purported to reassure her by saying that the perpetrators of the harassment would in the future be "jealous" of Charlie for having female friends.

35.     Mr. Moore's reaction was especially troubling given his professed understanding of the damaging effects of bullying.  In a 2006 Watertown Daily Times article, for example, Mr. Moore expressed concern about the detrimental impact of bullying on a victim's social,

emotional, and intellectual development, noting that bullying could lead to absenteeism, chronic anxiety, and depression.

36.     Charlie's own efforts to verbally defend himself typically backfired, as school employees turned a deaf ear to antigay language and instead punished Charlie for responding. On one occasion in seventh grade, for example, in response to a student taunting him yet again with the word "faggot," Charlie called the student a "monkey face."   A teacher then referred Charlie to the assistant principal, and a "Notice of Disciplinary Action" was placed in Charlie's school record.   As was typical, the teacher who referred Charlie refused to listen to Charlie's explanation of events and, upon information and belief, took no action to discipline the student who had harassed Charlie.

37.     Many School District employees at the Middle School – including most if not all of Charlie's teachers – also personally witnessed the antigay and sexist harassment of Charlie. The harassment of Charlie was on full display for all to see, as students brazenly shouted out slurs like "faggot," "fag," and "sissy" in the school's hallways, cafeteria, and classrooms and on the bus to and from school.   But despite the public nature of the harassment and the complaints from Charlie's mother time and again to various authorities, school employees deliberately failed to intervene to stop the harassment.

38.     Other students discovered Charlie's sexual orientation when Charlie disclosed to a classmate during an on-line conversation during eighth grade that he was gay.   The classmate promptly printed the conversation, made copies, and distributed them to students at the Middle School.   School employees eventually took some of the copies.   Charlie has been openly gay ever since.

**Indian River High School**

39.     In the fall of 2002, Charlie became a student at Indian River High School.  Just as the severe and pervasive harassment based on both sexual orientation and sex had followed him in the move from Primary School to Middle School, it continued to follow him from Middle School to Indian River High.    Students continued to brazenly and conspicuously shout antigay slurs at him like "faggot" in the hallways, cafeteria and classrooms, and on the bus to and from school.

40.     They also continued their sexist harassment of him by, among other things, ridiculing him with offensive gestures.  Physical harassment and threats continued as well.  And as before, school employees who witnessed discriminatory harassment took no reasonable measures to stop it.  Some of them openly blamed Charlie.  On one occasion, for example, a teacher told Charlie that he was causing a nuisance after a student in the teacher's class loudly called Charlie a "fag" in the teacher's presence.

41.     As described further below, some employees directly participated in harassing Charlie.

42.     The ongoing discriminatory abuse continued to take a toll on Charlie's psychological and emotional health.  During his first year at the high school, he experimented with alcohol and drugs in the hope of establishing social connections and mitigating his emotional distress.  Although Charlie pursued treatment that summer, his emotional distress and social isolation continued to worsen in response to escalating harassment.

43.     Indeed, the antigay and sexist abuse directed at Charlie became even more aggressive during his second year at Indian River High.  With greater frequency and intensity than ever, students attacked Charlie with discriminatory slurs, pushed and shoved him forcefully in the hallways, knocked his belongings from his hands, and threatened him with violence.  On at

14

least one occasion, a student threatened Charlie's life.  Students also humiliated Charlie by frequently hurling spitballs, food and other objects at him, grabbing and pinching his buttocks, and repeatedly vandalizing his locker with the word "fag."

44.    High school employees, including Mr. Kettrick, were aware of harassment inflicted on Charlie but displayed utter and willful indifference to it.  In addition, some Indian River High employees actively participated in the harassment of Charlie.

45.    Defendants Ms. Gray and Ms. Turner — whose very job was to monitor student conduct in the lunch room, study hall and other areas — frequently engaged in the same conduct they were responsible for preventing.  They harassed and mocked Charlie based on his sexual orientation and sex, purporting to imitate Charlie by speaking and acting in a stereotypically effeminate manner when addressing him.  This included raising the pitch of their voice, changing the way they stood, speaking with a lisp, and making limp-wrist gestures.  This harassment and mockery took place on a near-weekly basis during Charlie's first and second years at Indian River High, often in front of other students. Ms. Turner also frequently berated Charlie by telling him he was "disgusting," that he "shouldn't be gay" and that he "should make babies."

46.    During his time at Indian River High School, Charlie was one of very few openly gay male students.  Another, Gregg Van Hoesen ("Gregg") – a student one year senior to Charlie – experienced the same type of antigay and sexist harassment as Charlie.  For example, students frequently called Gregg names such as "faggot" and mocked him for talking and acting "like a girl."  Gregg repeatedly informed Indian River High School employees, including Mr. Kettrick, of the severe, pervasive, and offensive harassment he faced on the basis of sexual orientation and sex.  Gregg also reported that teachers and staff members had utterly failed to respond to this

harassment.  Gregg's complaints to administrators began before Charlie was a student at Indian River High, and continued throughout Charlie's tenure.

47.     Gregg had also experienced harassment at the Middle School and had reported it to Middle School employees.  His middle school guidance counselor told him not to be open about his sexual orientation because she believed his openness caused other students to harass his ex-girlfriend.

48.     At Indian River High, despite Gregg's frequent reports of harassment, neither Mr. Kettrick nor any other employee took any reasonable or appropriate action to prevent future harassment or to ensure that staff appropriately responded.  Mr. Kettrick further made it clear to Gregg that Gregg could and should avoid mistreatment by conforming to sexist stereotypes and by remaining silent about his sexual orientation.  Mr. Kettrick even refused to take disciplinary action when another student punched Gregg in the face and caused a broken tooth and a bloody nose.  Instead, Mr. Kettrick attributed the attack to Gregg's sexuality and told Gregg that he had brought the attack on himself.

49.     Mr. Kettrick also intentionally discriminated against both Charlie and Gregg in his enforcement of school policies, including the policy regarding public displays of affection. In November 2003, a student walked into a stairwell at Indian River High and saw Charlie and Gregg – who had recently begun dating – exchanging a hug and kiss.  Later that day, Mr. Kettrick had Charlie and Gregg removed from class and sent to his office, where Mr. Kettrick and Ms. Henderson threatened to punish Charlie and Gregg with detention if they were again seen engaging in such affectionate conduct.  During this meeting, Mr. Kettrick revealed his awareness that an invidious and dangerous antigay environment existed among students, telling Charlie and Gregg that they should not kiss at school "for [their] own safety."

16

50.     The above-described meeting with Mr. Kettrick diverged from standard school procedures in several meaningful respects.  First, the school Handbook explains that public displays of affection by students "may," if they "persist," result in parental notification and a conference with administrators.  And with respect to heterosexual couples exchanging a hug and kiss at Indian River High, the School District's policy and practice was not—and is not—to pull students from class for a meeting with the principal or to threaten them with punishment.

