# Exhibit B −PART(1)

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
SYRACUSE DIVISION

CHARLES PATRICK PRATT and
A.E.P. through her parents and next friends
Bobbi Lynn Petranchuk and
Todd Edward Petranchuk,

        Plaintiffs,

v.                                                                    Case No.: 7:09-cv-411 (GTS/GHL)

INDIAN RIVER CENTRAL SCHOOL
DISTRICT; INDIAN RIVER CENTRAL
SCHOOL DISTRICT BOARD OF
EDUCATION; JAMES KETTRICK,
Superintendent of Indian River Central
School District, in his official and individual
capacities; TROY DECKER, Principal of
Indian River High School, in his official
and individual capacities; and JAY BROWN,
JOHN DAVIS, KENDA GRAY, AMABLE
TURNER, and PATRICIA HENDERSON, in
their individual capacities,

        Defendants.

**UNITED STATES' MEMORANDUM AS *AMICUS CURIAE*
IN RESPONSE TO DEFENDANTS' MOTION TO DISMISS/
MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

INTRODUCTION.................................................................................................1

INTERESTS OF THE UNITED STATES .......................................................2

PROCEDURAL HISTORY .................................................................................3

ARGUMENT ........................................................................................................4

    I.    Harassment Based on Nonconformity with Sex Stereotypes is a
           Legally Cognizable Claim Under Title IX and the Equal Protection Clause............5

    II.   Allegations of Harassment Based on Sexual Orientation
           Do Not Defeat a Sex Stereotyping Harassment Claim. ................................................9

    III.  A Hostile Environment Claim May Span Transitions Between
           Classrooms, Grades, and Schools.................................................................13

CONCLUSION ...................................................................................................16

**TABLE OF AUTHORITIES**

<u>CASES</u>

<u>A.B. v. Rhinebeck Cent. Sch. Dist.</u>,
  224 F.R.D. 144 (S.D.N.Y. 2004) ............................................................................ 3

<u>Davis v. Monroe Co. Bd. of Educ.</u>,
  526 U.S. 629 (1999) .................................................................................... passim

<u>Dawson v. Bumble & Bumble</u>,
  398 F.3d 211 (2d Cir. 2005) ............................................................................ 6, 7

<u>Doe v. Brimfield Grade Sch.</u>,
  522 F. Supp. 2d 816 (C.D. Ill. 2008) .............................................................. 7-8

<u>Doe v. School Admin. Dist. No. 19</u>,
  66 F. Supp. 2d 57 (D. Me. 1999) ........................................................................ 15

<u>Elgamil v. Syracuse University</u>,
  No. 99-CV-611, 2000 WL 1264122 (N.D.N.Y. Aug. 22, 2000) ........................... 6

<u>Franklin v. Gwinnett County Pub. Schs.</u>,
  503 U.S. 60 (1992) ............................................................................................... 7

<u>Hayut v. State Univ. of New York</u>,
  352 F.3d 733 (2d Cir. 2003) .......................................................................... 4, 14

<u>Hughes v. United Parcel Service, Inc.</u>,
  No. 117224/01, 2004 WL 2059768 (N.Y. Sup. Ct. June 28, 2004) ................... 13

<u>Junior Doe v. Allentown Sch. Dist.</u>,
  06-CV-1926 (E.D. Pa. July 8, 2009) .................................................................... 3

<u>Kotcher v. Rosa & Sullivan Appliance Center, Inc.</u>,
  957 F.2d 59 (2d Cir. 1992) ................................................................................ 13

<u>Lopez v. Metro Gov't of Nashville & Davidson Co.</u>,
  3:07-CV-00799 (M.D. Tenn. Nov. 4, 2008) ......................................................... 3

<u>Lovins v. Pleasant Hill Pub. Sch. Dist.</u>,
  No. 99-0550-CV (W.D. Mo. July 31, 2000) ........................................................ 3

<u>Martin v. New York State Department of Correctional Services</u>,
  224 F. Supp. 2d 434 (N.D.N.Y. 2002) ................................................................. 9

Montgomery v. Indep. Sch. Dist. No. 709,
    109 F. Supp. 2d 1081 (D. Minn. 2000)................................................................. 7, 8, 11, 12

Oncale v. Sundowner Offshore Services, Inc.,
    523 U.S. 75 (1998)............................................................................................... 7, 11, 12

Price Waterhouse v. Hopkins,
    490 U.S. 228 (1989)........................................................................................................ 7

Riccio v. New Haven Bd. of Educ.,
    467 F. Supp. 2d 219 (D. Conn. 2006)................................................... 8, 9, 10, 14-15

Rissman v. Chertoff,
    No. 08-Civ.-7352(DC), 2008 WL 5191394 (S.D.N.Y. Dec. 12, 2008)........................ 6, 7

Romer v. Evans,
    517 U.S. 620, 633 (1996)............................................................................................. 12

Sauerhaft v. Bd. of Educ. of the Hastings-On-Hudson Union Free Sch. Dist.,
    No. 05 Civ 09087, 2009 WL 1576467 (S.D.N.Y. June 2, 2009)....................................... 5

Schmedding v. Tenmec Co., Inc.,
    187 F.3d 862 (8th Cir. 1999) ....................................................................................... 12

Simonton v. Runyon,
    232 F.3d 33 (2d Cir. 2000)......................................................................................... 6, 7

Theno v. Tonganoxie Unified Sch. Dist. No. 464,
    377 F. Supp. 2d 952 (D. Kan. 2005)....................................................................... 8, 15

Trigg v. New York City Transit Authority,
    No. 99-CV-4730, 2001 WL 868336 (E.D.N.Y. July 26, 2001)........................................ 9

Vance v. Spencer County Pub. Sch. Dist.,
    231 F.3d 253 (6th Cir. 2002) ...................................................................................... 15

West v. Mt. Sinai Medical Center,
    No. 00 Civ. 6191, 2002 WL 530984 (S.D.N.Y. Apr. 9, 2002)........................................ 6

## **STATUTES**

20 U.S.C. § 1681 ................................................................................................. 1, 8

20 U.S.C. § 1682 .................................................................................................... 2

28 C.F.R. § 0.51 ..................................................................................................... 2

34 C.F.R. § 106.1 ................................................................................................... 2

34 C.F.R. § 106.31 .............................................................................................. 2, 9

42 U.S.C. § 1983 .................................................................................................... 1

42 U.S.C. § 2000c .................................................................................................. 2

42 U.S.C. § 2000h-2 ............................................................................................... 3

45 Fed. Reg. 72,995 ............................................................................................... 2

Exec. Order No. 12,250 .......................................................................................... 2

