# Exhibit B  —PART ( 2 )

if not all, of the individual ASD Defendants in this case have ceased working for the School District, the

existence of alleged discriminatory policies on the part of ASD goes beyond the individual ASD

Defendants in this case and broadly implicates the School District's culture of Title IX compliance.  The

United States' interest in this case is further supported by the fact that Congress has delegated to federal

departments and agencies both the authority to promulgate regulations to implement Title IX and the

responsibility to ensure that recipients of federal funds comply with the statute and its regulations.  See

20 U.S.C. § 1682.

C.      **Threat that Interest Will Be Impaired By Disposition of the Action**

"In order to prove an interest is impeded, the third part of the intervention test, the applicant must

demonstrate a tangible threat to its legal interest." United States v. Alcan Aluminum, Inc., 25 F.3d 1174,

1185 n.15 (3d Cir. 1994) (internal quotations omitted).  In other words, a proposed intervenor must

demonstrate that his or her interest "*might* become affected or impaired, as a practical matter, by the

disposition of the action in [his or her] absence." See Mountain Top, 72 F.3d at 368 (citing Alcan

Aluminum, Inc., 25 F.3d at 1185 n.15).

The United States has demonstrated that its interest might be impaired by the disposition of this

action if the United States is not permitted to intervene.  ASD argues that the United States need not be

involved in this case because the "United States can do an investigation and receive the materials it seeks

without the need to intervene."  (ASD Br. at 5).  However, whether the United States has an alternative

avenue is not the standard for intervention; rather the Court must focus on the impairment of the United

States' interests absent intervention.  See Lopez, 2008 WL 4831318, at *5 ("[W]hether or not there is

any alternative avenue for the movant is not the standard, but rather whether the movant's interest may

be impaired absent intervention.").  Here, among the other interests discussed above, the United States'

interest in *stare decisis* may be undermined in the absence of the United States' involvement in this case.

-6-

As one court has concluded, "an adverse judgment could interfere with the Government's ability to enforce Title IX . . . particularly in cases where a school district's response to allegations of sexual harassment proves inadequate to stop the harassment from continuing." See A.B., 224 F.R.D. at 157; see also Brody v. Spang, 957 F.2d 1108, 1123 (3d Cir. 1992) ("[T]his factor may be satisfied if, for example, a determination of the action in the applicants' absence will have a significant *stare decisis* effect on their claims . . . ."); Harris, 820 F.2d at 601 ("Courts thus have found that an applicant has a sufficient interest to intervene when the action will have a significant *stare decisis* effect on the applicant's rights . . . .").

**D.    Adequacy of Representation of United States' Interest by Existing Parties**

As to whether Plaintiffs will adequately represent the United States' interests in the absence of intervention by the United States, this element "is satisfied if the applicant shows that representation of his interest 'may be' inadequate." Mountain Top, 72 F.3d at 368 (quoting Trbovich v. United Mine Workers of Am., 404 U.S. 528, 538 n.10 (1972)). "[T]he burden of making that showing should be treated as minimal." Id. (quoting Trbovich, 404 U.S. at 538 n.10). A prospective intervenor's rights "are not adequately represented where: (1) the interest of the applicant so diverges from those of the representative party that the representative party cannot devote proper attention to the applicant's interest; (2) there is collusion between the existing parties; or (3) the representative party is not diligently prosecuting the suit." Alcan Aluminum, Inc., 25 F.3d at 1185 n.15; see also In re Comty. Bank of N. Va., 418 F.3d 277, 315 (3d Cir. 2005) (noting that there is a presumption of adequate representation).

The United States does not argue that there is collusion between the existing parties or that Plaintiffs are not diligently prosecuting their case. Thus, the question before the Court is whether the interests of Plaintiffs and the United States diverge sufficiently such that Plaintiffs cannot devote proper attention to the United States' interests. Though the United States and Plaintiffs present similar, if not

-7-

identical, Title IX claims, "[t]he 'tactical similarity' of the 'legal contentions' of a current party with that

of a proposed intervenor . . . does not assure adequate representation." See Sierra Club v. Robertson,

960 F.2d 83, 86 (8th Cir. 1992).

The United States has demonstrated that the existing parties to the litigation will inadequately

represent the United States' interests in this suit.  Governmental entities have litigation interests that are

inherently different from the interests of private litigants, as governmental entities intervene to protect

the interests of a broad constituency of citizens.  See id. (discussing State's interests versus interests of

private parties).  Plaintiffs only represent their individual interests and do not necessarily have an interest

to compel ASD to engage in comprehensive corrective measures.  See A.B., 224 F.R.D. at 157 ("The

Plaintiffs, despite alleging a pattern of on-going sexual harassment, only represent their individual

interests.").  Conversely, the United States represents the public in its totality and has a broad interest in

ensuring that school districts that receive federal funds comply with Title IX prospectively.  See Sierra

Club v. Espy, 18 F.3d 1202, 1208 (5th Cir. 1994) ("The government must represent the broad public

interest, not just the economic concerns of the timber industry.").

Plaintiffs are not seeking equitable relief under Title IX.  As a result, in the event Plaintiffs are

successful in the absence of intervention by the United States, this lawsuit will not result in ASD being

compelled to implement corrective action that would ensure that students are protected from

discriminatory practices.  The United States' Complaint in Intervention, however, seeks equitable relief,

thereby requiring ASD—if it acted unlawfully—to implement systemic changes that will protect ASD's

students from unlawful discrimination and harassment.  ASD notes that "Plaintiffs are not barred from

seeking injunctive relief."  (ASD Br. at 6).  While this may be the case, Plaintiffs are seeking no such

relief, which itself is indicative of the differing interests held by Plaintiffs and the United States.

Accordingly, the United States has met its minimal burden under this element of Rule 24(a)(2).  See

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA
The Madison Building, Room 401
400 Washington Street
Reading, PA 19601

Thomas M. Golden
Judge

Telephone (610) 320-5097
Facsimile (610) 320-5002

### FACSIMILE COVER SHEET

DATE: July 9, 2009

FAX NUMBER: 202-514-8337

PLEASE DELIVER TO: Allison Brown, Esq., United States Department of Justice

PAGES: 11, including cover sheet

FROM: Gilles R. Bissonnette, Law Clerk to the Honorable Thomas M. Golden

---

Please find attached a Memorandum Opinion and Order signed yesterday by Judge Thomas Golden granting the United States' Motion to Intervene in Junior Doe v. Allentown Sch. Dist., No. 06-1926. These documents should be docketed by approximately Friday, July 10, 2009.

co:  James L. Pfeiffer, Esq. For Plaintiffs (fax: 610-258-1943)
John E. Freund, Esq. For Allentown School District (fax: 610-332-0314)
Howard Stevens, Esq. For Lehigh Valley Hospital (fax: 610-820-6006)

UNITED STATES' MEMORANDUM AS *AMICUS CURIAE*
IN RESPONSE TO DEFENDANTS' MOTION TO
DISMISS/MOTION FOR SUMMARY JUDGMENT
Case No. 7:09-CV-411 (GTS/GHL)

# Exhibit B

Westlaw.

