# Exhibit C

Not Reported in F.Supp., 1997 WL 473566 (S.D.N.Y.), Fed. Sec. L. Rep. P 99,533
(Cite as: 1997 WL 473566 (S.D.N.Y.))

H
United States District Court, S.D. New York.
Robert STROUGO, on behalf of The Brazil Fund, Inc., Plaintiff,
v.
SCUDDER, STEVENS & CLARK, INC., Defendant.
and
THE BRAZIL FUND, INC., Nominal Defendant.
Robert STROUGO, on behalf of himself and all others similarly situated, Plaintiff,
v.
Juris PADEGS, Nicholas BRATT, Edgar R. FIEDLER, Roberto TEIXEIRA DA COSTS, Ronaldo A. DA FROTA NOGUEIRA, Wilson NOLEN, Edmond D. VILLANI, and SCUDDER, STEVENS & CLARK, INC., Defendants.
No. 96 CIV. 2136(RWS).

Aug. 18, 1997.

WECHSLER HARWOOD HALEBIAN & FEFFER, Attorney for Plaintiff, New York, NY, By: JOEL C. FEFFER, ESQ. JEFFREY M. HABER, ESQ. RICHARD B. BRUALDI, ESQ. Of Counsel.

DEBEVOISE & PLIMPTON, Attorney for Defendants, New York, N.Y. By: JOHN S. KIERNAN, ESQ. JEREMY FEIGELSON, ESQ. EDWARD V. DI LELLO, ESQ. Of Counsel.

DECHERT, PRICE & RHOADS, Attorney for Nominal Defendant The Brazil Fund, Boston, MA, By: BERNARD J. BONN, III, ESQ. Of Counsel.

ROPES & GRAY, Attorney for Independent Directors of The Brazil Fund, Boston, MA, By: JOHN D. DONOVAN, JR., ESQ. TIMOTHY J. HINKLE, ESQ. SILVESTRE A. FONTES, ESQ. Of Counsel.

KIRKPATRICK & LOCKHART, Attorney for Investment Company Institute, amicus curiae, New York, NY, By: DAVID SIMON, ESQ. EUGENE R. LICKER, ESQ..

*OPINION*

SWEET, District Judge.

*1 In this action alleging violations of the Investment Company Act of 1940, as amended (the "ICA"), 15 U.S.C. §§ 80a-1 et seq., and breach of fiduciary duty under the common law, defendants Scudder, Stevens & Clark, Inc. ("Scudder"), Juris Padegs ("Padegs"), Nicholas Bratt ("Bratt"), Edmond Villani ("Villani"), Edgar Fiedler ("Fiedler"), Wilson Nolen ("Nolen"), Ronaldo A. Da Frota Nogueira ("Nogueira"), and nominal defendant the Brazil Fund ("the Fund"), have moved, pursuant to Local Civil Rule 6.3 of the Southern District Rules, for reargument of this Court's May 8, 1997 opinion and order (the "Order") denying their motion to dismiss, or, in the alternative, for certification of the Order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). The Investment Company Institute (the "ICI") has moved for leave to participate amicus curiae.

For the reasons set forth below, the ICI's motion to participate amicus curiae will be granted, and the motions for reargument or certification will be denied.

*Parties*

Robert Strougo, suing on behalf of the Brazil Fund, purchased 1,000 shares of the Fund on January 11, 1993, and has held shares continuously thereafter.

The Fund, a nominal defendant in this action, is a Maryland corporation whose principal executive office is located in New York, New York. The Fund is a non-diversified, closed-end investment company that invests in the securities of Brazilian companies. Shares in the Fund trade on the New York Stock Exchange.

Scudder is a Delaware corporation whose principal offices are located in New York, New York. Scudder serves as investment advisor to and manager of the Fund. It is a registered investment advisor under the Investment Advisers Act of 1940, as amended, 15 U.S.C. 80b-1 et seq.

Padegs is chairman of the board and a director of the

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 473566 (S.D.N.Y.), Fed. Sec. L. Rep. P 99,533
(Cite as: 1997 WL 473566 (S.D.N.Y.))

Fund. He is also a managing director of Scudder and serves on both Scudder's board and the boards of other funds managed by Scudder.