51.     In early 2004, Charlie's emotional health sunk to new lows in response to a series of incidents involving vandalism of his locker. After the first incident – in which someone had scrawled the word "FAG" in thick black marker across his locker door – Charlie did his best to wipe off the marking, only to have it quickly replaced with the word "FAG" written again, this time in permanent marker.  Though Indian River High maintenance was able to remove even the permanent marker, little could be done when "FAG" again appeared on Charlie's locker—this time carved into the metal.

52.     On the heels of these traumatizing incidents, Charlie and his parents, Bobbi and Todd, demanded several meetings with Principal Kettrick.  They hoped to discuss ways to address the severe, pervasive, and offensive antigay and sexist harassment and discrimination Charlie experienced at school so as to ameliorate the severely detrimental effects that this harassment and discrimination had on Charlie's health, education, and well-being.

53.     At one of the first of these meetings with the principal and his parents, Charlie supplied Mr. Kettrick a written list of many of the incidents of harassment that had been inflicted upon him in the fall of 2003.  This included a detailed list of the names he was called on a regular basis—including "gay," "fairy," "fag," "queer," "faggot," and "fudgepacker"—and a report of the physical harassment he suffered due to his sexual orientation and sex.  Mr. Kettrick

photocopied this list.  Bobbi also told Mr. Kettrick that she had been reporting harassment of Charlie to teachers and other School District employees since Charlie was in kindergarten, but that no one from the School District had taken any meaningful action to help her son.  After years of feeling helpless, Bobbi hoped that Mr. Kettrick would heed her pleas and intervene on Charlie's behalf.

54.     To Bobbi's dismay, Mr. Kettrick proved even less helpful than those who preceded him.  His response was unequivocal, unreasonable, and discriminatory.  Mr. Kettrick did not, for example, propose any reasonable measures to address the harassment.  Instead, he treated Charlie as the problem—suggesting at one point that Charlie be placed alone in a classroom, every school day for the entire day, to be taught only basic subjects.  Mr. Kettrick only dropped this proposal when Bobbi pointed out that, even assuming it were feasible and otherwise acceptable, it would be insufficient to remedy the harassment when Charlie was on his way to and from the isolated classroom.

55.     Mr. Kettrick also told Charlie and his parents that Charlie needed to "tone it down" if he wanted to avoid antigay and sexist harassment.  This response discriminated against Charlie based on his sexual orientation, sex, gender, and gender expression.

56.     Mr. Kettrick did not offer to investigate the antigay or sexist harassment against Charlie and, upon information and belief, Mr. Kettrick did not investigate it.  Nor did Mr. Kettrick offer measures to increase or alter the monitoring of student behavior.  Mr. Kettrick also told Charlie and his parents, without engaging in any investigation, that he did not believe Charlie's report that teachers regularly failed to respond to antigay slurs.

57.     Mr. Kettrick also attempted to minimize the significance of the abuse and harassment Charlie reported.  At a meeting with Charlie and his parents, for example, Mr.

Kettrick stated that the students who frequently called Charlie "faggot" were not necessarily being discriminatory.  Mr. Kettrick also expressed the view that antigay harassment was nothing like racial harassment, and indicated that the school need not address the two kinds of harassment similarly.

58.     Mr. Kettrick also rejected out of hand reasonable solutions and remedies proposed by Charlie and his parents, including the development of a seminar or workshop to train teachers on the issue of antigay harassment.  Mr. Kettrick also refused to provide Charlie a mentor or counselor with whom to regularly discuss issues of harassment, how to handle such interactions with his peers and teachers, and his own personal concerns and fears about the hostile school environment.

59.     As described further below, Mr. Kettrick also unlawfully refused to allow the creation of a gay-straight alliance at Indian River High as a means to enhance support, tolerance and understanding within the school community.  He rejected the proposal despite actual knowledge of the severe and pervasive nature of harassment of Indian River High students based on sexual orientation and sex.  Instead, Mr. Kettrick further demonstrated his own stereotypes by telling Charlie to join the student drama club if he needed a supportive environment, despite the fact that Charlie had not expressed, and did not have, an interest in drama.

**Charlie Withdraws from Indian River High School**

60.     Finally, after a series of unsuccessful meetings with Mr. Kettrick in January 2004, Mr. Kettrick told Charlie and his parents that he could not guarantee Charlie's safety at Indian River High.  Bobbi informed Mr. Kettrick in response that, if that was the case, in order to protect her son, she had no choice but to remove Charlie from school.  Mr. Kettrick supported removing Charlie from school, and Charlie withdrew from Indian River High that term.

Motivated by the same concerns, Gregg likewise withdrew from Indian River High in early 2004.

61.     When Charlie and Gregg withdrew from Indian River High School, Mr. Kettrick had actual knowledge that their departure was the direct result of the severe, pervasive, and offensive harassment and discrimination based on sexual orientation and sex that they faced at Indian River High at the hands of students and School District employees and administrators, including Mr. Kettrick himself.

62.     Frustrated by his inferior educational opportunities outside school and feeling that he had no other options, Charlie attempted to return to Indian River High the following fall, where he was placed again in the ninth grade.  Still fearful and traumatized from years of mistreatment, however, he was unable to integrate and function in the school environment. Indeed, school policies with respect to harassment had not changed, and school employees continued to provide him no support in coping with the dangerous environment.  He left after approximately three weeks.

63.     Bobbi subsequently communicated with the School District assistant superintendent regarding Charlie's home schooling.   As the assistant superintendent also forwarded all written correspondence with Bobbi to the School District superintendent, the superintendent also had actual knowledge of Charlie's situation.  As a result of Charlie's and his mother's efforts, Charlie later earned his GED.

64.     Upon information and belief, even after two of his students were forced to drop out of Indian River High, Mr. Kettrick failed to take any appropriate or reasonable measure—as principal or later as School District superintendent—to investigate or remedy the hostile antigay and sexist environment at Indian River High and in the School District.  Nor did he take any step

20

to stop the dangerous harassment of students based on sexual orientation or sex, harassment that Mr. Kettrick himself understood to threaten the safety of Charlie, Gregg, and students like them.

65.     Moreover, the School District has known about the problem of antigay and sexist harassment since at least 1994.   That year, a survey of students in Jefferson County and neighboring areas found that sexual harassment and antigay name calling were a common problem at local schools.  A 1996 article in the Watertown Daily Times referred to this survey in noting that "lezzie" was a "common jibe" for females who did not conform to sexist stereotypes. The article quoted Mr. Kettrick as acknowledging the survey and its relevance to the School District. Mr. Kettrick also was quoted in the article as claiming that he was working to educate students on sexual harassment.

66.     And yet, despite these public statements and the later withdrawal of at least two students due to antigay and sexist harassment, Mr. Kettrick has publicly refused to acknowledge that a problem with harassment ever existed.  When questioned in 2006 concerning Charlie's withdrawal from Indian River High, Mr. Kettrick told the Watertown Daily Times that "[t]he atmosphere of harassment that they say exists simply does not."