## **OTHER AUTHORITIES**

Revised Sexual Harassment Guidance: Harassment of Students by School Employees, Other
    Students, or Third Parties, 66 Fed. Reg. 5512 (Jan. 19, 2001) ............................... 8, 12

v

# INTRODUCTION

Plaintiff Charles Patrick Pratt alleges that he was the victim of harassment spanning nearly all of his time in primary and secondary schools in the Indian River Central School District ("IRCSD").  Pratt alleges that he was targeted by peers and IRCSD staff because he did not conform to masculine stereotypes and because of his sexual orientation.  Pratt filed this lawsuit asserting claims against the IRCSD, its Board of Education, Superintendent, agents, and employees (collectively, "Defendants") for, *inter alia*, violating his statutory and constitutional rights to be free from discrimination on the basis of sex under Title IX of the Education Amendments Act of 1972, 20 U.S.C. § 1681 et seq. ("Title IX"), and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, 42 U.S.C. § 1983.[1]  (First Am. Compl. ¶¶ 168-178.)

On June 11, 2010, the Defendants filed a Motion to Dismiss/Motion for Summary Judgment and supporting memorandum ("Defendants' Memorandum"), arguing, *inter alia*, that Pratt failed to state a claim under Title IX or the Equal Protection Clause.  (See Defs.' Mem. at 12-22; Defs.' Reply Mem. at 14-17, 19-20.)  The United States respectfully requests that this Court allow it to participate as *amicus curiae* to address three incorrect legal arguments posited by Defendants.  Specifically, Defendants argue that: (1) harassment based on sex stereotyping is not a legally cognizable claim under Title IX and the Equal Protection Clause; (2) allegations of

---

[1] Pratt's sister A.E.P., through her parents and next friends Bobbi Lynn Petranchuk and Todd Edward Petranchuk, is also a party to this suit. Pratt and A.E.P. both allege claims under the Equal Access Act, 20 U.S.C. § 4071 *et seq.*, the First Amendment to the United States Constitution as applied to the states by the Fourteenth Amendment, the Free Speech Clause and the Free Association Clause of Article I § 8 of the New York State Constitution, § 296 of the New York Human Rights Law, and §§ 40-c and 40-d of the New York Civil Rights Law. However, the United States' *amicus* Memorandum addresses only Pratt's claims of harassment based on sex under Title IX and the Equal Protection Clause (the Sixth and Seventh Claims for Relief in the First Amended Complaint).

harassment based on sexual orientation preclude a sex stereotyping claim; and (3) breaks inherent in a student's movement between classes, grades, and schools preclude a hostile environment claim. (See Defs.' Mem. at 12-22; Defs.' Reply Mem. at 14-17, 19-20.)  Because none of these arguments is supported by law, the United States respectfully requests this opportunity to address the correct legal standards governing sex-based harassment claims under Title IX and the Equal Protection Clause.

## INTERESTS OF THE UNITED STATES

The United States seeks to participate as *amicus curiae* because it has a significant interest in the proper development of the law regarding Title IX and the Equal Protection Clause.

Under Title IX and its implementing regulations, see 34 C.F.R. §§ 106.1, 106.31(a)-(b) (2010), no individual may be discriminated against on the basis of sex in any educational program or activity receiving Federal financial assistance.  The U.S. Department of Education is charged with promulgating regulations implementing Title IX and ensuring that recipients of Federal funds comply with the statute and regulations.  See 20 U.S.C. § 1682 (2006).  The Office for Civil Rights ("OCR") is the office within the U.S. Department of Education charged with enforcing Title IX.  The U.S. Department of Justice, through its Civil Rights Division, coordinates the implementation and enforcement of Title IX by the U.S. Department of Education and other executive agencies.  Exec. Order No. 12,250, 45 Fed. Reg. 72,995 (1980); 28 C.F.R. § 0.51 (1998).

The U.S. Department of Justice also has significant responsibilities for the enforcement of Title IV of the Civil Rights Act of 1964, which prohibits equal protection violations on the basis of sex, see Title IV, 42 U.S.C. § 2000c (2006), and the Attorney General may intervene in

any lawsuit in federal court seeking relief from a denial of equal protection under the Fourteenth Amendment. See 42 U.S.C. § 2000h-2 (2006).

The United States has furthered the significant interests noted above by intervening or participating as *amicus curiae* in numerous lawsuits involving claims of sexual harassment under Title IX and/or the Equal Protection Clause. See, e.g., Order Granting Intervention, Junior Doe v. Allentown Sch. Dist., 06-CV-1926 (E.D. Pa. July 8, 2009) (attached as Ex. A); Order Granting Intervention, Lopez v. Metro Gov't of Nashville & Davidson County, 3:07-CV-00799, 2008 WL 4831318 (M.D. Tenn. Nov. 4, 2008) (attached as Ex. B); A.B. v. Rhinebeck Cent. Sch. Dist., 224 F.R.D. 144 (S.D.N.Y. 2004); Lovins v. Pleasant Hill Pub. Sch. Dist., No. 99-0550-CV (W.D. Mo. July 31, 2000) (attached as Ex. C).

## PROCEDURAL HISTORY

On February 19, 2010, after obtaining leave from the Court, the Plaintiffs filed their First Amended Complaint alleging, *inter alia*, that Defendants discriminated against Pratt on the basis of sex in violation of Title IX and the Equal Protection Clause. (First Am. Compl. ¶¶ 168-178.) Pratt alleges that he was subjected to verbal and physical harassment in elementary, middle, and high school because he did not conform to masculine stereotypes and because of his sexual orientation. (Id. at ¶¶ 20, 34-37, 40, 50, 53-54, 57, 59.) Pratt alleges that he was called names such as "gay," "fairy," "faggot," "girl," "pussy," "sissy," "queer," and "fudgepacker," and feminized versions of his name ("Charlotte" or "Charlise"). (Id. at ¶¶ 34-35, 37, 53-54.) Pratt also alleges physical harassment such as grabbing and pinching his buttocks, vandalizing his locker, mocking him with stereotypically female mannerisms and gestures, slamming him into walls and lockers, spitting on him, hurling food and spitballs at him, and knocking belongings from his hands. (Id. at ¶¶ 38-39, 57, 59.) Pratt seeks monetary damages for these alleged

3

violations of Title IX and the Equal Protection Clause.  (First Am. Compl., Prayer for Relief ¶¶

3-4, 7-9.)