Slip Copy                                                                                      Page 1
Slip Copy, 2008 WL 4831318 (M.D.Tenn.), 71 Fed.R.Serv.3d 1535
(Cite as: 2008 WL 4831318 (M.D.Tenn.))

H

United States District Court,
M.D. Tennessee,
Nashville Division.
Kimberly **LOPEZ**, as guardian, next friend and par-
ent of Gilberto Lopez, a minor
v.
METROPOLITAN GOVERNMENT OF NASH-
VILLE AND DAVIDSON COUNTY; and Genesis
Learning Centers
United States of America, Movant for **Intervention**.
No. 3-07-0799.

Nov. 4, 2008.

West KeySummary
Federal Civil Procedure 170A 338

170A Federal Civil Procedure
    170AII Parties
        170AII(H) Intervention
            170AII(H)2 Particular Intervenors
                170Ak338 k. Governmental Bodies and
Officers Thereof. Most Cited Cases
The **United States** was allowed to **intervene** in a suit
against a public school board of education resulting
from the alleged sexual assault of a student by anoth-
er student on a special education school bus. The
**United States** met its minimal burden of showing
that the mother of the alleged victim might not ade-
quately represent its interest. If the mother were
barred from seeking injunctive relief because the al-
leged victim was no longer transported by special
education buses and the **United States** could seek
injunctive relief broader than what the mother could
assert, the mother's representation would be clearly
inadequate.

John R. Clemmons, Malcolm L. McCune, William
Gary Blackburn, Blackburn & McCune, PLLC,
Nashville, TN, for Kimberly Lopez.

Mark H. Wildasin, Office of the **United States** At-
torney, Nashville, TN, for **United States** of America,
Movant for **Intervention**.

Benjamin M. Rose, James K. Simms, IV, Jay N.

Chamness, Richard L. Tennent, Bell, Tennent &
Frogge, PLLC, Nashville, TN, for Metropolitan Gov-
ernment of Nashville and Davidson County; and Ge-
nesis Learning Centers.

*ORDER*

JULIET GRIFFIN, United States Magistrate Judge.

**\*1** As provided herein, the motion to **intervene** filed
by the **United States** (Docket Entry No. 109) is
GRANTED.

The **United States** seeks to **intervene**, pursuant to
**Rule 24(a) and (b) of the Federal Rules of Civil Pro-
cedure**, to "redress violations of Title IX of the Edu-
cation Amendments of 1972 ("Title IX")," 20 U.S.C.
§§ 1681 et seq. Docket Entry No. 109, at 1. Neither
the plaintiff nor defendant Genesis Learning Centers
filed a response to the motion to **intervene**, indicat-
ing that they have no opposition to the motion. *See*
Local Rule 7.01(b). However, defendant Metropoli-
tan Government of Nashville and Davidson County
("Metro") filed a response in opposition (Docket En-
try No. 115), to which the **United States** filed a reply
(Docket Entry No. 130).

*I. PROCEDURAL BACKGROUND*

The plaintiff initially filed this action on July 30,
2007, in the Davidson County, Tennessee Circuit
Court, naming as the defendant the Board of Educa-
tion for the Metropolitan Nashville Public Schools,
and asserting claims for damages under the Tennes-
see Governmental Tort Liability Act, Tenn.Code
Ann. §§ 29-20-101 et seq ., and 42 U.S.C. § 1983, as
a result of an alleged sexual assault on Gilberto Lo-
pez by another student on a Metro special education
school bus. The plaintiff also asserted claims for in-
junctive relief and sought to certify the case as a class
action.

Defendant Metro removed the case to this Court on
August 2, 2007. The defendant's motion to correct
misjoinder (Docket Entry No. 8) and the plaintiff's
motion to amend the complaint (Docket Entry No.
12) were granted by order entered September 10,

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Slip Copy                                                                                      Page 2
Slip Copy, 2008 WL 4831318 (M.D.Tenn.), 71 Fed.R.Serv.3d 1535
**(Cite as: 2008 WL 4831318 (M.D.Tenn.))**

2007 (Docket Entry No. 14), and the plaintiff filed her first amended complaint on September 14, 2007 (Docket Entry No. 15), naming the Metropolitan Government of Nashville and Davidson County as the sole defendant.

On November 13, 2007, the plaintiff filed a motion for class determination (Docket Entry No. 24), which the plaintiff agreed to withdraw, without prejudice on November 28, 2007. By order entered December 3, 2007 (Docket Entry No. 29), the plaintiff was given until December 7, 2007, to file a renewed motion for class certification with an accompanying memorandum. The plaintiff filed a renewed motion for class determination on December 7, 2008 (Docket Entry No. 31), to which the defendant responded (Docket Entry No. 34).

The plaintiff's motions to amend the complaint (Docket Entry No. 38 and 61) were granted by order entered March 7, 2008 (Docket Entry No. 70), and the plaintiff filed a third amended complaint on March 7, 2008 (Docket Entry No. 71), naming Genesis Learning Centers, a private school that contracted with Metro and that Gilberto attended, as an additional defendant.[FN1]

> FN1. The second amended complaint was never officially filed since the Court granted the plaintiff's leave to file the second and third amended complaints at the same time.

By order entered April 1, 2008 (Docket Entry No. 87), the plaintiff's motion for class determination was denied to allow Genesis an opportunity to address the plaintiff's motion. At the case management conference held on April 4, 2008, the plaintiff was given until June 16, 2008, to file a renewed motion for class certification. *See* order entered June 27, 2008 (Docket Entry No. 96). The plaintiff did not file a renewed motion for class certification, and, at the case management conference held on June 30, 2008, plaintiff's counsel confirmed that the plaintiff would not seek class certification in this case. *See* order entered July 2, 2008 (Docket Entry No. 99).

*2 The plaintiff's motion to file a fourth amended complaint (Docket Entry No. 93) was granted by order entered June 30, 2008 (Docket Entry No. 97), and the fourth amended complaint was filed on June 30, 2008, adding claims under Title II of the Ameri-

cans with Disabilities Act, 42 U.S.C. § 12132, § 504 of the Rehabilitation Act, 29 U.S.C. § 794, and 20 U.S.C. §§ 1681 et seq. ("Title IX"). That amended complaint is now the operative complaint in this case.