Bratt is president and a director of the Fund. Bratt is also a managing director of Scudder and serves on the boards of other funds managed by Scudder.

Villani is a director of the Fund. He is also president and managing director of Scudder and serves on both Scudder's board and the boards of other funds managed by Scudder.

Scudder, Padegs, Bratt and Villani will be referred to as the "Scudder Defendants."

Fiedler is a director of the Fund and serves on the boards of seven other funds managed by Scudder. Nolen is a director of the Fund. He also serves on the boards of fourteen other funds managed by Scudder. Nogueira is a director and resident Brazilian director of the Fund. He serves on the boards of three other funds managed by Scudder. Da Costa, against whom all claims have been dismissed, is a director and resident Brazilian director of the Fund.

*Prior Proceedings*

Strougo filed his initial complaint on March 22, 1996. He filed the first amended class action and verified shareholder derivative complaint (the "Complaint") on June 17, 1996. Defendants' motions to dismiss were granted in part and denied in part by the Order, dated May 8, 1997. See Strougo v. Padegs, 964 F.Supp. 783 (S.D.N.Y.1997). Specifically, the Order dismissed all direct class action claims and the excessive compensation claim under ICA Section 36(b). The motion was denied with respect to the remaining derivative claims under Sections 36(a) and 48 of the ICA and under the common law.

*2 Defendants filed the instant motion on May 22, 1997. The ICI filed its motion the same day. Oral argument was heard on June 18, 1997, at which time the motions were fully submitted.

*The Facts*

The factual allegations of the complaint are more fully set forth in the Order. See Strougo, 964 F.Supp. at 788-89. Those facts relevant to decision of these motions are set forth below.

This action arises from the 1995 decision by the board of directors of the Brazil Fund, a closed-end investment company incorporated under Maryland law and traded on the New York Stock Exchange, to increase the Fund's capital by offering the Fund's existing shareholders rights to purchase additional shares of newly issued stock (the "Rights Offering"). Strougo asserts that Scudder and each of the directors of the Fund breached their respective fiduciary duties of loyalty and due care as a result of the development and implementation of the Rights Offering.

Scudder created the Brazil Fund in 1988. The Fund is a non-diversified, closed-end investment company registered under the Investment Company Act of 1940 (the "ICA") that invests almost exclusively in securities of Brazilian companies. Certain of the Fund's directors serve as executive officers of Scudder and receive substantial compensation from Scudder. A majority of the remaining directors of the Fund serve as directors of other closed-end funds affiliated with Scudder. Defendant Fiedler serves on the boards of eight funds managed by Scudder and received or accrued approximately $81,753 as a result of such directorships during 1994. Defendant Nolen serves on the boards of fifteen funds managed by Scudder and received $132,023 in 1994 as a result thereof. Defendant Nogueira serves on the boards of four funds managed by Scudder and received $54,997 in 1994 as a result thereof.

Because closed-end funds, unlike traditional mutual funds, operate with a fixed number of shares, they have limited options for obtaining capital to make new investments. Once a fund's initial capital has been fully invested, new investments generally can be made only if the fund sells existing portfolio holdings. Other options for raising capital include secondary public offerings at net asset value, or rights offerings to current investors at or below NAV.

Scudder is paid a fee equal to a percentage of the Fund's net assets. From December 1994 through November 1995, the Fund's net assets declined significantly, dropping to $271 million on November 16, 1995, from $377 million on December 31, 1994. As the Fund's net assets materially declined, so did Scudder's fee.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 473566 (S.D.N.Y.), Fed. Sec. L. Rep. P 99,533
**(Cite as: 1997 WL 473566 (S.D.N.Y.))**

As a result of the decline in net assets, as well as in Scudder's fees, Strougo alleges that defendants decided to raise additional capital to increase the Fund's net assets, and thereby restore Scudder's annual compensation. On October 13, 1995, defendants announced that the Fund would conduct the Rights Offering, whereby the Fund would issue transferable rights to its shareholders. Each Fund shareholder received one right for each share held; three rights entitled the holder to purchase an additional share at the "Subscription Price" of $15.75. The rights were transferrable; that is, if the shareholders did not wish to exercise their rights to purchase additional shares, they were entitled to sell the rights to any purchaser. The rights expired on December 15, 1995.