**Indian River High Repeatedly Denies Permission to Form a Gay-Straight-Alliance**

67.     Distraught by the hostile antigay environment at Indian River High School, during Charlie's first year there, Gregg approached Mr. Kettrick and asked permission to found a student gay-straight alliance (GSA) as an officially recognized extracurricular student group. Charlie, who also supported the alliance, was eager to join the group if Mr. Kettrick approved Gregg's request.

68.     The purpose of the group was to educate the school community about the importance of tolerance, inclusion, and respect—regardless of sexual orientation, gender identity, and gender expression, and to bring attention to the harmful consequences of discriminatory

conduct.  The group, which was to be open to all students, also sought to provide gay, lesbian, bisexual, and transgender students and their allies a supportive outlet, and to work with other students to make the school a safer and more inclusive place for students who were, or who were perceived to be, gay, lesbian, bisexual, or transgender.

69.    Mr. Kettrick dismissed Gregg's request out of hand, despite the fact that, as stated on the School District's website, the Board of Education specifically recognizes extracurricular activities to be "an important part of the school . . . [and] supports an extracurricular program that provides a wide variety of opportunities for the students in our school."

70.    In fact, when it comes to other student groups with various purposes and interests, Indian River High has extended its full support.  Upon information and belief, student groups receiving official approval and recognition at the High School have included, at times relevant to this suit, the Key Club, Multi-Cultural Club, Ski Club, Stage Crew, Student Council, Students Against Driving Drunk, a religious student club, and Yearbook.  These clubs have been, at all relevant times, "noncurricular" for purposes of the EAA, 20 U.S.C. § 4071 *et seq.*

71.     On information and belief, all of the above student groups received permission from Indian River High's principal before they were recognized as official student groups, and all have been allowed to meet on school premises during noninstructional time.

72.     On information and belief, official student group status confers a number of benefits, including but not limited to the right:  (a) to be listed in the Handbook and on the School District and/or Indian River High website as an approved extracurricular club; (b) to use Indian River High's public address system; (c) to meet on Indian River High property; (d) to post club-related information at Indian River High; (e) to use Indian River High equipment and resources; and (f) to be photographed and listed in the Indian River High yearbook.

73.     When Gregg informed Mr. Kettrick that the Equal Access Act protected his right to form the GSA, Mr. Kettrick accused Gregg of making threats.  Mr. Kettrick continued to refuse to allow Gregg to form the GSA, to meet at school, or otherwise have official recognition.

74.     Charlie and Gregg together made a second attempt to found a GSA as an officially recognized student group at the beginning of Charlie's second year at the high school. The purposes of the GSA were substantially similar in all material respects to the alliance proposed to Kettrick the previous school year.  And as he had done when Charlie was a freshman, Mr. Kettrick again rebuffed their request.

75.     The refusal to allow or recognize a student GSA as alleged herein greatly hindered Charlie's expression, and contributed directly to other harms to Charlie alleged in this Complaint, including but not limited to extreme emotional distress.

76.     A.E.P. is Charlie's fifteen-year-old sister and entered Indian River High in the fall of 2007.  She is currently a sophomore at the school, where she regularly witnesses the use of antigay slurs like "faggot," including during class time.  On one occasion, a student commented to her and other classmates that "all fags deserve to die."  Cognizant of the treatment her brother endured at Indian River High, and recognizing that antigay harassment remains a problem years after Charlie and Gregg were driven from the school, A.E.P. recently sought to form the GSA that school officials had denied to her older brother.

77.     In October 2008, A.E.P. sought permission from the current Indian River High School assistant principal, Mr. Jay Brown, to form an officially recognized GSA.  The purposes of the alliance were—and remain—substantially similar in all material respects to the alliance proposed in earlier years by Charlie and Gregg.

78.     Particularly because of what happened to her brother, A.E.P. is determined to create an inclusive organization to help teach others in the school community that gay people are entitled to equal respect.  Other students have indicated their intent to join the GSA once it is formed.

79.     Following Mr. Kettrick's footsteps, Mr. Brown rejected A.E.P.'s request, unreasonably proposing that a GSA might be more appropriate in about two years—when A.E.P. will be on the verge of graduating high school.

80.     Dissatisfied with that response, in November 2008, A.E.P. sought permission to form the GSA directly from the current Indian River High principal, Mr. Troy Decker.  Like Mr. Kettrick and Mr. Brown before him, Mr. Decker rejected the proposal despite having actual knowledge of Indian River High's hostile antigay environment.  Indeed, Mr. Decker effectively acknowledged to A.E.P. that gay and lesbian students may face difficulties at school, but he told A.E.P. that they should go to the guidance office to discuss their problems and could not form a GSA.  Mr. Decker further admitted that the basis for his denial was content-based and viewpoint-based discrimination.  Specifically, Mr. Decker claimed the GSA would upset parents and students.  To date, Mr. Decker and Indian River High have continuously refused to approve A.E.P.'s request to be allowed to form a GSA.

81.     The refusal to allow or recognize a student GSA as alleged herein has hindered A.E.P.'s expression and that of other students.

82.     Defendants, including but not limited to Mr. Kettrick, Mr. Decker and Mr. Brown, exacerbated and continue to exacerbate the antigay and sexist hostile environment at the High School by repeatedly refusing to allow or recognize a GSA.  The repeated refusals reinforce the

message that lesbian, gay, bisexual and transgender students and their allies are not entitled to equal respect and inclusion within the school community.

**School Officials' Failure to Amend Written Policies**

83.    Over six years have passed since the state legislature expressly incorporated sexual orientation into antidiscrimination provisions governing schools.  *See* New York Civil Rights Law § 40-c; New York Human Rights Law §§ 291, 296(4).  Six years have also passed since the state began requiring schools to collect detailed information about harassment at school, including harassment based on sexual orientation.  *See* 8 N.Y.C.R.R. § 100.2(gg)(1). Despite these changes to the law, and despite the withdrawal of at least two students due to antigay and sexist harassment, the School District has not amended its written policies and handbooks to prohibit discrimination based on sexual orientation.

84.    The School District's Equal Opportunities Public Notice, which has been endorsed by the Board of Education and appears in the Indian River High School Handbook on the School District website, states only that "students, parents, employees, and the general public that [the School District] . . . offers . . . employment and educational opportunities, . . . without regard to gender, race, color, national origin or handicap."

85.    An identical policy statement – again lacking mention of sexual orientation – appears in the School District's handbook for athletes.

86.    Upon information and belief, similar statements and publications by the School District and Board during Charlie's tenure as a student there likewise excluded any reference to sexual orientation.

87.    The only reference to harassment based on sexual orientation in the Indian River High School Handbook currently available on the District website appears in a section entitled "Uniform Violent Incident Report System Regulation," which contains a partial excerpt from the

25

"Definitions" section of a state regulation governing school districts' duty to annually report certain forms of misconduct to the state.  *See* 8 N.YC.C.R.R. § 100.2(gg)(1).  Thus, while the School District appears to recognize in the Handbook that state law requires district officials to record and report to the state certain forms of harassment at school, including harassment based on sexual orientation, the very same Handbook fails to actually prohibit such harassment or to include sexual orientation in its equal opportunity statement for students.