On March 5, 2010, Defendants filed their Answer to the First Amended Complaint.  On

June 11, 2010, Defendants filed a Motion to Dismiss/Motion for Summary Judgment.  Plaintiffs

responded on June 28, 2010, with an Opposition and Memorandum of Law ("Plaintiffs'

Memorandum").  On July 13, 2010, Defendants submitted their Reply and Memorandum of Law

in Support ("Defendants' Reply Memorandum").

## ARGUMENT[2]

The parties agree that to state a hostile environment claim for damages under Title IX, a

private plaintiff must prove that a school district in receipt of Federal financial assistance was

deliberately indifferent to sex-based harassment of which it had actual knowledge, and that the

harassment was so severe, pervasive and objectively offensive that it can be said to have

deprived him of access to an educational opportunity or benefit.  Davis v. Monroe Co. Bd. of

Educ., 526 U.S. 629, 650 (1999); accord, Defs.' Mem. at 12; Pls.' Mem. at 19.  Similarly, a

hostile environment claim under the Equal Protection Clause requires the plaintiff to prove that

he "subjectively perceived the environment to be hostile or abusive" and that the environment

was "objectively hostile and abusive, that is, that it was 'permeated with 'discriminatory

intimidation, ridicule, and insult,' . . . that [was] 'sufficiently severe or pervasive to alter the

conditions'" of the educational environment.  Hayut v. State Univ. of New York, 352 F.3d 733,

744-45 (2d Cir. 2003) (citations omitted) (relying on Title VII hostile environment precedent to

---

[2] Defendants filed a Motion to Dismiss/Motion for Summary Judgment without stating the
standard of review or identifying which claims are subject to dismissal or summary judgment.
The United States construed the Defendants' arguments with regard to the Title IX and Equal
Protection Clause claims as a motion to dismiss.  (See Def. Mem. at 12-22.)

define the legal standard under the Equal Protection Clause); <u>Sauerhaft v. Bd. of Educ. of the</u>

<u>Hastings-On-Hudson Union Free Sch. Dist.</u>, No. 05 Civ 09087, 2009 WL 1576467, at *6 n.11

(S.D.N.Y. June 2, 2009) (applying same standard under Title IX and the Equal Protection Clause

in its analysis of severity and pervasiveness); <u>see</u> <u>also</u> Defs.' Mem. at 21-22 (Equal Protection

Clause is "analyzed in much the same manner as claims brought under Title IX"); Pls.' Mem. at

28.[3]

Defendants incorrectly argue that Pratt fails to state a claim under Title IX and the Equal

Protection Clause because (1) a claim of sex-based harassment cannot be based on

nonconformity with sex stereotypes; (2) an allegation of sexual orientation harassment precludes

a claim based on nonconformity with sex stereotypes; and (3) harassment that spans classes,

grades, and schools cannot establish a hostile environment claim due to breaks in a student's

education.  The United States addresses each of these arguments below.

I.       **Harassment Based on Nonconformity with Sex Stereotypes is a**
         <u>**Legally Cognizable Claim Under Title IX and the Equal Protection Clause.**</u>

Defendants contend that "[i]n order to be actionable under Title IX, the alleged

harassment must be 'because of sex', and no Title IX claim is stated upon the basis of sexual

orientation, perceived sexual orientation, or lack of conformity to gender stereotypes." (Defs.'

Mem. at 13.)  Defendants go on to assert that "[e]ven if the Plaintiffs had pled facts which

support the conclusion that the Plaintiffs were discriminated against based upon nonconformity

to gender stereotypes, no such claim exists." (<u>Id.</u> at 14; <u>accord</u> Defs.' Reply Mem. at 14

---

[3] The United States' *amicus* Memorandum addresses Plaintiffs' Equal Protection Clause claim as
it pertains to sex-based discrimination on the basis of a failure to conform to gender stereotypes.
Plaintiffs are correct that an Equal Protection Clause claim may also be asserted on the basis of
discriminatory treatment (<u>i.e.</u>, complaints from boys are treated differently than complaints from
girls).  (Pls.' Mem. at 28.)

5

("Defendants point out that Plaintiff attempts to allege a claim pursuant to Title IX which is not contemplated by Title IX, and that the entirety of Plaintiff's Title IX allegations state no discrimination based upon gender, but attempt to state that Plaintiff was discriminated against based upon homosexuality and/or gender stereotypes, neither of which are [sic] contemplated by Title IX.").) Defendants likewise argue that harassment based on nonconformity with sex stereotypes cannot support a sex-based claim under the Equal Protection Clause. (Defs.' Mem. at 21-22; Defs.' Reply Mem. at 19-20.)

While Defendants cite to five Title VII cases for the proposition that "no Title IX claim is stated upon the . . . lack of conformity to gender stereotypes," none of the cases supports this proposition.[4] Two of the cases, West v. Mt. Sinai Medical Center, No. 00 Civ. 6191, 2002 WL 530984, (S.D.N.Y. Apr. 9, 2002), and Elgamil v. Syracuse University, No. 99-CV-611, 2000 WL 1264122 (N.D.N.Y. Aug. 22, 2000), do not mention, much less discuss, claims based on sex stereotyping. In the remaining three cases, Dawson v. Bumble & Bumble, 398 F.3d 211, 217-21 (2d Cir. 2005), Simonton v. Runyon, 232 F.3d 33, 36-38 (2d Cir. 2000), and Rissman v. Chertoff, No. 08-Civ.-7352(DC), 2008 WL 5191394, at *2 (S.D.N.Y. Dec. 12, 2008), the courts did not preclude sex stereotyping claims. To the contrary, each court recognized that a sex stereotyping claim is legally cognizable under Title VII, but went on to hold that the plaintiffs failed to allege facts that would support such a claim. Dawson, 398 F.3d at 218 (five years after Simonton, the Second Circuit noted that "individual employees who face adverse employment

---

[4] Similarly, these cases do not support Defendants' proposition that a sex-based hostile environment claim under the Equal Protection Clause cannot be based on nonconformity to sex stereotypes, and the Defendants do not cite any other cases in support of this proposition. (Defs.' Mem. at 21-22; Defs.' Reply Mem. at 19-20.) Defendants simply ask the court to rely on their Title IX arguments to similarly dismiss Pratt's Equal Protection Clause claim. (Defs.' Mem. at 21-22; Defs.' Reply Mem. at 19-20.)

actions as a result of their employer's animus toward their exhibition of behavior considered to

be stereotypically inappropriate for their gender may have a claim under Title VII."); Simonton,

232 F.3d at 38 ("We do not have sufficient allegations before us to decide Simonton's claims

based on stereotyping because we have no basis in the record to surmise that Simonton behaved

in a stereotypically feminine manner and that the harassment he endured was, in fact, based on

his non-conformity with gender norms instead of his sexual orientation.  Moreover, because this

theory was not presented to the district court, we are without the benefit of lower court

consideration."); Rissman, 2008 WL 5191394, at *2 ("[I]ndividuals may maintain a claim under

Title VII for adverse employment actions caused by their lack of conformity to gender

stereotypes.").