## II. *RULE 24(a)*

The **United States** seeks to **intervene** as of right under **Rule 24(a)(2)** of the Federal Rules of Civil Procedure, which provides as follows:

On timely motion, the court must permit anyone to **intervene** who:

* * *

claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.[FN2]

> FN2. **Rule 24(a)(1)** provides that, upon timely motion, a court must permit anyone to **intervene** who is given an unconditional right to **intervene** by a federal statute. The movant does not suggest that **intervention** is appropriate under section (a)(1).

A movant seeking to **intervene** as of right pursuant to **Rule 24(a)(2)** must show the following: (1) that the motion to **intervene** was timely; (2) that the movant has a substantial interest in the subject matter of the case; (3) that the movant's ability to protect that substantial legal interest may be impaired in the absence of **intervention**; and (4) that the parties already before the Court may not adequately represent the proposed **intervenor's** interest. *Coalition to Defend Affirmative Action v. Granholm, 501 F.3d 775, 779 (6th Cir.2007), petition for cert. denied, --- U.S. ----, 129 S.Ct. 35, 172 L.Ed.2d 239, 2008 WL 728200 (Oct. 6, 2008); Northeast Ohio Coalition for the Homeless and Serv. Employees Int'l Union, Local 1199 v. Blackwell, 467 F.3d 999, 1007 (6th Cir.2006); Providence Baptist Church v. Hillandale Comm., Ltd., 425 F.3d 309, 315 (6th Cir.2005); United States v. Michigan, 424 F.3d 438, 443 (6th Cir.2005); United States v. Tennessee, 260 F.3d 587, 591-92 (6th Cir.2001); Stupak-Thrall v. Glickman, 226 F.3d 467, 471 (6th*

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Slip Copy                                                                                                    Page 3
Slip Copy, 2008 WL 4831318 (M.D.Tenn.), 71 Fed.R.Serv.3d 1535
(Cite as: 2008 WL 4831318 (M.D.Tenn.))

Cir.2000); *Grutter v. Bollinger,* 188 F.3d 394, 397-98 (6th Cir.1999); *Michigan State AFL-CIO v. Miller,* 103 F.3d 1240, 1245 (6th Cir.1997); *United States v. Detroit Internat'l Bridge Co.,* 7 F.3d 497, 499 (6th Cir.1993); *Cuyahoga Valley Ry. Co. v. Tracy,* 6 F.3d 389, 395 (6th Cir.1993); *Jansen v. City of Cincinnati,* 904 F.2d 336, 340 (6th Cir.1990); *Grubbs v. Norris,* 970 F.2d 343, 345 (6th Cir.1989); *Bradley v. Milliken,* 828 F.2d 1186, 1191 (6th Cir.1987). A movant for **intervention** must satisfy all four prongs and failure to satisfy one of the prongs will result in denial of the motion. *United States v. Michigan, supra; Grubbs, supra.*

Although most frequently addressed in the context of determination of whether a putative **intervenor** has a substantial interest in the litigation, the Court of Appeals for the Sixth Circuit has also held that, in general, requests for **intervention** should be construed liberally in favor of granting **intervention.** *See Midwest Realty Mgmt. Co. v. City of Beavercreek,* 93 Fed.Appx. 782, 784 (6th Cir.2004); *Stupak-Thrall,* 226 F.3d at 472; *Purnell,* 925 F.2d at 950.

### A. Timeliness

**\*3** An evaluation of the timeliness of a motion to **intervene** should be made in the context of the relevant circumstances. *Jansen, supra; Bradley v. Milliken, supra.* Factors to be considered are (1) the point to which the lawsuit has progressed; (2) the purpose for which the **intervention** is sought; (3) the length of time that the movant knew or should have known of its interest in the case before it actually sought to **intervene;** (4) the prejudice to the original parties due to the movant's failure to promptly **intervene** after it knew or should have known of its interest in the case; and (5) the existence of unusual circumstances militating against or in favor of **intervention.** *Tennessee,* 260 F.3d at 592; *Stupak-Thrall,* 226 F.3d at 473; *Cuyahoga Valley,* 6 F.3d at 395-96; *Jansen, supra; Grubbs, supra.*

Defendant Metro argues that, because of the current procedural posture of the case, the movant should not be allowed to **intervene.** Specifically, defendant Metro suggests that the movant raises "the possibility of re-visiting discovery that is already complete and interfering with the current discovery schedule set by the existing parties." Docket Entry No. 115, at 3. However, the movant has represented that it "does

not intend to ask the Court to deviate from the deadlines set forth in the current scheduling orders," Docket Entry No. 110, at 7, and does not seek to add parties or claims to this case. The movant did not, however, unequivocally represent that it would not conduct any additional discovery, but instead maintained that it does not "intend to issue substantial discovery requests in light of the comprehensive factual record already developed in this case." Docket Entry No. 130, at 4. It would have been helpful to the Court to know what additional discovery, if any, the movant would seek. However, without that information, it appears that whatever additional discovery would be minimal particularly in light of the December 5, 2008, deadline for completion of fact discovery as established in the order entered October 10, 2008 (Docket Entry No. 126).

### (1) Point to Which Lawsuit Has Progressed

This case was filed over a year ago, discovery is almost complete, and the trial is scheduled on May 26, 2009. Although the movant is seeking to **intervene** at the later stage of this litigation, almost seven (7) months remain before the trial date.

### (2) Purpose for **Intervention**

The movant contends that it has a strong interest in ensuring that recipients of federal funds, such as defendant Metro, do not discriminate on the basis of sex in violation of Title IX, and an interest in ensuring that federal funds are not disbursed to entities that do not comply with the federal law. Docket Entry No. 110, at 4; Docket Entry No. 130, at 2. The movant also argues that it has a "powerful interest" in pursuing "the most expeditious and efficient means available" to eliminate allegedly discriminatory conditions. Docket Entry No. 130, at 3. In other words, although the movant can institute an investigation on its own, it is more efficient to seek relief in the context of this lawsuit in which discovery has already been conducted, rather than addressing the same issues in another, duplicative administrative proceeding.

**\*4** Defendant Metro has not disputed that the movant has a substantial interest in the subject matter of this litigation.