*3 The ICI represents the Investment Company Industry, including over 6,000 open end mutual funds and over 400 closed end investment companies. The ICI contends that the Order will have a significant impact on the board structure of investment company complexes among its members.

*Discussion*

I. *The ICI Will Be Permitted to Participate as Amicus Curiae*

Federal courts have discretion to permit participation of amici where such participation will not prejudice any party and may be of assistance to the court. See Vulcan Society of New York City Fire Dep't, Inc. v. Civil Service Comm'n, 490 F.2d 387, 391 (2d Cir.1973); Zell/Merrill Lynch Real Estate Opportunity L.P. v. Rockefeller Center Properties, No. 96 Civ. 1144, 1996 WL 120672, *3 (S.D.N.Y. March 19, 1996). The parties have identified no prejudice arising from the ICI's participation, and the policy arguments advanced by the ICI may illuminate the legal issues presented by this motion. Accordingly, the ICI is granted leave to participate amicus curiae for purposes of this motion only.

II. *Reargument Will Be Denied*

To be entitled to reargument under Local Civil Rule 6.3, a party must demonstrate that the Court overlooked controlling decisions or factual matters put before it on the underlying motion. See Domenech v. City of New York, 927 F.Supp. 106, 108 (S.D.N.Y.1996) (construing Local Rule 3(j), the predecessor to Local Rule 6.3); Ameritrust Co. Nat'l Ass'n v. Dew, 151 F.R.D. 237 (S.D.N.Y.1993); Fulani v. Brady, 149 F.R.D. 501, 503 (S.D.N.Y.1993). Accordingly, a party in its motion for reargument "may not advance new facts, issues or arguments not previously presented to the court." Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb, Inc., No. 86 Civ. 6447, 1989 WL 162315, at * 3 (S.D.N.Y.1989).

Moreover, Local Rule 6.3 is to be narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the court. See Caleb & Co. v. E.I. Du Pont De Nemours & Co., 624 F.Supp. 747, 748 (S.D.N.Y.1985). In deciding a motion to reargue, the court must not allow a party to use the motion to reargue as a substitute for appeal. See Morser v. AT & T Information Sys., 715 F.Supp. 516, 517 (S.D.N.Y.1989); Korwek v. Hunt, 649 F.Supp. 1547, 1548 (S.D.N.Y.1986).

Because the Court overlooked neither controlling decisions nor dispositive factual matters put before it on the underlying motions to dismiss, the present motions will be denied.

Defendants and the ICI contend that the court overlooked: (1) the actual amount of compensation received by Edgar Fiedler; (2) the "tension" between the statutory and regulatory definitions of an "interested person" (which do not "necessarily" consider holding multiple directorships a disqualifying interest) and the court's conclusion, under Maryland law, that when all but one board member has multiple directorships in a single fund complex and earns significant compensation from that complex, demand on the board is excused in a case that presents inherent conflicts between the interests of the complex's management and the fund's shareholders; and (3) the fact that federal courts in other circuits have refused to excuse demand in the face of similar allegations.

*4 It does appear that the actual compensation received by Fiedler in 1994 was only $81,753, not the $400,000 assumed in the prior Order. However, this difference in compensation does not change the outcome, since Nogueira was alleged to have received even less aggregate compensation than Fiedler actually received, but the allegations as against Nogueira were nonetheless considered sufficient to raise a

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 473566 (S.D.N.Y.), Fed. Sec. L. Rep. P 99,533
**(Cite as: 1997 WL 473566 (S.D.N.Y.))**

doubt as to his independence such that demand would be excused.