88.     Particularly in view of the withdrawal of at least two students from Indian River High due to antigay and sexist harassment, the District's ongoing refusal to take even the simple measure of amending its written antidiscrimination policies to include sexual orientation provides additional evidence of its deliberate indifference, if not outright hostility, to the rights of its students, including and especially its gay, lesbian and bisexual students.

**The School District Perpetuated an Antigay and
Sexist Environment that Seriously Damaged Plaintiffs**

89.     The specific incidents of discrimination, harassment, and failure to act alleged herein are merely representative of the incidents suffered by Charlie during his tenure in the Indian River School District.  An exhaustive list would be too lengthy to detail in this Complaint.

90.     At all relevant times, all Defendants were acting under color of state law.  At all relevant times, the Defendants who are employees of the Board of Education and/or of the School District were acting within the course and scope of their employment.

91.     The discrimination and harassment based on sexual orientation and sex directed at Charlie described herein took place during school hours and on school grounds at the Primary Schools, Middle School and Indian River High, as well as on bus rides to and from these schools. Discrimination and harassment took place in classrooms, school hallways, locker rooms, and in

other settings over which the School District and its officials and employees had disciplinary authority over the harassers.

92.     Upon information and belief, School District officials and employees at the Primary Schools, Middle School, and Indian River High – including but not limited to Defendants Mr. Kettrick, Mr. Decker, Mr. Davis, Ms. Gray, Ms. Turner and Ms. Henderson – deliberately, purposefully, and intentionally failed to undertake reasonable or appropriate investigative, disciplinary, preventive, remedial, or corrective measures in response to the antigay and sexist harassment alleged herein, despite the ability and authority to do so on behalf of the School District, and despite actual knowledge that the harassment was occurring to Charlie and had been occurring to other students as early as 1994.  This failure to act departed from the procedures of the Primary Schools, Middle School, Indian River High, and the School District for dealing with other forms of harassment, violence, and peer abuse.

93.     When he was principal of Indian River High, Defendant Mr. Kettrick had actual knowledge that the educational environment was hostile and dangerous for students who were gay or perceived to be gay as well as for students who did not conform, or were perceived not to conform, to sexist stereotypes.  He was aware, for example, of the pervasive use of antigay slurs, threats, and acts of violence directed at gay students and gender-nonconforming students.  Mr. Kettrick also had actual knowledge of the ongoing failures of Indian River High faculty and staff to respond to antigay and sexist harassment in an appropriate, reasonable, or nondiscriminatory manner.

94.     Defendants acted with deliberate indifference to Plaintiffs' clearly established rights and with the intent to discriminate based on sexual orientation and sex.   Defendants also

acted with the intent to suppress and to discriminate against expression that was supportive of lesbian, gay, bisexual, and/or transgender people.

95.    Defendants' acts and omissions involving censorship, harassment and discrimination as alleged in this Complaint were and continue to be motivated by evil motive and intent.   These acts and omissions involved and continue to involve reckless and callous indifference to the federally protected rights of students including Charlie and A.E.P.

96.    The acts and omissions of Defendants not only failed to remedy, but also fostered and promoted, the harassment of Charlie by other students and by District employees.

97.    Upon information and belief, the acts and omissions of censorship, harassment, and discrimination committed by School District employees alleged herein reflected, and were made pursuant to, the policies and practices of the School District and the Board of Education. These acts and omissions were sufficiently persistent, widespread, permanent, and well-settled so as to constitute a custom of the School District and Board of Education with the force of law. The discriminatory, harassing, and otherwise unlawful acts and omissions by School District employees were so manifest as to imply the acquiescence of senior policy-making officials.

98.    Upon information and belief, neither the School District, the Board of Education, or any of the School District's policymakers, officials, administrators, or other employees have ever provided, at any time relevant to this Complaint, adequate training to administrators, faculty, or staff with respect to discrimination, bullying, or harassment based on sexual orientation or sex.  This failure has occurred despite actual knowledge by relevant policymakers, officials, administrators, and employees of the prevalence of antigay and sexist discrimination and harassment by School District students and employees.  The failure to provide adequate training is a direct and proximate cause of the School District employees' discrimination against

and harassment of Charlie and their failure to adequately address the discrimination and harassment perpetrated against him by others.

99.     Upon information and belief, at all times relevant to this suit, Defendants have had and enforced policies and procedures to prevent and remedy harassment, discrimination, and violence suffered by students who are, or who are perceived to be, heterosexual, as well as students who conform to, or are perceived to conform to, sexist stereotypes.  School District officials and employees, including officials and employees at the Primary Schools, Middle School, and Indian River High, also took investigatory, disciplinary, and other corrective action in response to the harassment of students similarly situated to Charlie when that harassment was not based on sexual orientation or perceived nonconformity to sexist stereotypes.

100.     Upon information and belief, at all times relevant to this suit, Defendants have had and enforced policies and procedures to prevent and remedy harassment, discrimination, and violence directed at female students.  School District officials and employees, including officials and employees at the Primary Schools, Middle School, and Indian River High, also took investigatory, disciplinary, and other corrective action in response to the harassment of female students who were otherwise similarly situated to Charlie.

101.     Upon information and belief, at all times relevant to this suit, Defendants have had and enforced policies and procedures to provide support services to students who are victims of trauma or peer abuse at school, where those students are female, gender-conforming, and/or heterosexual.  Defendants deliberately failed to provide such services on an equal basis to Charlie because of his sexual orientation and sex.

102.     Defendants' deliberate indifference, as well as their acts and omissions involving censorship, discrimination, and harassment as alleged herein, caused Charlie to suffer severe and

extreme emotional distress and psychological damage, including but not limited to an inability to concentrate on his studies, depression, debilitating fear, despair, anger, humiliation, and anxiety. Furthermore, as a result of Defendants' acts and omissions, Charlie lost substantial amounts of schooling and was deprived of a high school diploma.  The lack of a high school diploma has had a serious adverse impact on Charlie's academic, professional, and financial future.  Absent Defendants' acts and omissions alleged herein, Charlie would have received a high school diploma from Indian River High.  Defendants' unlawful and discriminatory acts and omissions were the direct and proximate cause of the harms to Charlie herein alleged.

103.    Upon information and belief, the decisions to refuse to allow or recognize a student GSA as described herein were made pursuant to a policy, practice, and custom of the School District and the Board of Education.

104.    The harassment of students based on sexual orientation and/or sex by a public school district or its officials or employees bears no substantial or rational relationship to any compelling, important or legitimate government interest.

105.    Acts or omissions by school districts, their officials and/or employees that foster, encourage, condone or allow harassment based on sexual orientation and/or sex bear no substantial or rational relationship to any compelling, important or legitimate government interest.

106.    The refusal to allow A.E.P. to form a GSA as alleged herein has caused and continues to cause irreparable harm to A.E.P., for which A.E.P. has no adequate remedy at law.

107.    Allowing A.E.P. to form a student GSA with official recognition by Indian River High and the School District will serve the public interest.