    Moreover, the Defendants' reliance on Title VII is of no avail because the Supreme Court

has authoritatively recognized a sex stereotyping claim. Price Waterhouse v. Hopkins, 490 U.S.

228, 251-52 (1989) (holding that harassment based on sex stereotyping constituted

discrimination on the basis of sex under Title VII).  The lower court cases cited by the

Defendants do not and could not cast any doubt on this holding.  See Dawson, 398 F.3d at 218;

Rissman, 2009 WL 5191394, at *2.  Similarly, harassment based on nonconformity with sex

stereotypes is a legally cognizable claim under Title IX.[5]  See, e.g., Doe v. Brimfield Grade Sch.,

---

[5] Courts examine Title VII precedent when analyzing discrimination "on the basis of sex" under
Title IX. Davis, 526 U.S. at 631 (holding that Title VII agency principles do not apply under
Title IX, however Title VII precedent was relevant to expound on gender-based harassment);
Franklin v. Gwinnett County Pub. Schs., 503 U.S. 60, 74 (1992) (Title VII precedent was the
basis for recognizing a Title IX private cause of action for sexual harassment).  The standards for
proving gender-based harassment under Title VII that were enunciated in Oncale are often cited
by courts reviewing similar claims under Title IX.  Oncale v. Sundowner Offshore Services, Inc.,
523 U.S. 75 (1998) (holding that same-sex harassment is actionable under Title VII); see, e.g.,
Davis, 526 U.S. at 651; Montgomery v. Indep. Sch. Dist. No. 709, 109 F. Supp. 2d 1081, 1091
(D. Minn. 2000)

552 F. Supp. 2d 816, 823 (C.D. Ill. 2008) ("Discrimination because one's behavior does not 'conform to stereotypical ideas' of one's gender can amount to actionable discrimination 'based on sex.'"); <u>Riccio v. New Haven Bd. of Educ.</u>, 467 F. Supp. 2d 219, 226 (D. Conn. 2006) ("The language set forth in the OCR Guidance and the holding in <u>Oncale</u> clearly support the conclusion that a female student, subjected to pejorative, female homosexual names by other female students, can bring a claim of sexual harassment under Title IX."); <u>Theno v. Tonganoxie Unified Sch. Dist. No. 464</u>, 377 F. Supp. 2d 952, 964-65 (D. Kan. 2005) (recognizing that a gender stereotyping[6] claim may be used to establish that same-sex harassment is based on sex under Title IX); <u>Montgomery</u>, 109 F. Supp. 2d at 1090-93 (relying on <u>Price Waterhouse</u>, <u>Oncale</u>, <u>Davis</u>, and the relationship between Title VII and Title IX to hold that the plaintiff had stated a cognizable harassment claim for nonconformity with sex stereotypes under Title IX).

Additionally, OCR has recognized the sex stereotyping theory in its guidance on sexual harassment and enforcement under Title IX. The most recent guidance, issued on January 19, 2001, states as follows:

> [G]ender-based harassment, which may include acts of verbal, nonverbal, or physical aggression, intimidation, or hostility based on sex or sex-stereotyping, but not involving conduct of a sexual nature, is also a form of sex discrimination to which a school must respond, if it rises to a level that denies or limits a student's ability to participate in or benefit from the educational program.

Revised Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students, or Third Parties ("2001 OCR Guidance") at 3, 66 Fed. Reg. 5512 (Jan. 19, 2001).[7]

---

[6] "Sex stereotyping" and "gender stereotyping" are used interchangeably by courts.

[7] The 2001 OCR Guidance was issued pursuant to the U.S. Department of Education's authority under Title IX and its implementing regulations to eliminate discrimination based on sex in education programs receiving Federal financial assistance. 20 U.S.C. §1681; 34 C.F.R. §

In light of the relevant case law and the 2001 OCR Guidance, it is clear that harassment based on sex stereotyping is discrimination on the basis of sex under Title IX and the Equal Protection Clause. Defendants cite nothing to the contrary. This Court should therefore dispense with the Defendants' argument.

### II.   Allegations of Harassment Based on Sexual Orientation Do Not Defeat a Sex Stereotyping Harassment Claim.

Defendants argue that "[t]he remarks which Plaintiff alleges evidence 'gender stereotype' discrimination do not, as <u>Price-Waterhouse</u> requires, allege discrimination based upon gender, but rather attempts [sic] to allege discrimination based upon sexual orientation." (Defs.' Reply Mem. at 14.) Defendants, in essence, argue that Pratt cannot assert harassment based on both sexual orientation and sex stereotyping.[8]

Plaintiffs, in response, correctly note that harassment "based on sexual orientation does not immunize these Defendants from liability under Title IX for harassment and discrimination based on sex." (Pls.' Mem. at 21.) Courts that have encountered similar claims allow plaintiffs

---

106.31(a). Courts have routinely looked to OCR's guidance because it constitutes a body of informed judgment from the federal agency charged with administering Title IX. <u>See, e.g.,</u> <u>Davis</u>, 526 U.S. at 647-648, 651-652 (noting that its holding on student-on-student harassment is consistent with OCR's guidance on Title IX); <u>Riccio</u>, 467 F. Supp. 2d at 226 (relying on the 2001 OCR Guidance to determine the scope of sex-based harassment under Title IX).