### (3) Length of Time Movant Knew or Should Have

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Slip Copy
Slip Copy, 2008 WL 4831318 (M.D.Tenn.), 71 Fed.R.Serv.3d 1535
**(Cite as: 2008 WL 4831318 (M.D.Tenn.))**

Page 4

*Known of Its Interest*

At the initial case management conference on November 28, 2007, plaintiff's counsel represented that the **United States** was aware of the lawsuit at that time.[FN3] According to the movant, it was the plaintiff's decision in June of 2008, not to seek class certification that was the pivotal event in its decision to seek **intervention** in this case. It is not entirely clear why the movant's decision was contingent upon the plaintiff's determination not to seek class certification, and is not clear whether the movant believes that, by no longer seeking class certification, the plaintiff has also abandoned her request for injunctive relief or whether the plaintiff simply will be less motivated to seek injunctive relief.

> FN3. Interestingly, although the plaintiff had asserted a Title IX claim in the companion case of *Staehling v. Metro*, 3-07-0797, in the initial complaint filed in state court on July 16, 2007, it was not until April 30, 2008, that the plaintiff sought to add a Title IX claim in this case by a fourth amended complaint. *See* Docket Entry No. 93. Just as interesting, the movant did not seek to **intervene** in the *Staehling* case even though a Title IX claim had been asserted throughout that litigation. The movant did, however, seek to file and was granted leave to file an amicus brief in the *Staehling* case.

Although the movant was clearly aware of the pendency of this case and its own interest well before June of 2008, the movant's level of concern for the potential impairment of its interest and the potential that the plaintiff might not adequately represent the movant's interest was clearly elevated once the plaintiff decided not to seek class certification.

*(4) Prejudice to Other Parties*

The only party that has asserted potential prejudice is defendant Metro, which raises the specter of the movant's revisiting the extensive discovery already taken in this case. However, the movant represents that its **intervention** will not cause any modification of scheduling deadlines and that it will not engage in "substantial" additional discovery. Without more information from the movant about what discovery it might seek, it is difficult to determine if the concerns

of defendant Metro have any validity. However, the Court will take the movant at its word and assume that discovery, if any, it may seek will be minimal, and thus defendant Metro will not suffer prejudice as a result of any delay by the movant in seeking to intervene.

*(5) Other Factors*

The parties have not addressed other factors that would militate in favor of granting or denying **intervention**.

When coupled with the movant's representations that its **intervention** in this case will not serve to delay the deadline for completion of discovery or the other deadlines in this case, the Court cannot find that the case has progressed to the point that the movant should not be permitted to **intervene**. Based on the representations of the movant's counsel, the concerns raised by defendant Metro of revisiting discovery and interfering with the current discovery schedule appear unsubstantiated.

*B. Substantial Interest in the Subject Matter*

There is no dispute that the movant has a substantial interest in the subject matter of the case and specifically in enforcement of Title IX, and defendant Metro has not suggested otherwise.

*C. Impairment of Movant's Interest*

**\*5** The burden of showing that the interest of the movant may be impaired in the absence of **intervention** is minimal. *See Miller*, 103 F.3d at 1247. *See also Purnell*, 925 F.2d at 948; *Grutter*, 188 F.3d at 399. The movant argues that, since the plaintiff is no longer seeking class certification, there is a greater likelihood that this case could be resolved "through a settlement agreement or other monetary disposition that does not compel Metro to implement the institutional changes necessary to ensure that students are protected from [ ] dangerous and discriminatory conditions in the future." Docket Entry No. 110, at 5. In addition, the movant contends that a ruling in favor of defendant Metro could "complicate the **United States**' efforts to prosecute future instances of unlawful discrimination" in this district by establishing adverse precedent. Docket Entry No. 110, at 6.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Slip Copy                                                                                          Page 5
Slip Copy, 2008 WL 4831318 (M.D.Tenn.), 71 Fed.R.Serv.3d 1535
(Cite as: 2008 WL 4831318 (M.D.Tenn.))

Defendant Metro is correct that the movant has another avenue of seeking relief available since the United States can pursue a Title IX administrative enforcement action against Metro. Thus, defendant Metro argues that the movant does not "need" to intervene in this case. Docket Entry No. 115, at 2. However, whether or not there is any alternative avenue for the movant is not the standard, but rather whether the movant's interest may be impaired absent intervention. Defendant Metro did not respond to the movant's contention that a potential adverse precedent in this case could impair the movant's ability to enforce Title IX violations in this District, and the Court finds that the movant has met its minimal burden of showing that its interest could be impaired without intervention.

### D. Adequacy of Representation

As the movant implicitly suggests, this factor blends into the consideration of impairment of the movant's interest. Again, the movant has only a minimal burden of showing that the existing parties may not adequately represent the movant's interest. *Trbovich v. United Mine Workers of Am.,* 404 U.S. 528, 538 n. 10, 92 S.Ct. 630, 30 L.Ed.2d 686 (1972); *Blackwell,* 467 F.3d at 1008; *United States v. Michigan, supra; Grutter,* 188 F.3d at 400; *Litton by Arnold v. Commissioner of Health & Env't,* 973 F.2d 1311, 1319 (6th Cir.1992); *Doe v. Briley,* 2007 WL 1345386, * 5 (May 7, 2007) (Trauger, J.).

A determination of adequacy of representation can involve consideration of whether there is collusion between the existing parties or whether the parties have adverse interests to the putative intervenor. *See Purnell,* 925 F.2d at 949-950. The plaintiff and the putative intervenor are not adverse and there is no hint of collusion between the plaintiff and the existing defendants. In addition, if all the movant sought was to intervene to seek damages on behalf of the plaintiff, there would be absolutely no grounds for the United States to intervene. The plaintiff and her counsel are clearly capable of pursuing and motivated to pursue claims for damages. However, the movant argues that, because the plaintiff is no longer seeking class certification, there is a greater likelihood of settlement or other resolution of this case that might not include a requirement that defendant Metro implement institutional changes.

*6 Defendant Metro suggests that the plaintiff jettisoned her class claims because she would not have been successful in pursuing class certification. In so doing, defendant Metro appears to have merged the merits of class certification with the issue of whether either the plaintiff or the movant can pursue a Title IX claim seeking "institutional changes" without the case having been certified as a class action. The movant does not seek to revive a request for class certification; nor would such a request to seek class certification be granted at this stage in the case. In addition, the plaintiff has not withdrawn her Title IX claim.