The court expressly addressed the asserted "tension" between the rule adopted in the Order and the ICA's definition of an interested person in the prior opinion. *Strougo,* 964 F.Supp. at 795. The movants contend that the court overlooked the "combined effect" of the statutory and regulatory provisions, which establish a regime in which directors must disclose their service on multiple boards before being elected, and are considered competent to evaluate matters affecting the fund advisor upon being elected. However, this "tension" is a result of the Supreme Court's determination that state law, not federal law, would govern demand futility in ICA cases. *See Kamen v. Kemper,* 500 U.S. 90, 108-09, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991). The Supreme Court rejected the notion that the application of state demand futility rules, which vary from state to state, would impede ICA regulatory objectives or be inconsistent with the policies underlying the ICA. *Id.* at 107. The Court reasoned that "the ICA embodies a congressional expectation that the independent directors would 'loo[k] after the interests of the [investment company]' by 'exercising the authority granted to them *by state law.*' ... We thus discern no policy in the Act that would require us to give the independent directors, or the boards of investment companies as a whole *greater* power to block shareholder litigation than these actors possess under the law of the state of incorporation." *Id.* at 107-08 (emphasis in original) (quoting *Burkes v. Lasker,* 441 U.S. 471, 485, 99 S.Ct. 1831, 60 L.Ed.2d 404 (1979)). State corporation law, including the state law governing pre-suit demand, does not change because that law is in "tension" with provisions of the ICA.

Finally, the defendants and the ICI suggest that the court overlooked the fact that the Seventh Circuit, in *Kamen v. Kemper Fin. Servs., Inc.,* 939 F.2d 458 (7th Cir.1991), dismissed a complaint with similar allegations under Maryland's demand excuse law. The defendant's point to the lower court opinion in *Kamen,* where the court noted the allegation that the "so-called 'non-interested' directors receive aggregate remuneration of approximately $300,000 a year for serving as directors of the Fund and of all of the other funds in the Kemper group." *Kamen v. Kemper Fin. Servs., Inc.,* 659 F.Supp. 1153, 1161 (N.D.Ill.1987). *See also Batra v. Investors Research Corp.,* Fed. Sec. L. Rep. (CCH) ¶ 96,983, 1992 U.S. Dist. Lexis 16148 (W.D.Mo.1992).

*5 However, the *Kamen* decisions do not provide grounds for reargument. First, as the defendants concede, *Kamen* and the district court cases cited in the briefs, are not "controlling authority," because they were not decided by a Maryland court or the Second Circuit. In addition, the lower court decision in *Kamen* and the *Batra* decision were not before the court on the underlying motion, and are thus an improper basis for reargument.

More significantly, the *Kamen* decision and its factual similarity to this case were not overlooked. The Court of Appeals decision was cited liberally in the opinion. This court was fully aware that the *Kamen* plaintiffs had alleged that the independent directors sat on multiple Kemper boards, as the Seventh Circuit noted in its opinion. *Kamen,* 939 F.2d at 460. However, the Seventh Circuit did not expressly consider the contention that holding multiple directorships in a single advisor's complex could compromise a director's independent judgment and provided no reasons for rejecting such a claim. *Compare Strougo,* 964 F.Supp. at 974 n. 2 (declining to follow dictum in *Olesh v. Dreyfus Corp.,* No. CV 94-1664, 1995 WL 500491 (E.D.N.Y. Aug.8, 1995), noting that court engaged in no discussion of effect of multiple directorships on director's independence). It simply viewed the plaintiff's allegations as a variant on the discredited notion that receipt of director's fees renders a director incapable of evaluating a demand. *Id.* Even with respect to those arguments it addressed directly, *Kamen* relied more on Delaware law and general trends in corporate law than on Maryland law, *id.* at 460-61, even though Maryland law is considered "liberal in excusing demand upon directors." *See Grill v. Hoblitzell,* 771 F.Supp. 709, 712 n. 4 (D.Md.1991). Thus, *Kamen* provides no authoritative or reasoned basis for reconsidering the conclusion that allegations of multiple directorships may contribute to a finding that demand should be excused under Maryland law. In the absence of such authority, the Order concluded that well-compensated service on multiple boards of funds managed by a single fund advisor can, in some circumstances, be indistinguishable in all relevant respects from employment by the fund manager, which admittedly renders a director interested.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 473566 (S.D.N.Y.), Fed. Sec. L. Rep. P 99,533
**(Cite as: 1997 WL 473566 (S.D.N.Y.))**

Furthermore, *Kamen* is distinguishable on its facts. In *Kamen,* seven of ten purportedly independent directors served on multiple boards. *Id.* Thus, there remained three indisputably independent directors, who could form a litigation committee to impartially consider a shareholder demand to institute a suit. Hanks, *Maryland Corporation Law,* § 7.21[c] at 269, n. 173 (1994-1 Suppl.) (minimum of two directors required to form committee). Here, in contrast, only one of the directors does not serve on multiple Scudder boards, so the Board could not appoint a committee of directors without such attachments to consider a demand, and thus such a demand would be futile. See *Strougo,* 964 F.Supp. at 795.