## FIRST CLAIM FOR RELIEF

**Equal Access Act, 20 U.S.C. § 4071 *et seq.***
**Violations of the Equal Access Act**

(Brought by Charles Pratt Pursuant to 20 U.S.C. § 4071 *et seq.* and 42 U.S.C. § 1983 Against the School District, the Board of Education, and Mr. Kettrick in his official and individual capacities)

108.    Plaintiffs incorporate by reference and reallege paragraphs 1 to 107 of this Complaint.

109.    The above-described acts and omissions of the School District, the Board of Education, and Mr. Kettrick violated Charles's clearly established rights under the Equal Access Act.

110.    Upon information and belief, Indian River Central School District and Indian River High School have received federal financial assistance at all times relevant to this Complaint.

111.    At all relevant times, Indian River High operated a limited open forum pursuant to the Equal Access Act, 20 U.S.C. § 4071 *et seq.*, in that it permitted noncurriculum-related student groups to meet on school premises during noninstructional time and provided these groups with certain privileges and resources.

112.    Because Indian River High maintains a limited open forum, Indian River High may not deny equal access or a fair opportunity to, or discriminate against, any students who seek to conduct a meeting within the limited open forum on the basis of religious, political, philosophical, or other content or viewpoint of the speech at such meeting.

113.    These Defendants violated the Equal Access Act by denying Charles equal access to Indian River High's limited open forum on the basis of impermissible content and viewpoint based discrimination.

114.    These Defendants' violations of Charles's rights under the Equal Access Act are the actual, direct, and proximate cause of injuries suffered by Charles as alleged herein.

115.    Accordingly, Plaintiff Charles Pratt requests judgment in his favor against the School District, the Board of Education, and Mr. Kettrick as set forth in the Prayer for Relief.


### SECOND CLAIM FOR RELIEF

**Equal Access Act, 20 U.S.C. § 4071 *et seq.*
Violations of the Equal Access Act**

(Brought by A.E.P. pursuant to 20 U.S.C. § 4071 *et seq.* and 42 U.S.C. § 1983 Against the School District, the Board of Education, Mr. Kettrick and Mr. Decker in their official and individual capacities, and Mr. Brown in his individual capacity)

116.    Plaintiffs incorporate by reference and reallege paragraphs 1 to 107 of this Complaint.

117.    The above-described acts and omissions of the School District, the Board of Education, Mr. Kettrick, Mr. Decker, and Mr. Brown violated and continue to violate A.E.P.'s rights under the Equal Access Act.

118.    Upon information and belief, Indian River Central School District and Indian River High School have received federal financial assistance at all times relevant to this Complaint.

119.    Indian River High has created and operated a limited open forum pursuant to the Equal Access Act, 20 U.S.C. § 4071 *et seq.*, in that it permits noncurriculum-related student groups to meet on school premises during noninstructional time and provides these groups with certain privileges and resources.

120.    Because Indian River High maintains a limited open forum, Indian River High may not deny equal access or a fair opportunity to, or discriminate against, any students who

seek to conduct a meeting within the limited open forum on the basis of religious, political, philosophical, or other content or viewpoint of the speech at such meeting.

121.    These Defendants violated and continue to violate the Equal Access Act by discriminating against A.E.P. and denying her equal access to Indian River High's limited open forum on the basis of impermissible content and viewpoint based discrimination.

122.    These Defendants' ongoing violations of A.E.P.'s rights under the Equal Access Act are the actual, direct, and proximate cause of injuries suffered by A.E.P. as alleged herein.

123.    Accordingly, Plaintiff A.E.P. requests judgment in her favor against the School District, the Board of Education, Mr. Kettrick, Mr. Decker, and Mr. Brown as set forth in the Prayer for Relief.


### THIRD CLAIM FOR RELIEF

**U.S. Constitution Amendment I**
**Denial of Free Speech and Free Association**

(Brought by Charles Pratt Pursuant to 42 U.S.C. § 1983 Against the School District, the Board of Education, and Mr. Kettrick in his official and individual capacities)

124.    Plaintiffs incorporate by reference and reallege paragraphs 1 to 107 of this Complaint.

125.    The above-described acts and omissions of the School District, the Board of Education, and Mr. Kettrick violated Charles's rights under the First Amendment to the United States Constitution as applied to the states by the Fourteenth Amendment, in that:

      a.    These Defendants abridged Charles's freedom of speech and freedom of association;

b.      These Defendants discriminated against Charles based on the content and viewpoint of his expression and expressive association; and

c.      These Defendants created and maintained a limited public forum for student expression and association, from which they excluded Charles in a manner that constitutes impermissible content-based and viewpoint-based discrimination. These Defendants' restrictions on expression and association were unreasonable in light of the purposes served by the forum.

126.   Content-discriminatory and viewpoint-discriminatory restrictions on speech by a school district or its officials or employees against a student based on his or her expression of support for lesbian, gay, bisexual, and/or transgender individuals bears no substantial or rational relationship to any compelling, important, or legitimate government interest.

127.   These Defendants' violations of the First Amendment are the actual, direct and proximate cause of injuries suffered by Charles as alleged herein.

128.   Accordingly, Plaintiff Charles Pratt requests judgment in his favor against the School District, the Board of Education, and Mr. Kettrick as set forth in the Prayer for Relief.

## FOURTH CLAIM FOR RELIEF

### U.S. Constitution Amendment I
### Denial of Free Speech and Free Association

(Brought by A.E.P. Pursuant to 42 U.S.C. § 1983 Against the School District,
the Board of Education, Mr. Kettrick and Mr. Decker in their official and individual capacities,
and Mr. Brown in his individual capacity)

129.   Plaintiffs incorporate by reference and reallege paragraphs 1 to 107 of this Complaint.

130.    The above-described acts and omissions of the School District, the Board of Education, Mr. Kettrick, Mr. Decker, and Mr. Brown violated A.E.P.'s rights under the First Amendment to the United States Constitution as applied to the states by the Fourteenth Amendment, in that:

    a.    These Defendants have abridged and are continuing to abridge A.E.P.'s freedom of speech and freedom of association;

    b.    These Defendants have discriminated and are continuing to discriminate against A.E.P. based on the content and viewpoint of her expression and expressive association; and

    c.    These Defendants created and maintained a limited public forum for student expression and association, from which they have excluded and continue to exclude A.E.P. in a manner that constitutes impermissible content-based and viewpoint-based discrimination. Defendants' restrictions on expression and association are unreasonable in light of the purposes served by the forum.

131.    Content-discriminatory and viewpoint-discriminatory restrictions on speech by a school district or its officials or employees against a student based on his or her expression of support for lesbian, gay, bisexual, and/or transgender individuals bears no substantial or rational relationship to any compelling, important, or legitimate government interest.

132.    These Defendants' violations of the First Amendment are the actual, direct and proximate cause of injuries suffered by A.E.P. as alleged herein.

133.    The public interest will be vindicated by protecting student expression and association in accordance with the First Amendment.