[8] The cases cited by the Defendants do not support their argument, particularly at the motion to dismiss stage. First, in <u>Martin v. New York State Department of Correctional Services</u>, the court granted the defendant's motion for summary judgment because the plaintiff, David Martin, failed to offer any evidence of sex stereotyping, specifically that the alleged harassment was aimed at his masculinity or perceived lack thereof. 224 F. Supp. 2d 434, 446-47 (N.D.N.Y. 2002). Second, in <u>Trigg v. New York City Transit Authority</u>, the court granted the defendant's motion for summary judgment because the plaintiff stated in a deposition that the harassment was based on sexual orientation. No. 99-CV-4730, 2001 WL 868336, at *6 (E.D.N.Y. July 26, 2001). Of particular relevance to Section I of the Argument <u>supra</u>, both <u>Martin</u> and <u>Trigg</u> accepted that sex stereotyping was a legally cognizable claim under Title VII. <u>See Martin</u>, 224 F. Supp. 2d at 446-47; <u>Trigg</u>, 2001 WL 868336, at *5-6.

to prove that the alleged harassment was based on sex even when some of the allegations appear to be related to sexual orientation discrimination. For example, in Riccio, Stefanie Andree, alleged that she was called derogatory names such as "bitch," "dyke," "freak," "lesbian," "Nazi," "gay," and "gothic", and was subjected to physical violence such as having a pencil thrown at her during lunch and paper balls tossed at her during class. 467 F. Supp. 2d at 221-24. The defendant, the New Haven Board of Education, challenged Andree's Title IX claim as one based on sexual orientation rather than sex by arguing that "the majority of the name-calling and ridicule targeted at Andree contained pejorative homosexual references" and that "the thrust of the slurs were of a sexual orientation nature and not gender specific." Id. at 225. The court disagreed, noting that Oncale held that similar harassment constituted discrimination on the basis of sex:

> Despite the Board's assertion that Oncale precludes Andree's claim because the slurs were largely regarding sexual orientation, Oncale is analogous to Andree's claim. In Oncale, the plaintiff was a male being harassed physically and verbally by other males. The derogatory language directed at Mr. Oncale was homosexual in its nature, as in Andree's case. Despite the language being of a homosexual nature in Oncale, the Supreme Court concluded that the harassment constituted sexual harassment.

Id. at 226 (citations omitted). The court held that "Andree, a female student, targeted by other female students and called a variety of pejorative epithets, including ones implying that she is a female homosexual, has established a genuine issue of fact as to whether this harassment amounts to gender-based discrimination, actionable under Title IX." Id.

The Defendants argue that Pratt cannot prove a sex stereotyping claim because the alleged harassment (i.e., epithets such as "faggot," "sissy," "queer," "fudge packer," "gay," "fairy," "girl," "sissy," "Charlotte," and "Charlise" (feminized versions of Pratt's name)) suggests sexual orientation discrimination. (See Defs.' Mem. at 13-15.) This argument implies

10

that Pratt is somehow trying to "bootstrap protection for sexual orientation" into Title IX.

Dawson, 398 F.3d at 218 (internal quotation marks omitted).  However, the Court in Oncale

cautioned against drawing such superficial, perfunctory conclusions about sex-based harassment:

> In same-sex (as in all) harassment cases, that inquiry requires careful
> consideration of the social context in which particular behavior occurs and is
> experienced by its target. . . . The real social impact of workplace behavior often
> depends on a constellation of surrounding circumstances, expectations, and
> relationships which are not fully captured by a simple recitation of the words used
> or the physical acts performed.

523 U.S. at 81-82; accord Davis, 526 U.S. at 651-52.

An example of the careful review contemplated by Oncale can be found in Montgomery.

The plaintiff alleged that the school district failed to address persistent harassment that included

slurs (e.g., "fag," "Jessica" (feminized version of the plaintiff's name), "girl," "gay," "princess,"

"homo," "freak," "lesbian") and physical aggression (e.g., punching, kicking, pushing, throwing

plaintiff to the ground and pretending to rape him).  Montgomery, 109 F. Supp. 2d at 1083-84.

The school district argued that the plaintiff's "Title IX claims must be dismissed because Title

IX does not protect individuals from discrimination based on sexual orientation or perceived

sexual orientation."  Id. at 1089.  In denying the defendant's motion to dismiss, the court

explained that a trier of fact could find that the harassment was based on sex:

> Plaintiff contends that the students engaged in the offensive conduct at issue not
> only because they believed him to be gay, but also because he did not meet their
> stereotyped expectations of masculinity.  The facts alleged in plaintiff's complaint
> support this characterization of the students' misconduct.  He specifically alleges
> that some of the students called him "Jessica," a girl's name, indicating a belief
> that he exhibited feminine characteristics.  Moreover, the Court finds important
> the fact that plaintiff's peers began harassing him as early as kindergarten.  It is
> highly unlikely that at that tender age plaintiff would have developed any
> solidified sexual preference, or for that matter, that he even understood what it
> meant to be "homosexual" or "heterosexual."  The likelihood that he openly
> identified himself as gay or that he engaged in any homosexual conduct at that
> age is quite low.  It is much more plausible that the students began tormenting

11

him based on feminine personality traits that he exhibited and the perception that he did not engage in behaviors befitting a boy.  Plaintiff thus appears to plead facts that would support a claim of harassment based on the perception that he did not fit his peers' stereotypes of masculinity.

Id. at 1090; see also, Schmedding v. Tenmec Co., Inc., 187 F.3d 862, 865 (8th Cir. 1999) (harassment that included rumors that labeled plaintiff as homosexual did not transform the complaint from one alleging harassment based on sex to one alleging harassment based on sexual orientation).  The court's reliance on the allegation that the harassment began in elementary school demonstrates how the "social context in which particular behavior occurs" and how such contexts help to distinguish harassment based on sex from that based on sexual orientation.[9] Oncale, 523 U.S. at 81.

Additionally, OCR policy recognizes that Title IX prohibits harassment based on sex even when some of the harassment appears to be related to sexual orientation.  The 2001 OCR Guidance states that "sufficiently serious harassment of a sexual nature remains covered by Title IX . . . even though the hostile environment may also include taunts based on sexual orientation." 2001 OCR Guidance at v.

Because the case law establishes that a plaintiff can concurrently assert claims for sex-based harassment and sexual-orientation-based harassment (even if the latter claims are not cognizable under the same laws), Pratt should be given an opportunity to prove that the alleged harassment is based on sex under Title IX and the Equal Protection Clause.

---

[9] Moreover, being gay does not deny a student his right to be free from sex-based discrimination pursuant to Title IX and the Equal Protection Clause.  See, e.g., 2001 OCR Guidance at 3 ("Although Title IX does not prohibit discrimination on the basis of sexual orientation, sexual harassment directed at gay or lesbian students that is sufficiently serious to limit or deny a student's ability to participate in or benefit from the school's program constitutes sexual harassment prohibited by Title IX under the circumstances described in this guidance."); Romer v. Evans, 517 U.S. 620, 633 (1996).