The defendant has not contended that "institutional changes" cannot be sought by either the plaintiff or the movant in this case without class certification. Neither the movant nor the plaintiff has addressed the scope of the injunctive relief to which either would be entitled or whether injunctive relief in the form of "institutional changes" remains available if Gilberto is no longer transported by Metro special education buses. It is also not clear whether any remedy sought by the movant would be coterminous with the remedy the plaintiff could seek. If the plaintiff is barred from seeking injunctive relief because Gilberto is no longer transported by Metro special education buses and the United States can seek injunctive relief broader than what the plaintiff can assert, the plaintiff's representation is clearly inadequate. Even if the relief that the plaintiff seeks can still properly include injunctive relief, if the plaintiff is no longer transported by Metro special education buses, the plaintiff may understandably concentrate on seeking compensatory damages–either through litigation or settlement–to the potential detriment of claims for injunctive relief. Thus, the movant has met its minimal burden of showing that the plaintiff may not adequately represent the interest of the movant.[FN4]

> FN4. The movant's contentions on the issues of substantial interest, impairment and adequacy of representation are exactly the same arguments made in and accepted by the Southern District of New York in *AB v. Rhinebeck Central Sch. Dist.,* 224 F.R.D. 144, 156-157 (S.D.N.Y.2004).

In addressing this factor, defendant Metro again echoes its concern that intervention will delay the

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

progression of the case and further complicate the case with additional discovery. Those concerns, while valid, are more appropriately addressed, and were addressed, in the context of consideration of the timeliness of the motion to **intervene**.

Taking into account that the Sixth Circuit has directed that requests for **intervention** be treated liberally, along with the minimal standards for determining impairment of interest and inadequate representation, the Court finds that the motion to **intervene** should be granted.

Despite having granted the motion to **intervene**, the Court will not extend any scheduling deadlines already established in this case because of such **intervention**, and, as addressed above, takes the **United States** at its word that its **intervention** in this case will not cause any disruption to the schedule already established. *See* Advisory Committee Notes to the 1996 amendments to Rule 24 ( **intervention** may be subject to "appropriate conditions or restrictions responsive among other things to the requirements of efficient conduct of the proceedings").

*7 Having determined that **intervention** is appropriate under Rule 24(a)(2), it is not necessary to address whether the movant should be granted permissive **intervention** under Rule 24(b)(2).

The Clerk is directed to file and docket the complaint in **intervention** attached to the motion to **intervene** (Docket Entry No. 109-1).

Defendant Metro shall have until November 24, 2008, to file a response to the complaint in **intervention**.

Any party desiring to appeal this order of the Magistrate Judge may do so by filing a motion for review no later than ten (10) days from the date of service of this order. The motion for review must be accompanied by a brief or other pertinent documents to apprise the District Judge of the basis for the appeal. *See* Rule 9(a) (1) of the Local Rules for Magistrate Judge Proceedings.

It is so ORDERED.[FN5]

FN5. The Court has considered the motion

to **intervene** as a nondispositive motion under 28 U.S.C. § 636(b)(1)(A). However, should the motion be considered to be the functional equivalent of the motions specifically enumerated in 28 U.S.C. § 636(b)(1)(A), *see Vogel v. U.S. Office Prods. Co.*, 258 F.3d 509 (6th Cir.2001); *Massey v. City of Ferndale*, 7 F.3d 506 (6th Cir.1993); *Bennett v. General Caster Serv. of N. Gordon Co.*, 976 F.2d 995 (6th Cir.1992), this order may be deemed to be a report and recommendation for which the standard of review is de novo.

M.D.Tenn.,2008.
Lopez v. Metropolitan Gov. of Nashville and Davidson County
Slip Copy, 2008 WL 4831318 (M.D.Tenn.), 71 Fed.R.Serv.3d 1535

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

# Exhibit C

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

RECEIVED

2000 AUG -3  PM 12: 40

CIVIL RIGHTS DIVISION
EDUCATION OPP. LIT. SEC.

JEREMY LOVINS,                          )
                                        )
         Plaintiff,                     )
                                        )
and                                     )          Case No. 99-0550-CV-W-2
                                        )
UNITED STATES OF AMERICA,               )
                                        )
         Plaintiff-Intervenor           )
                                        )
         v.                             )
                                        )
PLEASANT HILL PUBLIC SCHOOL             )
DISTRICT, R-III,                        )
                                        )
         Defendant.                     )

FILED
JUL 3 1 2000
P. L. BRUNE, CLK
U.S. DISTRICT COURT
WEST DISTRICT
OF MISSOURI

## CONSENT ORDER

On June 4, 1999, Plaintiff Jeremy Lovins ("plaintiff," "Jeremy," or "Mr. Lovins") filed this action, alleging that, for four years, Defendant Pleasant Hill Public School District, R-III ("defendant" or "the District"), and Hugh Graham,[1] caused him to be harassed on the basis of sex and sexual orientation.  In his Complaint, Mr. Lovins alleged, inter alia, violations of the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution and Title IX of the Education Amendments of 1972, 20 U.S.C. 1681, et seq.  In its Answer, the defendant expressly denied the plaintiff's claims.  The United States, after conducting a preliminary evaluation of the plaintiff's allegations and the defendant's responses, informed the parties on May 19, 2000, that

---

[1]On February 11, 2000, the Court ordered Defendant Hugh Graham dismissed with prejudice from this action.

ORIGINAL

the Attorney General had certified this case as one of general public importance for purposes of seeking intervention under Title IX of the Civil Rights Act of 1964, 42 U.S.C. 2000h-2. Contemporaneously with the filing of this Consent Order, the United States is filing its Complaint-in-Intervention and accompanying Certificate of the Attorney General. The defendant does not contest this Court's jurisdiction over, or the United States' right to intervene in, this case.

The parties desire to avoid costly and protracted litigation and have voluntarily agreed, as indicated by the signatures below, to resolve the plaintiff's and United States' claims against the defendant without the necessity of an evidentiary hearing. After reviewing the terms of this Consent Order, the Court concludes that the entry of this Consent Order comports with federal law and is appropriate under all the circumstances.

Therefore, it is ORDERED, ADJUDGED and DECREED as follows:

## I. **Factual Background**

A. Defendant Pleasant Hill Public School District, R-III is organized under, and exists pursuant to, the laws of the State of Missouri, and is a recipient of Federal financial assistance. During the 1994-95 school year, Plaintiff Jeremy Lovins attended the eighth grade at Pleasant Hill Middle School, which is operated by the defendant; during the 1995-96, 1996-97, and the first semester of the 1997-98 school years, the plaintiff attended the ninth, tenth and eleventh grades, respectively, at Pleasant Hill High School, which is also operated by the defendant.