*6 For these reasons, the motion to reargue will be denied.[FN1]

> FN1. Defendants and the ICI also suggest that this court certify the demand excuse question to the Maryland Court of Appeals pursuant to Md. Courts & Judicial Proceedings § 12-603. However, this proposal was not put before the court on the underlying motion. It is thus inappropriate to consider this question on reargument.

II. *The Order Will Not Be Certified*

Section 1292(b) provides that a district court may certify an interlocutory order for appeal if it is of the opinion that: (1) the order "involves a controlling question of law" (2) "as to which there is substantial ground for difference of opinion," and (3) an immediate appeal "may materially advance the ultimate termination of the litigation." In considering a request for certification, the district court must carefully assess whether each of the three conditions for certification is met. *German v. Federal Home Loan Mortgage Corp.,* 896 F.Supp. 1385, 1398 (S.D.N.Y.1995); see also *Gottesman v. General Motors Corp.,* 268 F.2d 194, 196 (2d Cir.1959) (certification is to be "strictly limited to the precise conditions stated in the law"). The determination of whether § 1292(b) certification is appropriate under the above standards is in the discretion of the district court. See *Ferraro v. Secretary of U.S. Dept. of Health & Human Services,* 780 F.Supp. 978, 979 (E.D.N.Y.1992); 16 Charles A. Wright, et al., *Federal Practice and Procedure* § 3929 at 140 & n. 23 (1977 & Supp.1996).

Interlocutory appeals under § 1292(b) are an exception to the general policy against piecemeal appellate review embodied in the final judgment rule. Since the statute was enacted in 1958, the Second Circuit has repeatedly emphasized that a district court is to "exercise great care in making a § 1292(b) certification." *Westwood Pharmaceuticals, Inc. v. National Fuel Gas Dist. Corp.,* 964 F.2d 85, 89 (2d Cir.1992); see also *Klinghoffer v. S.N.C. Achille Lauro,* 921 F.2d 21, 25 (2d Cir.1990). Certification is only warranted in "exceptional cases," where early appellate review "might avoid protracted and expensive litigation." *Telectronics Proprietary, Ltd. v. Medtronic, Inc.,* 690 F.Supp. 170, 172 (S.D.N.Y.1987); see also *German,* 896 F.Supp. at 1398. Section 1292(b) was not intended "to open the floodgates to a vast number of appeals from interlocutory orders in ordinary litigation" *Telectronics,* 690 F.Supp. at 172, or to be a "vehicle to provide early review of difficult rulings in hard cases." *German,* 896 F.Supp. at 1398; see also *Abortion Rights Mobilization, Inc. v. Regan,* 552 F.Supp. 364, 366 (S.D.N.Y.1982); *McCann v. Communications Design Corp.,* 775 F.Supp. 1506, 1534 (D.Conn.1991).

The institutional efficiency of the federal court system is among the chief concerns motivating § 1292(b). See *Forsyth v. Kleindienst,* 599 F.2d 1203 (3d Cir.), cert. denied, 453 U.S. 913, 101 S.Ct. 3147, 69 L.Ed.2d 997 (1979). The efficiency of both the district court and the appellate court are to be considered, and the benefit to the district court of avoiding potentially unnecessary proceedings must be weighed against the inefficiency of having the Court of Appeals hear multiple appeals in the same case. See *Harriscom Svenska AB v. Harris Corp.,* 947 F.2d 627, 631 (2d Cir.1991) (where controlling question is whether genuine issues of material fact remain, "the federal scheme does not provide for an immediate appeal solely on the ground that such an appeal may advance the proceedings in the district court"); 16 Wright, Miller & Cooper, *Federal Practice and Procedure,* Jurisdiction 2d § 3930 at 435-36 (1996).