134.    Accordingly, Plaintiff A.E.P. requests judgment in her favor against the School District, the Board of Education, Mr. Kettrick, Mr. Decker, and Mr. Brown as set forth in the Prayer for Relief.

## FIFTH CLAIM FOR RELIEF

**U.S. Constitution Amendment XIV**
**Denial of Equal Protection on the Basis of Sexual Orientation**

(Brought by Charles Pratt Pursuant to 42 U.S.C. § 1983 Against the School District,
the Board of Education, Mr. Kettrick and Mr. Decker in their official and individual capacities,
and Mr. Davis, Ms. Turner, and Ms. Gray in their individual capacities)

135.    Plaintiffs incorporate by reference and reallege paragraphs 1 to 107 of this Complaint.

136.    The above-described acts and omissions of the School District, the Board of Education, Mr. Kettrick, Mr. Decker, Mr. Davis, Ms. Turner, and Ms. Gray violated Charles's clearly established rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution in that:

a.    These Defendants intentionally discriminated against Charles on the basis of sexual orientation and/or because of Charles's membership in a class of people defined as lesbian, gay and/or bisexual;

b.    Without even a rational basis or legitimate government interest, and based on invidious animus, these Defendants intentionally treated Charles differently than other similarly situated students on the basis of sexual orientation.

137.    These Defendants' violations of Charles's rights under the Fourteenth Amendment are the actual, direct, and proximate cause of injuries suffered by Charles as alleged herein.

138.   Accordingly, Plaintiff Charles Pratt requests judgment in his favor against the School District, the Board of Education, Mr. Kettrick, Mr. Decker, Mr. Davis, Ms. Turner, and Ms. Gray as set forth in the Prayer for Relief.

## SIXTH CLAIM FOR RELIEF

**U.S. Constitution Amendment XIV**
**Denial of Equal Protection on the Basis of Sex**

(Brought by Charles Pratt Pursuant to 42 U.S.C. § 1983 Against the School District, the Board of Education, Mr. Kettrick and Mr. Decker in their official and individual capacities, and Mr. Davis, Ms. Turner, and Ms. Gray in their individual capacities)

139.   Plaintiffs incorporate by reference and reallege paragraphs 1 to 107 of this Complaint.

140.   The above-described acts and omissions of the School District, the Board of Education, Mr. Kettrick, Mr. Decker, Mr. Davis, Ms. Turner, and Ms. Gray violated Charles's clearly established rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution in that:

    a.    These Defendants intentionally discriminated against Charles (i) on the basis of sex (ii) because of Charles's membership in a class of people defined as males, (iii) because of Charles's membership in a class of people defined as those who do not conform to sexist stereotypes, and/or (iv) because of Charles's membership in a class of people defined as those males who do not conform to sexist stereotypes;

    b.    Without even a rational basis or legitimate government interest, and based on invidious animus, these Defendants intentionally treated Charles differently than other similarly situated students on the basis of sex.

141.    These Defendants' violations of Charles's rights under the Fourteenth Amendment are the actual, direct, and proximate cause of injuries suffered by Charles as alleged herein.

142.    Accordingly, Plaintiff Charles Pratt requests judgment in his favor against the School District, the Board of Education, Mr. Kettrick, Mr. Decker, Mr. Davis, Ms. Turner, and Ms. Gray as set forth in the Prayer for Relief.

## SEVENTH CLAIM FOR RELIEF

### Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 et seq.
### Discrimination Based on Sex

(Brought by Charles Pratt Pursuant to 20 U.S.C. § 1681 et seq.
Against the School District and the Board of Education)

143.    Plaintiffs incorporate by reference and reallege paragraphs 1 to 107 of this Complaint.

144.    Upon information and belief, the School District and the Board of Education receive, and have received at all relevant times, federal financial assistance.

145.    The above-described acts and omissions by the School District and the Board of Education, including but not limited to certain acts and omissions carried out by and through School District officials and employees, violated Charles's rights under Title IX by discriminating against him on the basis of sex.

146.    School District officials including Mr. James Kettrick had actual notice that harassment based on sex was so severe, pervasive, and objectively offensive that it created a hostile climate based on sex that deprived Charles of access to the educational programs, activities, opportunities, and other benefits of the School District, including but not limited to a high school education and diploma.

147.    The School District, its policymakers, officials, and other employees exhibited deliberate indifference to the harassment of Charles based on sex in violation of Title IX. Through their unlawful deliberate indifference, the School District and the Board of Education caused Charles to be subjected to the sex discrimination and sexist harassment herein alleged.

148.    The School District's and the Board of Education's violations of Title IX were the actual, direct and proximate cause of injuries suffered by Plaintiffs as alleged herein.

149.    Accordingly, Plaintiff Charles Pratt requests judgment in his favor against the School District and the Board of Education as set forth in the Prayer for Relief.

## EIGHTH CLAIM FOR RELIEF

**New York Constitution Article 1 § 8
Denial of Free Speech**

(Brought by A.E.P. Pursuant to New York law Against the School District,
the Board of Education, Mr. Kettrick and Mr. Decker in their official and individual capacities,
and Mr. Brown in his individual capacity)

150.    Plaintiffs incorporate by reference and reallege paragraphs 1 to 107 of this Complaint.

151.    The above-described acts and omissions of the School District, the Board of Education, Mr. Kettrick, Mr. Decker, and Mr. Brown violated and continue to violate A.E.P.'s rights under the New York Constitution, Article I § 8, in that:

     a.    These Defendants have abridged and are continuing to abridge A.E.P.'s freedom of speech and freedom of association;

     b.    These Defendants have discriminated and are continuing to discriminate against A.E.P. based on the content and viewpoint of her expression and expressive association; and

39

> c. These Defendants created and maintained a limited public forum for student expression and association, from which they have excluded and continue to exclude A.E.P. in a manner that constitutes impermissible content-based and viewpoint-based discrimination. These Defendants' restrictions on expression and association are unreasonable in light of the purposes served by the forum.

152.   Content-discriminatory and viewpoint-discriminatory restrictions on speech by a school district or its officials or employees against a student based on his or her expression of support for lesbian, gay, bisexual, and/or transgender individuals bears no substantial or rational relationship to any compelling, important, or legitimate government interest.

153.   These Defendants' violations of A.E.P.'s rights under the New York Constitution are the actual, direct, and proximate cause of injuries suffered by A.E.P. as alleged herein.

154.   The public interest and the rights of other students, including students similarly situated to A.E.P., will be served and vindicated by a judgment protecting A.E.P.'s student expression and association in accordance with the New York Constitution.

155.   Accordingly, Plaintiff A.E.P. requests judgment in her favor against the School District, the Board of Education, Mr. Kettrick, Mr. Decker, and Mr. Brown in the form of equitable relief as set forth in the Prayer for Relief.