### III.   A Hostile Environment Claim May Span Transitions Between Classrooms, Grades, and Schools.

The Defendants assert that breaks inherent in the transitions between classes, grades, and schools defeat Pratt's hostile environment claim under Title IX and the Equal Protection Clause:

> Even assuming, *arguendo*, that the Plaintiffs state harassment based on sex: lengthy vacation periods, break up periods of attendance in public school, students moving from teacher to teacher, grade to grade, classroom to classroom, and school building to school building as they continue to attend school, prevent Plaintiffs from alleging pervasive and continuous harassment. In short, the educational experience is not continuous, broken up as it is by lengthy periods of vacation. Also, the educational environment changes so dramatically from kindergarten to high school that it cannot reasonably be deemed to constitute one educational environment.

(Defs.' Mem. at 18; see also id. at 16-20, 22.)[10]   The Defendants use breaks in the transition between classes, grades, and schools to divide Pratt's alleged harassment by grade and school. By then tallying merely the harassment alleged within each, the Defendants attempt to defeat Plaintiffs' claim that the conduct created a hostile environment for him. The Defendants are essentially challenging whether the alleged harassment meets the "pervasive" element under Title IX and the Equal Protection Clause. See Davis, 526 U.S. at 650 (to be actionable under

---

[10] Defendants fail to cite even one case that stands for the proposition that the "educational experience is not continuous." (Defs. Mem. at 18.)  The Defendants cite two Title VII cases that do not discuss hostile environments in an educational setting, but even Hughes recognizes the prematurity of determining whether a continuous claim is established at the motion to dismiss stage before discovery has commenced.  Hughes v. United Parcel Serv., Inc., No. 117224/01, 2004 WL 2059768, at *7 (N.Y. Sup. Ct. June 28, 2004) (the court held that "given that various acts of discrimination may be considered as part of a hostile work environment claim depending on their relationship with other acts comprising such claim, and, as discovery has not yet been completed, it is premature to determine which acts of alleged discrimination are isolated events that are unrelated to the hostile work environment claim."); see Kotcher v. Rosa & Sullivan Appliance Ctr., Inc., 957 F.2d 59, 62-63 (2d Cir. 1992) (held that the alleged workplace harassment was sufficiently continuous).  Moreover, Defendants' improperly try to import the workplace environment from Title VII cases to the school environment in a Title IX claim.  The Supreme Court has explicitly stated that "schools are unlike the adult workplace." Davis, 526 U.S. at 651.

Title IX, the harassment must be severe and pervasive); Hayut, 252 F.3d at 745 (citations omitted) (requiring that sex-based harassment be sufficiently severe or pervasive under the Equal Protection Clause and explaining that "'pervasive' means that the challenged incidents are 'more than episodic; they must be sufficiently continuous and concerted.'")

Defendants' argument is precisely the type of "rigid 'calculate and compare' methodology" discouraged by the Second Circuit. See Hayut, 252 F.3d at 746 (citations omitted). Courts should instead be cognizant of the "fact-specific and circumstance-driven nature of hostile environment claims" when reviewing the pervasiveness of alleged harassment. Id. For instance, Defendants argue that gaps in Pratt's high school attendance defeat the hostile environment claim as it applies to his high school years. (Defs.' Mem. at 18.) Under Defendants' logic, a victim who misses school due to the psychological impact of harassment could never establish a hostile environment claim. Moreover, because all students transition between grades and schools with intervening breaks for holidays and summer, Defendants' argument would preclude any student from establishing a hostile environment claim beyond a very short time frame. Not surprisingly, this nonsensical result lacks any legal support and undermines the Supreme Court's fundamental recognition that Title IX bars schools from maintaining a hostile environment over time. See, e.g., Davis, 526 U.S. at 633-35, 653-54 (holding that a Title IX claim based student-on-student harassment spanning the winter holidays and spring break was sufficient to survive a Rule 12(b)(6) motion).

Contrary to the Defendants' argument, courts in the Title IX context often find that the harassment is pervasive precisely because it spans grades and schools.[11] In Riccio, the court

---

[11] However, a single or isolated incident of sexual harassment may, if sufficiently severe, create a hostile environment. See 2001 OCR Guidance at 6, n. 45 (citing Vance v. Spencer County

14

noted that the "term 'pervasive' implies that something is widespread." 467 F. Supp. 2d at 227. The court found two grounds on which the plaintiff could satisfy the pervasive element. Id. First, the fact that the harassment followed the plaintiff from school to school (i.e., her eighth grade year at Nathan Hale School to her ninth grade year at Community Magnet High School) could signify "a systemic problem within the district and amounts to a widespread issue of discrimination." Id. Second, the harassment could be "deemed pervasive because it continued throughout the school year." Id. ("This was not a single act of teasing, or even a few incidents spanning only a short time period.")

Similarly, in Theno, the court held that a rational trier of fact could find the harassment was pervasive because it transcended from one school to another and continued unabated throughout the school year. 377 F. Supp. 2d at 968. The harassment followed the plaintiff from his seventh, eighth, and ninth grade years at a junior high school to his tenth and eleventh grade years at Tonganoxie High School. Id. at 954-61. For instance, he was "teased for years based on the rumor that started in seventh grade to the effect that he had been caught masturbating in the boys' restroom." Id. at 968. Moreover, the harassment continued throughout the school year. Id. The plaintiff was "referred to as being gay or queer" and was routinely called names such as "fag," "faggot," "jack-off boy," "banana boy," "queer," "flamer," or "masturbator." Id.

In sum, the relevant case law establishes that a hostile educational environment can span breaks, classes, grades, and schools. The Defendants' unsupported arguments to the contrary defy common sense. Accordingly, Pratt should be given the opportunity to prove the

---

Pub. Sch. Dist., 231 F.3d 253 (6th Cir. 2000); Doe v. School Admin. Dist. No. 19, 66 F. Supp. 2d 57, 62 (D. Me. 1999).

15

pervasiveness of the alleged harassment under Title IX and the Equal Protection Clause without such artificial constraints.

## CONCLUSION

Based on the arguments above, the United States respectfully submits that:  harassment based on nonconformity with sex stereotypes is a legally cognizable sex-based claim under Title IX and the Equal Protection Clause, that sexual orientation harassment does not preclude a harassment claim based on non-conformity to sex stereotype, and that a hostile environment claim in primary and secondary schools can span classes, grades, and schools.  Defendants' arguments to the contrary should be rejected and as to these points their motion denied.