B. During the period from 1995 through 1998, the plaintiff was subjected to harassment on the basis of sex and perceived sexual orientation by his classmates. The United States and the plaintiff contend that, as a result of this harassment, the plaintiff completed the eleventh and twelfth grades on a homebound program provided by the District. The plaintiff and the United

Page 2 of 18



States contend that the harassment on the basis of sex and perceived sexual orientation was severe, pervasive and objectively offensive; that District officials with authority to rectify the situation were given notice of the harassment but failed to take immediate and appropriate corrective actions; that these District officials were deliberately indifferent to this harassment; and that this deliberate indifference prevented Jeremy Lovins from enjoying educational benefits and opportunities. The plaintiff and the United States further contend that the District's response to Jeremy Lovins's complaints of harassment constituted a violation of the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States and Title IX of the Education Amendments of 1972. The defendant denies these allegations. Neither the defendant's agreement to the terms of this Consent Order nor any other action taken by the defendant in connection with this settlement constitutes an admission of wrongdoing or a violation of any state or federal law by the defendant.

**II. Scope and Duration of Consent Order**

A. This Consent Order is effective immediately upon its entry by the Court and shall remain in effect for two (2) years from the date of entry or ninety (90) calendar days after the last report under Section VII is received, whichever date is later, absent an extension as set forth in Section II.C.

B. The Court shall retain jurisdiction over this action during the two-year period specified above, absent an extension as set forth in Section II.C, to insure compliance with all provisions of this Consent Order.

C. The United States may move the Court to extend the period in which this Consent Order is in effect if it determines that the defendant likely has violated one or more terms of the

Page 3 of 18

Order, or if the interests of justice otherwise require an extension of the terms of the Order.

D.  The parties to this Consent Order shall endeavor in good faith to resolve informally any differences regarding interpretation of, and compliance with, this Order prior to bringing such matters to the Court for resolution. However, in the event that the defendant either fails to perform in a timely manner any act required by this Order or acts in violation of any provision of this Order, the United States may move the Court to impose any remedy authorized by law or equity, including, but not limited to, an order requiring performance or non-performance of certain acts and an award of any damages, costs, and attorneys' fees that may have been occasioned by the defendant's actions or non-actions.

E.  The parties agree that the time limits set forth throughout this Consent Order may be expanded upon mutual consent of the parties.

## III.  Injunctive Relief

The defendant, its agents, employees, successors, and all persons in active concert or participation with it, are enjoined from:

A.  Engaging in any act or practice that has the purpose or effect of discriminating against any student on the basis of that student's sex or sexual orientation in the administration or provision of educational services, programs, opportunities or benefits;

B.  Failing to respond promptly and appropriately to allegations of harassment or discrimination on the basis of sex or sexual orientation;

C.  Retaliating against, or taking any actions that may have the purpose or impact of adversely affecting, any student or employee because that student or employee has alleged, opposed, or filed or participated in a complaint with the District or any federal, state, local or

non-governmental entity concerning, harassment or discrimination on the basis of sex or sexual orientation.

**IV. Retention of Expert/Development of Comprehensive Plan and Training Program**

   A. Within thirty (30) calendar days from the date of entry of this Consent Order, the District shall retain, and submit to the United States[2] the name(s) and resumes of, individual(s) and/or organization(s) with appropriate expertise in the area of sexual harassment prevention and training in the context of elementary/secondary education, to:

      1. Evaluate the District's policies, practices and procedures for preventing, identifying and remediating harassment and discrimination on the basis of sex or sexual orientation;

      2. Conduct a school climate assessment, in consultation with and with the approval of the superintendent, and prepare a written analysis of each school in the District regarding student to student and teacher to student interactions, to determine whether circumstances warrant school-specific actions;

      3. Develop a comprehensive plan to prevent, identify and remediate harassment and discrimination on the basis of sex or sexual orientation ("the Comprehensive Plan"), as described in Section V, below;[3] and

-------------------------

[2]All documents or reports required to be submitted to the United States pursuant to this Consent Order shall be addressed to: Chief, Educational Opportunities Section, Civil Rights Division, U.S. Department of Justice, P.O. Box 65958, Washington, DC, 20035-5958.

[3]Although this Consent Order obligates the District to develop and implement a comprehensive plan to prevent, identify and remediate harassment and discrimination on the basis of sex or sexual orientation, the District is encouraged to develop and implement similar plans to prevent, identify and remediate harassment and discrimination on the basis of race, ethnicity, national origin and disability. See, e.g., Office for Civil Rights, U.S. Department of Education,

4. Develop a mandatory education and training program ("the Training Program"), as described in Section VI, below, for all District school board members and employees.[4]

B. Within ninety (90) calendar days from the date of entry of this Consent Order, the defendant shall deliver to counsel for the United States, at the address set forth previously, copies of the written school climate assessments and analyses, the proposed Comprehensive Plan, the proposed Training Program, and all supporting materials.

C. Within one hundred twenty (120) calendar days from the date of entry of this Consent Order, the United States shall provide written comments or objections, if any, to the defendant that pertain to the items set forth in Section IV.B, above. The defendant shall make a good faith effort to address any concerns of the United States, and, where appropriate, incorporate any suggestions or modifications proposed by the United States.

V. Comprehensive Plan for Preventing, Identifying and Remediating Harassment and Discrimination on the Basis of Sex or Sexual Orientation

The Comprehensive Plan shall be implemented by the District within one hundred eighty (180) calendar days from the date of entry of this Consent Order, and shall, at a minimum, include the following provisions:

A. The District's general statement of policy. The District shall revise its written policy prohibiting harassment and discrimination on the basis of sex or sexual orientation, to insure that

---

and National Association of Attorneys General, Protecting Students from Harassment and Hate Crime: A Guide for Schools at ii (1999).

[4]For purposes of this Consent Order, "employees" shall be defined to include all central office and school administrators, counselors, teachers, teacher aides, coaches, secretaries, playground supervisors, bus drivers, cafeteria workers, custodians, and all other staff members who have contact with students.

Page 6 of 18

the written policy (1) sets forth the District's commitment to protect students from harassment and discrimination and to maintain a nondiscriminatory environment; (2) states that all students, regardless of sex or sexual orientation, are entitled to an educational environment free from harassment and discrimination; (3) reaffirms that the District shall respond to male and female students' complaints of harassment promptly, appropriately and with the same degree of seriousness; (4) requires all District employees to promptly report, to the principal or a compliance coordinator (as described in Section V.J, below), harassment that they observe, are informed of, or reasonably suspect; and (5) prohibits retaliation against students or District employees who report allegations of harassment or discrimination, or who participate in the reporting or investigation of such allegations.

   B.  Definitions and examples of prohibited conduct.  The District shall define harassment and discrimination on the basis of sex or sexual orientation, and provide concrete examples of each.