*7 Although there may be substantial grounds for difference of opinion with respect to this court's resolution of the demand excuse issue (*see* Part I of this opinion, above), the question framed by defendants and the ICI is not a "controlling question of law" and is thus not appropriate for interlocutory review.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 473566 (S.D.N.Y.), Fed. Sec. L. Rep. P 99,533
**(Cite as: 1997 WL 473566 (S.D.N.Y.))**

A controlling question of law may exist if: (1) reversal of the district court's opinion would result in dismissal of the action, (2) reversal of the district court's opinion, even though not resulting in dismissal, could significantly affect the conduct of the action, or (3) the certified issue has precedential value for a large number of cases. *Klinghoffer v. S.N.C. Achille Lauro,* 921 F.2d 21, 24 (2d Cir.1990); *Pereira v. Aetna Casualty & Sur. Co.,* 921 F.Supp. 1121, 1126 (S.D.N.Y.1996); *Chan v. City of New York,* 803 F.Supp. 710, 733 (S.D.N.Y.1992), *aff'd,* 1 F.3d 96 (2d Cir.1993); *Shipping Corp. of India v. American Bureau of Shipping,* 752 F.Supp. 173, 175 (S.D.N.Y.1990).

The issue raised by defendants and the ICI does not fit into any of these three categories of "controlling questions." Reversal on appeal would not necessarily result in immediate dismissal of the action, since plaintiff advanced other grounds for excusing demand that were not expressly considered in the Order. In the event the Court of Appeals reversed the Order, it would likely remand for consideration of these other grounds, rather than dismissing.

Immediate appellate resolution of the question is also unlikely to change the conduct of this litigation. If an appeal does not result in dismissal, there is no reason to believe it will have any significant impact on the conduct of the case.

Defendants and the ICI strenuously contend that the court's "unprecedented" ruling should be certified, because it may affect a large number of cases and because it could cause a dramatic and expensive restructuring of industry governance practices. As noted in the Order, however, the rule adopted by the court would not eliminate multiple directorships in fund complexes. It would require only that a sufficient number of directors without such multiple directorships-in Maryland, that number is two-serve on each board so that a litigation committee could be convened to consider proposed litigation. Moreover, to the extent that a district court decision such as this carries any persuasive authority, the Order's holding applies only to funds incorporated in Maryland. Under Delaware law, interlocking directorships are not a ground for demand excuse. *See Langner v. Brown,* 913 F.Supp. 260 (S.D.N.Y.1996).

Moreover, as a general matter, rulings on the sufficiency of pleadings are not appropriate for interlocutory review. *See Gottesman,* 268 F.2d at 196. However, decisions on the pleadings may be appropriate for interlocutory review when they present difficult questions of substantive law, rather than the technical sufficiency of the pleadings. 16 Wright, Miller & Cooper, *Federal Practice and Procedure,* Jurisdiction 2d § 3931 at 458-59 (1996).

*8 In *Gottesman,* the Second Circuit held that interlocutory review of an order denying defendants motion to dismiss for failure to make a pre-suit demand was inappropriate. *Gottesman,* 268 F.2d at 196-197. While *Gottesman* does not support a sweeping proposition that orders denying such motions should not be certified under any circumstances, it reflects the reluctance to burden the Court of Appeals with piecemeal litigation of fact-specific issues such as this.

Defendants also contend that certification is appropriate, because the normal route of appeal after a final judgment is inadequate where, as here, there is a high likelihood of settlement prior before an appealable final order is entered. However, if a likelihood of settlement were a basis for certifying interlocutory orders for appeal, the "floodgates" to piece-meal appeals would truly be opened, for the vast majority of all civil cases settle before a final judgment and often after resolution of dispositive motions.

Accordingly, because the Order does not present a controlling question of law, it will not be certified for immediate appeal.

*Conclusion*

For the reasons set forth above, ICI's motion to participate amicus curiae is granted, and the motions to reargue or certify for interlocutory appeal are hereby denied.

It is so ordered.

S.D.N.Y.,1997.
Strougo v. Scudder
Not Reported in F.Supp., 1997 WL 473566 (S.D.N.Y.), Fed. Sec. L. Rep. P 99,533

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 473566 (S.D.N.Y.), Fed. Sec. L. Rep. P 99,533
**(Cite as: 1997 WL 473566 (S.D.N.Y.))**

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.