## NINTH CLAIM FOR RELIEF

**New York Human Rights Law, New York Executive Law § 296(6)**
**Discrimination on the Basis of Sexual Orientation**

(Brought by Charles Pratt Pursuant to the New York Human Rights Law Against Ms. Turner,
Ms. Gray, Ms. Henderson, and Mr. Davis in their individual capacities)

156.    Plaintiffs incorporate by reference and reallege paragraphs 1 to 107 of this Complaint.

157.  The above-described acts and omissions of Defendants denied Charles the use of School District facilities and permitted harassment against him based on sexual orientation, in violation of New York Human Rights Law § 296(4).  Acting recklessly and with the intent to engage in wrongful conduct, Ms. Turner, Ms. Gray, Ms. Henderson and Mr. Davis aided, abetted, incited, compelled and/or coerced these acts and omissions, in violation of New York Human Rights Law § 296(6).

158.    The violations of Charles's rights under the New York Human Rights Law by Ms. Turner, Ms. Gray, Ms. Henderson, and Mr. Davis are the actual, direct, and proximate cause of injuries suffered by Charles as alleged herein.

159.    By this action, Charles seeks to vindicate the public interest by enforcing fundamental state civil rights protections for students, including students who face discrimination and harassment at school based on sexual orientation.

160.    Accordingly, Plaintiff Charles Pratt requests judgment in his favor against Defendants Ms. Turner, Ms. Gray, Ms. Henderson, and Mr. Davis, as set forth in the Prayer for Relief.

## TENTH CLAIM FOR RELIEF

**New York Human Rights Law, New York Executive Law § 296(6)**
**Discrimination on the Basis of Sex**

(Brought by Charles Pratt Pursuant to the New York Human Rights Law Against Ms. Turner,
Ms. Gray, Ms. Henderson, and Mr. Davis in their individual capacities)

161.    Plaintiffs incorporate by reference and reallege paragraphs 1 to 107 of this
Complaint.

162.    The above-described acts and omissions of Defendants denied Charles the use of
School District facilities and permitted harassment against him based on sex, in violation of New
York Human Rights Law § 296(4). Acting recklessly and with the intent to engage in wrongful
conduct, Ms. Turner, Ms. Gray, Ms. Henderson and Mr. Davis aided, abetted, incited, compelled
and/or coerced these acts and omissions, in violation of New York Human Rights Law § 296(6).

163.    The violations of Charles's rights under the New York Human Rights Law by Ms.
Turner, Ms. Gray, Ms. Henderson, and Mr. Davis are the actual, direct, and proximate cause of
injuries suffered by Charles as alleged herein.

164.    By this action, Charles seeks to vindicate the public interest by enforcing
fundamental state civil rights protections for students, including students who face discrimination
and harassment at school based on sex.

165.    Accordingly, Plaintiff Charles Pratt requests judgment in his favor against
Defendants Ms. Turner, Ms. Grey, Ms. Henderson, and Mr. Davis, as set forth in the Prayer for
Relief.

## ELEVENTH CLAIM FOR RELIEF

### New York Civil Rights Law §§ 40-c and 40-d
### Discrimination Based on Sexual Orientation

(Brought by Charles Pratt Pursuant to the New York Civil Rights Law Against Ms. Turner, Ms. Grey, Ms. Henderson, and Mr. Davis in their individual capacities)

166.    Plaintiffs incorporate by reference and reallege paragraphs 1 to 107 of this Complaint.

167.    The above-described acts and omissions of Defendants Ms. Turner, Ms. Grey, Ms. Henderson, and Mr. Davis subjected Charles to discrimination based on sexual orientation in the exercise of his civil rights under New York law.

168.    The acts and omissions of Defendants Ms. Turner, Ms. Grey, Ms. Henderson, and Mr. Davis also aided and incited unlawful discrimination against Charles by others based on sexual orientation in the exercise of his civil rights under New York law.  The acts and omissions were undertaken recklessly and with the intent to engage in wrongful conduct.

169.    The violations of Charles's rights under the New York Civil Rights Law are the actual, direct, and proximate cause of injuries suffered by Charles as alleged herein.

170.    Plaintiffs have complied with the procedural requirements of New York Civil Rights Law § 40-d by serving notice upon the state attorney general at or before the commencement of the action.

171.    By this action, Charles seeks to vindicate the public interest by enforcing fundamental state civil rights protections for students, including students who face discrimination and harassment at school based on sexual orientation.

172.     Accordingly, Plaintiff Charles Pratt requests judgment in his favor against Defendants Ms. Turner, Ms. Gray, Ms. Henderson, and Mr. Davis, as set forth in the Prayer for Relief.

## TWELFTH CLAIM FOR RELIEF

**New York Civil Rights Law §§ 40-c and 40-d**
**Discrimination Based on Sex**

(Brought by Charles Pratt Pursuant to the New York Civil Rights Law against Ms. Turner, Ms. Grey, Ms. Henderson, and Mr. Davis in their individual capacities)

173.     Plaintiffs incorporate by reference and reallege paragraphs 1 to 107 of this Complaint.

174.     The above-described acts and omissions of Defendants Ms. Turner, Ms. Grey, Ms. Henderson, and Mr. Davis subjected Charles to discrimination based on sex in the exercise of his civil rights under New York law.

175.     The acts and omissions of Defendants Ms. Turner, Ms. Grey, Ms. Henderson, and Mr. Davis also aided and incited unlawful discrimination against Charles by others based on sex in the exercise of his civil rights under New York law.  The acts and omissions were undertaken recklessly and with the intent to engage in wrongful conduct.

176.     The violations of Charles's rights under the New York Civil Rights Law are the actual, direct, and proximate cause of injuries suffered by Charles as alleged herein.

177.     Plaintiffs have complied with the procedural requirements of New York Civil Rights Law § 40-d by serving notice upon the state attorney general at or before the commencement of the action.

178.    By this action, Charles seeks to vindicate the public interest by enforcing fundamental state civil rights protections for students, including those who face discrimination and harassment at school based on sex.

179.    Accordingly, Plaintiff Charles Pratt requests judgment in his favor against Defendants Ms. Turner, Ms. Grey, Ms. Henderson, and Mr. Davis, as set forth in the Prayer for Relief.

## THIRTEENTH CLAIM FOR RELIEF

### New York Human Rights Law, New York Executive Law § 296
### Discrimination on the Basis of Perceived Sexual Orientation and/or Antigay Animus

(Brought by A.E.P. Pursuant to the New York Human Rights Law against the School District, the Board of Education, Mr. Kettrick and Mr. Decker in their official and individual capacities, and Mr. Brown in his individual capacity)

180.    Plaintiffs incorporate by reference and reallege paragraphs 1 to 107 of this Complaint.

181.    The above-described acts and omissions of the School District and the Board of Education violated and continue to violate A.E.P.'s right to use School District facilities based on perceived sexual orientation and/or antigay animus, in violation of New York Human Rights Law § 296(4). Defendants Mr. Kettrick, Mr. Decker and Mr. Brown aided, abetted, incited, compelled and/or coerced these acts and omissions, in violation of New York Human Rights Law § 296(6).

182.    Defendants' past and ongoing violations of A.E.P.'s rights under the New York Human Rights Law are the actual, direct and proximate cause of injuries suffered by A.E.P. as alleged herein.