Dated: August 13, 2010                                    Respectfully submitted,

RICHARD S. HARTUNIAN                           THOMAS E. PEREZ
United States Attorney                                 Assistant Attorney General
Northern District of New York                     Civil Rights Division


     /s/ William H. Pease


WILLIAM H. PEASE (Bar Roll No. 102338)     AMY I. BERMAN
Assistant United States Attorney                 EMILY H. McCARTHY
                                                                   KRISHNA K. JUVVADI
                                                                   CHRISTOPHER S. AWAD
                                                                   Educational Opportunities Section
                                                                   Civil Rights Division
                                                                   U.S. Department of Justice
                                                                   950 Pennsylvania Ave., NW
                                                                   Patrick Henry Building, Suite 4300
                                                                   Washington, D.C. 20530
                                                                   Tel:  (202) 305-3186
                                                                   Fax: (202) 514-8337

16

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of August, 2010, I served copies of the foregoing

pleading to counsel of record via the United States District Court for the Northern District of

New York's electronic filing system:

Frank W. Miller
The Law Firm of Frank W. Miller
6575 Kirkville Road
East Syracuse, New York 13057
Facsimile: (315) 234-9908
E-mail: fmiller@fwmillerlawfirm.com

Thomas W. Ude, Jr.
Hayley Gorenberg
Lambda Legal Defense and Education Fund, Inc.
120 Wall Street, Suite 1500
New York, NY 10005-3904
Facsimile: (212) 809-0055
E-mail: tude@lambdalegal.org

Vickie Reznik
Adam T. Humann
Maura M. Klugman
Kirkland & Ellis LLP
Citigroup Center
153 East 53rd Street
New York, NY 10022-4611
Facsimile: (212) 446-4900
E-mail: vickie.reznik@kirkland.com

/s/ William H. Pease
_____
William H. Pease (Bar Roll No. 102338)
Assistant United States Attorney

UNITED STATES' MEMORANDUM AS *AMICUS CURIAE*
IN RESPONSE TO DEFENDANTS' MOTION TO
DISMISS/MOTION FOR SUMMARY JUDGMENT
Case No. 7:09-CV-411 (GTS/GHL)

# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JUNIOR DOE, et al                          :        CIVIL ACTION

                                           :

          v.                               :

                                           :        NO. 06-cv-1926

ALLENTOWN SCHOOL DISTRICT,                 :
  et al                                    :

## ORDER

AND NOW, this 8th   day of July, 2009, upon consideration of the United States'

Motion for Leave to Intervene and Defendant Allentown School District's Opposition thereto

(Doc. No. 134), the United States' Motion (Doc. No. 131) is hereby GRANTED.  The United

States shall file the Complaint in Intervention against Defendant Allentown School District

attached to its Motion for Leave to Intervene—subject to Paragraph 2 of the Court's June 30,

2009 Order addressing the redaction and amendment of Paragraph 10 of the United States'

Complaint in Intervention (Doc. No. 135)—within five (5) days of the date of this Order.

Defendant Allentown School District shall file a responsive pleading to the United States'

Complaint in Intervention within twenty (20) days of the date of this Order.


                                    BY THE COURT:


                                    _Thomas M. Golden_
                                    THOMAS M. GOLDEN, J.


*169-62-44*

JUL-09-2009  11:01                                                    P.002

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA



JUNIOR DOE, et al                    :      CIVIL ACTION
                                     :
         v.                          :
                                     :      NO. 06-cv-1926
                                     :
ALLENTOWN SCHOOL DISTRICT,           :
et al                                :

### MEMORANDUM OPINION

GOLDEN, J.                                          JULY 8 , 2009

Before the Court is the United States' Motion for Leave to Intervene in this action, which was filed on June 18, 2009.  In its Motion, the United States contends that it is entitled to intervene as of right pursuant to Rule 24(a)(2) of the Federal Rules of Civil Procedure.  Alternatively, the United States argues that the Court should permit intervention on the basis that the United States has satisfied the requirements of permissive intervention pursuant to Rule 24(b) of the Federal Rules of Civil Procedure.

The United States seeks to intervene in this case to support the sexual harassment claims asserted by Plaintiffs against Defendant Allentown School District ("ASD" or "School District") pursuant to Title IX of the Education Amendments of 1972.  (See U.S. Proposed Compl. in Intervention ¶ 1); see also 20 U.S.C. § 1681, et seq.  The United States' Proposed Complaint in Intervention is solely against ASD pursuant to Title IX.  (See U.S. Proposed Compl. in Intervention ¶ 2).  ASD is the only Defendant opposing the United States' request to intervene.  For the foregoing reasons, the United States' Motion for Leave to Intervene (Doc. No. 131) is granted.

### FACTUAL BACKGROUND

The claims in this action arise out of a series of alleged sexual assaults perpetrated by Defendant F.H.—a twelve-year old boy who transferred to Central Elementary School ("CES") in Allentown at the beginning of the 2003 school year—against four first-grade boys in bathroom stalls at CES.  (Second

169-62-44

Am. Compl. ¶¶ 38, 39, 49; Doc. No. 124).  The alleged assaults took place between December 2003 and March 2004.  (Id. at ¶ 39).[1]  Plaintiffs, the four minor victims of these alleged assaults, brought this action against ASD and several other defendants asserting various federal and state law claims. Plaintiffs are asserting two federal claims in this case: (1) one count against various defendants alleging violations of Plaintiffs' constitutional right to bodily integrity pursuant to 42 U.S.C. § 1983 and (2) one count against ASD alleging violations of Title IX.  (Id. ¶¶ 69-93).

This case was brought in May 2006.  (Doc. No. 1).  Plaintiffs subsequently filed a Motion for Leave to File a Second Amended Complaint in an effort to include, among other new claims, a count alleging violations of Title IX.  (Doc. No. 93).  After extensive briefing and oral argument, the Court granted Plaintiffs' request to include this Title IX count against ASD on February 26, 2009.  See Doe v. Allentown Sch. Dist., No. 06-1926, 72 Fed. R. Serv. 3d 1021, 2009 WL 536671, at *3-5 (E.D. Pa. Mar. 2, 2009); (Doc. No. 117).  On March 9, 2009, Plaintiffs filed their Second Amended Complaint, which included their Title IX claim against ASD.  (Doc. No. 118).  Plaintiffs subsequently filed a corrected Second Amended Complaint on April 21, 2009.  (Doc. No. 124).