   C.  Policies and procedures for reporting prohibited conduct.  The District shall explain how to report allegations of harassment and discrimination, and, with annual revisions (as appropriate), identify to whom at each school in the District and at the District's central office such allegations should be reported.  The District shall set forth formal complaint procedures within the District and shall also inform students and their parents of their rights to file complaints with the U.S. Department of Education, the U.S. Department of Justice, and other state or local entities, including the right to bring an action in state or federal court.

   D.  Policies and procedures for investigating complaints.  The District shall describe the steps it will take to respond to reported incidents of harassment or discrimination, including but

not limited to taking disciplinary measures against those found to have engaged in such acts, and, where appropriate, reporting violent or criminal conduct to law enforcement authorities.

E. Policies and procedures for remediating violations. The District shall explain the disciplinary measures available against persons who are found to have engaged in harassment or discrimination on the basis of sex or sexual orientation. Corrective action shall be, among other things, appropriate to the severity of the harassment; calculated to end the harassment and prevent retaliation; and designed to insure that the offending conduct does not limit and/or interrupt the ability of the complainant (and the victim, if different) to participate in, or benefit from, the educational services, programs and/or opportunities provided by the District.

F. Policies regarding confidentiality. The District shall explain what efforts it will make, consistent with its legal obligations to investigate, to take appropriate action, and to conform with any discovery or disclosure obligations, to respect the privacy of the complainant, the victim, individuals against whom a complaint is filed, and witnesses.

G. Dissemination of policies and procedures, and training of personnel. The District shall inform all employees of the requirements of this Consent Order and shall post, in prominent places throughout each school and District administrative building, its revised policies concerning harassment and discrimination on the basis of sex or sexual orientation.

H. Dissemination of policies and procedures to students and parents. The District shall inform students and their parents, through, at a minimum, annual meetings with all students, an annual distribution of notices to students and mailings to parents or guardians, and inclusion in student and parent handbooks, of the District's policies prohibiting harassment and discrimination on the basis of sex or sexual orientation, including how and to whom to report harassment or

Page 8 of 18

discrimination, how to file a formal complaint, and what steps the District will take to investigate complaints and punish those found to have engaged in prohibited conduct.

I. <u>Student curriculum.</u> As part of each school's regular curriculum, at least annually the District shall train students (using age-appropriate training materials) about preventing, identifying and responding to harassment and discrimination on the basis of sex or sexual orientation;

J. <u>Designation of compliance coordinators (one male and one female teacher or administrator) at each school in the District.</u> The compliance coordinators shall be appointed by the District Superintendent and shall be empowered to receive and investigate complaints of harassment or discrimination, and to take such other actions as may be delineated. The District shall insure that appropriate time is afforded the compliance coordinators to fulfill their duties as described herein. The District shall inform its employees, students and parents or guardians of the identities and roles of the compliance coordinators. The District shall, on at least an annual basis, provide the compliance coordinators with appropriate training. Such training shall, at a minimum, include (1) how to investigate allegations of harassment or discrimination on the basis of sex or sexual orientation; (2) how to document and maintain records of such investigations; (3) how to balance the complainant's privacy and confidentiality concerns with the notification of complainant's teachers to prevent additional incidents of harassment or discrimination; and (4) how to remediate such harassment or discrimination. Any new compliance coordinators who may be designated in the future shall receive appropriate training within thirty (30) calendar days.

K. <u>Record-keeping.</u> The District shall maintain a written record ("Incident Report") of each and every allegation, whether verbal or in writing, of harassment or discrimination on the basis of sex or sexual orientation. The Incident Report shall, at a minimum, include (1) the name

of the person making the allegation, and, if different, the name of the alleged victim; (2) the nature of the allegation and the date of the alleged incident; (3) the names of all persons alleged to have committed violations; (4) the names of all persons who may have relevant information about the incident; (5) the written statements of the complainant, the victim (if different from the complainant), the alleged perpetrator, and any witnesses; (6) the outcome of the investigation; (7) any action taken by the District; and (8) attached copies of any documents supplied to the District or created during the investigation or complaint process.  The Incident Report shall be completed no later than fifteen (15) calendar days after the date upon which the complaint is first made.  The compliance coordinators, the school building principal, and the Superintendent shall be supplied with a copy of each such Incident Report, and, in a space specifically designated, each shall initial the Incident Report to indicate that s/he has reviewed the Report and approves of the actions taken by the investigating official.

## VI. Mandatory Education and Training Program

A.  The District shall begin implementation of the Training Program within one hundred eighty (180) calendar days from the date of entry of this Consent Order.  Within two hundred ten (210) calendar days from the date of entry of this Consent Order, the District shall insure that all District school board members and employees have participated in the Training Program.

B.  The Training Program shall, at a minimum, include the following:

1. Informing each individual of the District's policies prohibiting any act or practice that has the purpose or effect of discriminating against any student on the basis of that student's sex or sexual orientation in the administration or provision of educational services, programs, opportunities or benefits;

2.  Informing each individual of her or his duties and responsibilities under the District's Comprehensive Plan for preventing, identifying and remediating harassment and discrimination on the basis of sex or sexual orientation, and of the consequences to each individual for failure to comply with these duties and responsibilities;

3.  Informing each individual of the District's procedures for the prompt reporting of incidents of harassment or discrimination;

4.  Discussing how to structure a classroom and school environment in which harassment and discrimination are not tolerated;

5.  Holding a question and answer session to review each of the foregoing areas; and

6.  Certification of attendance by the person conducting the Training Program for each person attending the program.

C.  The District shall conduct a comparable Training Program within thirty (30) calendar days of the start of each school year.

D.  New District school board members and employees shall participate in a comparable Training Program within thirty (30) calendar days from the start of their affiliation with, or employment in, the District.

VII.  **Reports to the United States**

A.  On or before January 31, 2001, June 30, 2001, and June 30, 2002, the defendant shall deliver to counsel for the United States, at the address set forth previously, a detailed report covering the preceding reporting period containing information about the defendant's compliance efforts with this Consent Order, including but not limited to:

1.  Copies of the District's policies and procedures for preventing, identifying, reporting and responding to harassment and discrimination on the basis of sex or sexual orientation, including any revisions since the previous report;

2.  Copies of notices and other materials provided to employees, students and parents of the District's policies and procedures for preventing, identifying, reporting and responding to harassment and discrimination on the basis of sex or sexual orientation, and a description of how and when these notices and materials were distributed;

3.  Copies of the agenda (including date of training) and all materials used in the Training Program for District school board members and employees;

4.  Copies of all certifications of attendance of District school board members and employees in the Training Program;

5.  A list of compliance coordinators, by sex, job title and school;

6.  Copies of the agenda (including date of training) and all materials used in the training of compliance coordinators;

7.  The names of all trainers and copies of their resumes, vitae and/or brochures;

8.  Copies of all posters or notices regarding harassment and discrimination on the basis of sex or sexual orientation, and a description of when they were posted and where;

9.  Copies of all Incident Reports, as described in Section V.K., above.  (The District may redact the names of minor students or request that the United States maintain the confidentiality of these records to the extent permitted by law.); and

10.  Narrative descriptions of upcoming training and other activities related to the prevention of harassment and discrimination.