183.    By this action, A.E.P. seeks to vindicate the public interest by preventing the School District, the Board of Education, Mr. Kettrick, Mr. Decker, and Mr. Brown from denying

any other School District students the use of School District facilities based on perceived sexual orientation and/or antigay animus.

184.    Accordingly, Plaintiff A.E.P. requests judgment in her favor against the School District, the Board of Education, Mr. Kettrick, Mr. Decker, and Mr. Brown in the form of equitable relief as set forth in the Prayer for Relief.


## FOURTEENTH CLAIM FOR RELIEF

### New York Civil Rights Law § 40-c
### Discrimination on the Basis of Perceived Sexual Orientation and/or Antigay Animus

(Brought by A.E.P. Pursuant to the New York Civil Rights Law against the School District, the Board of Education, Mr. Kettrick and Mr. Decker in their official and individual capacities, and Mr. Brown in his individual capacity)

185.    Plaintiffs incorporate by reference and reallege paragraphs 1 to 107 of this Complaint.

186.    The above-described acts and omissions of the School District, the Board of Education, Mr. Kettrick, Mr. Decker, and Mr. Brown violated and continue to violate A.E.P.'s civil rights based on perceived sexual orientation and/or antigay animus, in violation of New York Civil Rights Law § 40-c.

187.    Defendants' past and ongoing violations of A.E.P.'s rights under New York Civil Rights Law are the actual, direct and proximate cause of injuries suffered by A.E.P. as alleged herein.

188.    By this action, A.E.P. seeks to vindicate the public interest by preventing the School District, the Board of Education, Mr. Kettrick, Mr. Decker, and Mr. Brown from denying any other School District students the use of School District facilities based on sexual orientation and/or antigay animus.

189.    Plaintiffs have complied with the procedural requirements of New York Civil Rights Law § 40-d by serving notice upon the state attorney general at or before the commencement of the action.

190.    Accordingly, Plaintiff A.E.P. requests judgment in her favor against the School District, the Board of Education, Mr. Kettrick, Mr. Decker, and Mr. Brown in the form of equitable relief as set forth in the Prayer for Relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Charles Pratt and A.E.P. request judgment in their favor and pray for relief against Defendants the Indian River Central School District, the Indian River Central School District Board of Education, Mr. James Kettrick, Mr. Troy Decker, Mr. Jay Brown, Mr. John Davis, Ms. Amable Turner, Ms. Kenda Gray, and Ms. Patricia Henderson as follows:

1.     For an order declaring the rights, obligations, and other legal relations between Defendants and Plaintiff A.E.P.—namely, that the refusal by the School District, the Board of Education, Mr. Kettrick, Mr. Decker, and Mr. Brown to grant A.E.P. permission to form a recognized student gay-straight alliance at Indian River High School with rights and benefits equal to those afforded to other student organizations at Indian River High School, violated and continues to violate A.E.P.'s rights under the federal Equal Access Act, 20 U.S.C. § 4071 *et seq.*, the First Amendment to the United States Constitution as applied to the states by the Fourteenth Amendment, the New York Constitution, Article 1 § 8, New York Human Rights Law § 296, and New York Civil Rights Law § 40-c;

2.     For a preliminary and permanent injunction restraining and enjoining the School District and the Board of Education, as well as Mr. Kettrick, Mr. Decker, Mr. Brown, and other School District or Board of Education directors, officers, agents, affiliates, subsidiaries, servants, employees, and all other persons or entities in active concert, privity, or participation with them, from (a) directly or indirectly preventing A.E.P. from forming a student gay-straight alliance at Indian River High School, or (b) directly or indirectly denying to the student gay-straight alliance, or to A.E.P. as a student founder, member, and/or leader of that alliance, full access to

and use of all School District facilities, benefits, rights, and privileges on an equal basis to that afforded to other students and student groups at Indian River High School;

3.       For an order granting Plaintiff Charles Pratt nominal and compensatory damages against Defendants the School District, the Board of Education, and Mr. Kettrick for violations of the Equal Access Act, 20 U.S.C. § 4071 *et seq.*; the First Amendment to the U.S. Constitution; and the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution;

4.       For an order granting Plaintiff Charles Pratt nominal and compensatory damages against Defendants Mr. Decker, Mr. Davis, Ms. Turner, and Ms. Gray for violations of the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution;

5.       For an order granting Plaintiff Charles Pratt nominal and compensatory damages and other appropriate relief against Defendants Mr. Davis, Ms. Turner, Ms. Gray, and Ms. Henderson for violations of the New York Human Rights Law and New York Civil Rights Law;

6.       For an order granting Plaintiff Charles Pratt punitive damages against Defendant Kettrick for violations of the Equal Access Act, 20 U.S.C. § 4071 *et seq.*; the First Amendment to the U.S. Constitution; and the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution;

7.       For an order granting Plaintiff Charles Pratt punitive damages against Defendants Mr. Decker, Mr. Davis, Ms. Turner, and Ms. Gray for violations of the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution;

8.       For an order granting Plaintiff Charles Pratt nominal, compensatory, and punitive damages against Defendants the School District and the Board of Education for violations of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*

9.     For an order granting Plaintiff A.E.P. nominal damages and other appropriate relief against Defendants the School District, the Board of Education, Mr. Kettrick, Mr. Decker, and Mr. Brown for past and ongoing violations of the Equal Access Act, 20 U.S.C. § 4071 *et seq.*; the First Amendment to the U.S. Constitution; and the New York Human Rights and Civil Rights Laws.

10.     For an order granting Plaintiff A.E.P. punitive damages against Defendants Mr. Kettrick, Mr. Decker, and Mr. Brown for past and ongoing violations of the Equal Access Act, 20 U.S.C. § 4071 *et seq.*; and the First Amendment to the U.S. Constitution.

11.     For interest, where appropriate, on any damages awarded to any plaintiff;

12.     For attorneys' fees and costs incurred in the prosecution of this action pursuant to, *inter alia*, 42 U.S.C. § 1988 and other applicable laws;

13.     For any other and further relief as the Court may deem just and proper.


Dated:   April 8, 2009
         New York, NY


  s/ Michael Kavey
_____

Michael Kavey, Bar Number 515452           Sudwiti Chanda*
Hayley Gorenberg, Bar Number 515453        Adam T. Humann*

*Attorneys For Plaintiffs*                 *Attorneys for Plaintiffs*

LAMBDA LEGAL DEFENSE AND                   KIRKLAND & ELLIS LLP
EDUCATION FUND, INC.                       Citigroup Center
120 Wall Street, Suite 1500                153 East 53rd Street
New York, NY 10005-3904                    New York, NY 10022-4611
Telephone: (212) 809 - 8585                Telephone: (212) 446 - 4800
Facsimile: (212) 809 - 0055                Facsimile: (212) 446 - 4900
E-mail: mkavey@lambdalegal.org             E-mail: schanda@kirkland.com

                                           *Motion for Admission Pro Hac Vice Pending*

50