## STANDARD

Pursuant to Rule 24(a)(2), "[o]n timely motion, the court must permit anyone to intervene who...claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). The Third Circuit Court of Appeals has interpreted Rule 24(a)(2) to require an intervening applicant to prove the following four elements: (1) a timely application for leave to intervene; (2) a sufficient interest

---

[1] For a more detailed description of the facts alleged in this case, see Doe v. Allentown Sch. Dist., No. 06-1926, 2007 WL 2814587, at *1-2 (E.D. Pa. Sept. 21, 2007) (Doc. No. 79).

in the litigation; (3) a threat that the interest will be impaired or affected, as a practical matter, by the

disposition of the action; and (4) inadequate representation of the prospective intervenor's interest by

existing parties to the litigation.  Kleissler v. U.S. Forest Serv., 157 F.3d 964, 969 (3d Cir. 1998); Harris

v. Pernsley, 820 F.2d 592, 596 (3d Cir. 1987), cert. denied, 484 U.S. 947 (1987).  "Although these

requirements are intertwined, each must be met to intervene as of right."  Harris, 820 F.2d at 596.

## ANALYSIS

The United States has satisfied the four elements necessary to intervene as of right pursuant to

Rule 26(a)(2).

**A.     Timeliness of Application**

The timeliness of a motion to intervene is determined from all the circumstances by the trial

court in the exercise of its sound discretion.  Mountain Top Condo. Ass'n v. Dave Stabbert Master

Builder, Inc., 72 F.3d 361, 369 (3d Cir. 1995).  The Third Circuit Court of Appeals has articulated three

factors for district courts to consider in determining whether a motion to intervene is timely: (1) how far

the proceedings have gone when the movant seeks to intervene; (2) the prejudice that delay may cause

the parties; and (3) the reason for the delay.  Pennsylvania v. Rizzo, 530 F.2d 501, 506 (3d Cir. 1976),

cert. denied, 426 U.S. 921 (1976); see also Mountain Top, 72 F.3d at 369.

An analysis of these factors demonstrates that the United States' Motion for Leave to Intervene is

timely.  Though this case is over three years old, Plaintiffs' Title IX claim against ASD was only added

in March 2009 (Doc. No. 118)—just over three months before the United States filed its request to

intervene in support of this claim.  Discovery in this matter has only just begun.  Paper discovery began

in May 2009, and depositions are scheduled to commence in July and August 2009.  (ASD Br. at 2).  A

Rule 16 Scheduling Conference was conducted on June 18, 2009, and the United States was permitted to

participate in this Conference.  (Doc. No. 132).  Additionally, a Scheduling Order was issued on June 30,

2009. (Doc. No. 136).

      As this case is in the early stages of protracted discovery and is not slated for trial until April 2011, any prejudice to ASD is minimal and not, as ASD contends, "severe." (ASD's Br. at 8). The United States' intervention poses little threat of interfering with the current discovery schedule set by the parties, especially since the United States' Proposed Complaint in Intervention does not add a new cause of action. Indeed, the United States asserted during the Court's June 18, 2009 Rule 16 Scheduling Conference that it "was prepared to adhere to any schedule that is set forth by the Court . . . and the parties." The United States also agreed to meet any deposition dates that have already been set by the parties. The Court has no reason to disbelieve such statements and will take the United States at its word that its involvement will not delay this case. In short, ASD's contention that the United States' intervention will further "complicate the discovery [of] an already complicated litigation process" is simply not sufficient to render the United States' intervention either untimely or prejudicial. (ASD's Br. at 8); see Lopez v. Metro. Gov't of Nashville and Davidson County, No. 07-799, 2008 WL 4831318, at *3-4 (M.D. Tenn. Nov. 4, 2009) (permitting intervention of United States to redress Title IX violations and holding that the United States' intervention request was timely where a comprehensive factual record had already been developed, discovery was almost complete, and the United States asserted that its involvement would not cause any modification of the scheduling deadlines).

**B.**    **Sufficient Interest in the Litigation**

      An applicant for intervention must demonstrate that its interest in the litigation is "a legal interest as distinguished from interests of a general and indefinite character." Harris, 820 F.2d at 601 (internal quotations omitted). The Third Circuit has further explained the "sufficient interest" requirement of Rule 26(a)(2): "[T]he polestar for evaluating a claim for intervention is always whether the proposed intervenor's interest is direct or remote. Due regard for efficient conduct of the litigation requires that

-4-

intervenors should have an interest that is specific to them, is capable of definition, and will be directly affected in a substantially concrete fashion by the relief sought.  The interest may not be remote or attenuated." See Kleissler, 157 F.3d at 972.

The United States asserts that it has "a direct and substantial interest in ensuring that recipients of federal funds, such as the Allentown School District, do not discriminate on the basis of sex in violation of Title IX." (U.S. Br. at 3).  The United States further notes that it "plays a central role in the enforcement of Title IX" and "has an interest in ensuring that its enforcement of Title IX in subsequent matters is not undermined by adverse precedent generated in this case." (Id. at 3-4).  However, ASD asserts that the United States does not have a sufficient interest in this lawsuit, contending that "[t]he allegations in this lawsuit do not involve systemic failure or lack of policy infrastructure"; rather, the United States' Complaint in Intervention only addresses four isolated incidents—incidents which have not been repeated.  (ASD Br. at 4-5).  ASD further cites the fact that the individual ASD Defendants allegedly involved in this matter have ceased working for the School District. (Id. at 5).

The United States has a sufficient interest in this litigation.  Several courts have held that the proper enforcement of Title IX, by ensuring that the recipients of federal funds do not discriminate on the basis of sex, is a sufficient interest.  Courts have also recognized an interest on the part of the United States to ensure that federal funds are not given to entities that fail to comply with federal anti-discrimination laws.  See, e.g., A.B. v. Rhinebeck Central Sch. Dist., 224 F.R.D. 144, 156-57 (S.D.N.Y. 2004) ("The Government certainly has a legally protectable interest in assuring that all students . . . are protected by Title IX.").  ASD's claim that Plaintiffs' allegations are merely the product of isolated incidents does not undercut the sufficiency of the United States' stated interests.  The United States certainly has an interest in determining whether ASD has policies, either explicitly or implicitly, that foster discriminatory conduct in violation of Title IX.  Notwithstanding ASD's contention that most,

-5-