Page 12 of 18

B.  Within sixty (60) calendar days of receipt of any of the above reports, the United States may request, in writing, clarifications of, or supplementation to, the report.  In that event, the District shall provide such clarifications and/or permit the inspection and copying of supplemental materials as the United States may reasonably request.

## VIII.  Compensation of Plaintiff and Release of Claims

In consideration of the mutual covenants, promises and consideration contained herein, the parties agree as follows:

A.  This Consent Order (including this release) does not constitute, nor shall it be construed as, an admission of any liability or wrongdoing by any party.

B.  The District shall pay to Jeremy Lovins within ten (10) business days from date of entry of this Consent Order, the total sum of seventy-two thousand five hundred and 00/100 U.S. dollars ($72,500.00), by check made payable to Mr. Jeremy Lovins and Mr. Douglas Patterson, his attorney, for settlement of any and all claims that Mr. Lovins may have against the District, and its affiliates and subsidiaries, together with their respective members, directors, officers, agents, and employees, including but not limited to, claims for compensatory damages, personal injury, emotional distress, loss of reputation, humiliation, embarrassment, costs, expenses and attorneys' fees.

C.  Jeremy Lovins hereby releases, remises, and forever discharges the District, and its affiliates and subsidiaries, together with their respective members, directors, officers, agents, and employees, including their attorneys, from any and all claims or other causes of action he may have against them, including but not limited to — any alleged rights or claims arising under Title IX of the Education Amendments of 1972; 20 U.S.C. 1681, et seq.; 42 U.S.C. 1983; 42 U.S.C.

1985; the Americans With Disabilities Act, 42 U.S.C. 12101, et seq.; 42 U.S.C. 1981; the

Rehabilitation Act of 1973, 29 U.S.C. 791, et seq.; the Missouri Human Rights Act, Mo. Rev.

Stat. ch. 213; and any other alleged discrimination; personal injury; wrongful act; or any other

violation of federal, state, or local statutory or common law — relating to or arising out of Mr.

Lovins's enrollment in, attendance at, and status as a student of the District, including but not

limited to claims for the physical and emotional injuries, up to and including the date on which this

release becomes effective.

D.  Mr. Lovins agrees that simultaneously with the submission of this Consent Order to

the Court, his attorney, Mr. Douglas Patterson, shall also file in the United States District Court

for the Western District of Missouri, Western Division, the Motion to Dismiss attached hereto as

Exhibit A, which Motion requests that, contingent on the Court's signing and entering this

Consent Order, all claims asserted in Case No. 99-0550-CV-W-2 be dismissed with prejudice,

each party to bear its own costs.

E.  Mr. Lovins agrees not to enter into any suit, action, or other proceeding at law or in

equity, or to prosecute further any suit or action that might presently exist, or to make any claim

or demand of any kind against the District or any of its affiliates and subsidiaries, together with

their respective members, directors, officers, agents, and employees, asserting any claim released

by Mr. Lovins in Section VIII.C, above, other than an action to enforce his rights herein.  If Mr.

Lovins enters into any action in violation of this Section, Mr. Lovins shall forfeit all sums paid

pursuant to Section VIII.A, above, and shall pay all legal costs, including attorneys' fees, incurred

by the District, its affiliates and subsidiaries, and their respective officers, directors, agents, and

employees in defending against such action.

F.  Mr. Lovins acknowledges that this Consent Order (including his release of all claims) has been reviewed in detail with him and that its language and intended effect have been explained, and that he has had the opportunity to review the Consent Order (including his release of all claims) with an attorney of his choice.  Mr. Lovins also acknowledges that he has voluntarily entered into this Consent Order (including the release of all claims) of his own free will based only upon the terms and conditions included in the Consent Order and release.

G.  The provisions of this release will be governed by the laws of the State of Missouri.

H.  If a court of competent jurisdiction determines that any provision contained in this release, or any part thereof, cannot be enforced, the parties agree that such determination shall not affect or invalidate the remainder of the release.

I.  This Consent Order (including the release of all claims) constitutes the entire agreement between Mr. Lovins and the District, and supercedes all prior understandings, whether oral or written, between the parties.  Any amendments or modifications to this Consent Order (including the release of all claims) must be in writing and signed by the parties.

J.  This agreement shall inure to the benefit of and be binding upon the parties hereto and their respective heirs, successors, and assigns.

ORDERED, this 31st day of July, 20__

FERNANDO J. GAITAN, JR.
United States District Judge

Page 15 of 18

By their signatures on this and the following pages, the undersigned parties and counsel agree to, and request the entry of, this Consent Order:

Plaintiff Jeremy Lovins:                    Counsel for Plaintiff Jeremy Lovins:


JEREMY LOVINS                               DOUGLAS A. PATTERSON
                                            The Argent Law Firm
                                            1125 Grand, SW 1801
                                            Kansas City, MO 64106
                                            (816) 472-5297

Page 16 of 18

Counsel for Plaintiff-Intervenor United States:

STEPHEN L. HILL, JR.                    BILL LANN LEE
United States Attorney                  Acting Assistant Attorney General

THOMAS M. LARSON                        JEREMIAH GLASSMAN
Deputy U.S. Attorney                    MICHAEL S. MAURER
MO Bar No. 21957                        KENNETH D. JOHNSON
400 East 9th Street                     ROSS WIENER
Fifth Floor                             Attorneys
Kansas City, MO  64106                  U.S. Department of Justice
(816) 426-3122                          Civil Rights Division
                                        Educational Opportunities Section
                                        P.O. Box 65958
                                        Washington, DC  20035-5958
                                        (202) 514-4092

Page 17 of 18

Counsel for and Representatives of Defendant Pleasant Hill Public School District, R-III:

THOMAS A. MICKES
MICKES TUETH KEENEY COOPER
MOHAN & JACKSTADT P.C.
720 Olive, Suite 500
St. Louis, MO 63101
(314) 241-2226

ORETTA SMITH, President
Pleasant Hill Board of Education

LIL BOUCHARD, Secretary
Pleasant Hill Board of Education

Page 18 of 18