UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CHARLES PATRICK PRATT; and A.E.P, through
her parents and next friends Bobbi Lynn Petranchuk
and Todd Edward Petranchuk,

                          Plaintiffs,              7:09-CV-0411

v.                                                 (GTS/GHL)

INDIAN RIVER CENT. SCH. DIST.; JAMES
KETTRICK, Superintendent of Indian River Cent. Sch.
Dist.; TROY DECKER, Principal of Indian River High
School; JAY BROWN; JOHN DAVIS; KENDA
GRAY; AMABLE TURNER; PATRICIA
HENDERSON; and BRIAN MOORE,

                          Defendants,

UNITED STATES OF AMERICA,

                          Amicus.

_____

APPEARANCES:                                       OF COUNSEL:

KIRKLAND & ELLIS LLP                               ADAM T. HUMANN, ESQ.
  Counsel for Plaintiffs                           MAURA M. KLUGMAN, ESQ.
601 Lexington Avenue                               VICKIE REZNIK, ESQ.
New York, New York 10022

LAMBDA LEGAL DEFENSE & EDUCATION FUND              HAYLEY J. GORENBERG, ESQ.
  Counsel for Plaintiffs                           THOMAS W. UDE , JR., ESQ.
120 Wall Street
New York, New York 10005

LAW OFFICE OF FRANK W. MILLER                      FRANK W. MILLER, ESQ.
  Counsel for Defendants                           MICHAEL J. LIVOLSI, ESQ.
6575 Kirkville Road
East Syracuse, New York 13057

HON. RICHARD S. HARTUNIAN           WILLIAM H. PEASE, ESQ.
United States Attorney for the             Assistant United States Attorney
Northern District of New York
   Counsel for the Government
100 South Clinton Street
Syracuse, New York 13261-7198

HON. GLENN T. SUDDABY, United States District Judge

## <u>MEMORANDUM-DECISION and ORDER</u>

Currently before the Court–in this civil rights action filed by Charles Patrick Pratt and A.E.P., through her parents and next friends Bobbi Lynn Petranchuk and Todd Edward Petranchuk ("Plaintiffs") against Indian River Central School District, the Indian River Central School District Board of Education, and the eight above-captioned individual Defendants ("Defendants")–are the following two motions: (1) Defendants' motion to dismiss Plaintiffs' Complaint for failure to state a claim upon which relief can be granted, or, in the alternative, for summary judgment (Dkt. No. 30); and (2) Defendants' motion to dismiss Plaintiffs' Amended Complaint for failure to state a claim upon which relief can be granted, or, in the alternative, for summary judgment (Dkt. No. 56).  For the reasons set forth below, Defendants' motions are granted in part and denied in part.

## I.      RELEVANT BACKGROUND

### A.      Plaintiffs' Claims

On April 8, 2009, Plaintiffs filed their Complaint in this action.  (Dkt. No. 1.)  On February 18, 2010, Plaintiffs filed an Amended Complaint.  (Dkt. No. 47.)  Generally, Plaintiffs' Amended Complaint asserts the following nine civil rights claims against Defendants arising from their treatment of Plaintiff Pratt as a homosexual student at Indian River Central School: (1) the Indian River Central School District ("the District"),  the Indian River Central School

2

District Board of Education ("the Board"), and Defendant Kettrick (in his official and individual capacities) violated 20 U.S.C. § 4071 *et seq.*, the Equal Access Act ("EAA"), and 42 U.S.C. § 1983, by maintaining a limited open forum, and denying equal access to that forum on the basis of impermissible content and viewpoint based discrimination; (2) the District, the Board, and Defendant Kettrick (in his official and individual capacities) violated Plaintiff Pratt's rights to freedom of speech and freedom of association under the First Amendment to the United States Constitution; (3) the District, the Board, Defendants Kettrick and Decker (in their official and individual capacities), and Defendants Davis, Turner, Moore, and Gray (in their individual capacities) denied Plaintiff Pratt equal protection on the basis of his sexual orientation, in violation of his rights under the Fourteenth Amendment to the United States Constitution; (4) the District, the Board, Defendants Kettrick and Decker (in their official and individual capacities), and Defendants Davis, Turner, Moore, and Gray (in their individual capacities) denied Plaintiff Pratt equal protection on the basis of his sex, in violation of his rights under the Fourteenth Amendment to the United States Constitution; (5) the District and the Board discriminated against Plaintiff Pratt on the basis of sex, in violation of his rights under Title IX of the Education Amendments Act of 1972, 20 U.S.C. § 1681 *et seq.* ("Title IX"); (6) Defendants Turner, Gray, Henderson, and Davis (in their individual capacities) permitted harassment against Plaintiff Pratt based on his sexual orientation, in violation of New York Human Rights Law ("NYHRL") § 296(6); (7) Defendants Turner, Gray, Henderson, and Davis (in their individual capacities) permitted harassment against Plaintiff Pratt based on his sex, in violation of NYHRL § 296(6); (8) Defendants Turner, Gray, Henderson, and Davis (in their individual capacities) subjected Plaintiff Pratt to discrimination based on his sexual orientation, in violation of his civil

rights under New York Civil Rights Law ("NYCRL") §§ 40-c and 40-d; and (9) Defendants Turner, Gray, Henderson, Moore, and Davis (in their individual capacities) subjected Plaintiff Pratt to discrimination based on his sex, in violation of his civil rights under NYCRL §§ 40-c and 40-d.  (Dkt. No. 47.)

In addition, Plaintiffs' Amended Complaint asserts the following five civil rights claims against Defendants arising from their treatment of Plaintiff A.E.P. as the younger sister of Plaintiff Pratt, and a student in the District: (1) the District, the Board, Defendants Kettrick and Decker (in their official and individual capacities), and Defendant Brown (in his individual capacity) violated the EAA, and 42 U.S.C. § 1983, by maintaining a limited open forum, and denying equal access to that forum on the basis of impermissible content and viewpoint based discrimination; (2) the District, the Board, Defendants Kettrick and Decker (in their official and individual capacities), and Defendant Brown (in his individual capacity) violated Plaintiff A.E.P.'s rights to freedom of speech and freedom of association under the First Amendment to the United States Constitution; (3) the District, the Board, Defendants Kettrick and Decker (in their official and individual capacities), and Defendant Brown (in his individual capacity) violated Plaintiff A.E.P.'s right to free speech under Article 1 § 8 of the New York State Constitution; (4) the District, the Board, Defendants Kettrick and Decker (in their official and individual capacities), and Defendant Brown (in his individual capacity) violated and continue to violate A.E.P.'s right to use District facilities based on perceived sexual orientation and/or antigay animus, in violation of NYHRL § 296; and (5) the District, the Board, Defendants Kettrick and Decker (in their official and individual capacities), and Defendant Brown (in his individual capacity) violated and continue to violate A.E.P.'s civil rights based on perceived sexual orientation and/or antigay animus, in violation of NYCRL § 40-c.  (Dkt. No. 47.)

4

### B.      Relevant Procedural History

On June 12, 2009, Defendants filed a motion to dismiss or, in the alternative, a motion for summary judgment.  (Dkt. No. 30.)  Briefing on Defendants' motion was stayed for approximately one year pending the filing, and decision on, Plaintiffs' motion for leave to file an Amended Complaint.  On February 9, 2010, the Court granted Plaintiffs' motion for leave to file an Amended Complaint (Dkt. No. 44).  On February 18, 2010, Plaintiffs filed that Amended Complaint.  (Dkt. No. 47.)

On June 11, 2010, Defendants filed a second motion to dismiss or, in the alternative, motion for summary judgment–this one challenging any additional claims asserted by Plaintiffs in their Amended Complaint.  (Dkt. No. 56.)  On June 28, 2010, Plaintiffs filed a response in opposition to Defendants' motions to dismiss or, in the alternative, motions for summary judgment.  (Dkt. No. 58.)  On July 13, 2010, after being granted an extension of time in which to do so, Defendants filed their reply.  (Dkt. No. 62.)

On July 28, 2010, Defendants filed a motion requesting permission to amend their Answer to Plaintiffs' Amended Complaint (which Answer had been filed on March 5, 2010). (Dkt. No. 64.)  On August 11, 2010, Defendants submitted a stipulation, indicating that the parties agreed to permit Defendants to amend their Answer.  (Dkt. No. 65.)  Two days later, the United States moved for leave to participate as amicus curiae in this matter in order to address the proper legal standards for discrimination on the basis of sex under (1) Title IX, and (2) the equal protection clause of the Fourteenth Amendment.  On December 6, 2010, the Court issued a Decision and Order granting the United States's motion for leave to participate as amicus curiae. (Dkt. No. 72.)

C.       **Undisputed Material Facts**

The following is a general summary of material facts that are undisputed by the parties. (*Compare* Dkt. No. 25, Part 18 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 27, Part 6 [Plf.'s Rule 7.1 Response].)

Plaintiff Pratt was born on August 16, 1988.  He attended kindergarten, primary school (grades 1-4), and middle school (grades 5-8) in the District.  In the fall of 2002, he entered ninth grade at the Indian River High School ("High School"), which he attended through May 2003. The summer vacation period in the District for the summer immediately following the 2002-03 school year started immediately after the High School's graduation ceremony on June 27, 2003, and lasted until September 3, 2003.  Plaintiff Pratt attended, but did not complete, summer school in the District during the 2003 summer vacation period.

In the fall of 2003, Plaintiff Pratt entered ninth grade at the High School for the second time.  His last day of attending the High School during the 2003-04 school year was January 4, 2004.  The summer vacation period in the District for the summer immediately following the 2003-04 school year started immediately after the High School's graduation ceremony on June 25, 2004, and lasted until September 7, 2004.  Plaintiff Pratt did not attend summer school during the 2004 summer vacation period.  Rather, he next attended the High School for approximately three weeks, starting in September of 2004.[1]  After the fall of 2004, Plaintiff Pratt never returned to the District.

A "Gay Straight Alliance" ("GSA") club of the type referenced in the Amended Complaint currently exists in the High School.  However, Defendants do not grant equal access

---

[1]       It is unclear from the record whether he attended school during that time as a freshman or as a sophomore.

and benefits to the student GSA at the High School.  For example, the District and the High

School still do not list the student GSA with the more than twenty other student groups on the

District's main web page, although it has been more than one year since the GSA's formation.

Familiarity with the remaining undisputed material facts of this action, as well as the

disputed material facts, as set forth in the parties' Rule 7.1 Statement and Rule 7.1 Response, is

assumed in this Decision and Order, which (again) is intended primarily for the review of the

parties.  (*Id*.)

### D.     Defendants' Motions

Generally, in support of their two motions to dismiss, or in the alternative, for summary

judgment, Defendants argue as follows: (1) Plaintiffs' state law claims should be dismissed

because (a) Plaintiffs failed to plead facts plausibly suggesting that they complied with General

Municipal Law §§ 50-e and 50-i, as well as Education Law §§ 50-e and 50-i and Education Law

§ 3818, all of which required that a Notice of Claim be filed, and that such Notice be pled in the

Complaint, and (b) these claims are barred by the one-year statute of limitations proscribed by

Education Law § 3813, as well as the one-year-and-ninety-day statute of limitations proscribed

by the General Municipal Law; (2) Plaintiffs' NYHRL claims should be dismissed because a

school district is not an "education corporation or association" within the contemplation of

NYHRL; (3) Plaintiffs' NYCRL claims should be dismissed because Plaintiffs failed to allege

facts plausibly suggesting that any Defendant engaged in any act that placed any person in

reasonable fear of physical injury; (4) Plaintiffs' Title IX claims should be dismissed because

Plaintiffs failed to allege facts plausibly suggesting that Plaintiff Pratt was (a) discriminated

against because of his sex, (b) subjected to a hostile educational environment of which

Defendants were made aware, or (c) treated less favorably than similarly situated individuals

7

who did not share a protected status with him; (5) Plaintiffs' equal protection claims should be dismissed because (a) the Supreme Court does not consider classifications based on sexual orientation to be part of a suspect class, (b) Plaintiffs failed to allege facts plausibly suggesting that the District enacted a classification based on sexual orientation, and (c) Plaintiffs failed to allege facts plausibly suggesting the existence of a hostile educational environment; (6) Plaintiffs' claims against the individual Defendants should alternatively be dismissed because these Defendants are immune from liability as a matter of law by the doctrine of qualified immunity; (7) Plaintiffs' claims against the Board should be dismissed on the alternative ground that, where a person is seeking damages against a school district in New York State, the school district, rather than the board of education of that district, is the properly designated party; (8) Plaintiffs' claims for punitive damages against the District should be dismissed because punitive damages may not be imposed against a school district; and (9) Plaintiffs' claims under Article 1 § 8 of the New York State Constitution, the First Amendment and EAA should be dismissed because a GSA Club of the type referenced in the Amended Complaint is currently operating in the District, and therefore these claims are moot, and (10) Plaintiffs' First Amendment claim should be dismissed for the alternative reason that Plaintiffs have failed to allege facts plausibly suggesting a claim upon which relief can be granted.  (*See generally* Dkt. No. 30, Attach. 6, and Dkt. No. 56, Attach. 18 [Defs.' Memos. of Law].)

In Plaintiffs' response to Defendants' motions, they argue as follows: (1) their claims do not require notices of claim; (2) Plaintiff Pratt's state law claims are timely; (3) Defendants are not exempt from NYHRL; (4) Plaintiffs have alleged facts plausibly suggesting claims for violations of NYCRL §§ 40-c and 40-d; (5) Plaintiffs have alleged facts plausibly suggesting that Defendants violated Title IX; (6) Plaintiffs have alleged facts plausibly suggesting that Plaintiff

Pratt was denied equal protection based on his sex and sexual orientation; (7) the individual Defendants are not entitled to qualified immunity from liability for their failure to protect Plaintiff Pratt from harassment by students; (8) the Board is a proper party to this action; and (9) Plaintiffs' claims under Article 1 § 8 of the New York State Constitution, the First Amendment and EAA are not mooted by the existence of a GSA Club within the District.  (*See generally* Dkt. No. 58 [Plfs.' Response Memo. of Law].)

In their reply, Defendants essentially reiterate previously advanced arguments.  (*See generally* Dkt. No. 62, Attach. 1 [Defs.' Reply Memo. of Law].)

### E.     The United States's Amicus Brief

In its amicus brief, the United States argues that it has a significant interest in the proper development of the law regarding Title IX and the Equal Protection Clause.  (Dkt. No. 76.)  In an effort to further this interest, the United States makes the following points in its brief: (1) harassment based on nonconformity with sex stereotypes is a legally cognizable claim under Title IX and the Equal Protection Clause; (2) allegations of harassment based on sexual orientation do not defeat a gender-stereotyping harassment claim; and (3) a hostile environment claim may span transitions between classrooms, grades and schools.  (*Id*.)  The United States argues that Defendants' arguments to the contrary should be rejected.  (*Id*.)

In response, Defendants argue that the United States's arguments are inconsequential because, even assuming that a cause of action generally exists under Title IX for gender-stereotyping claims, Plaintiffs have failed to allege facts plausibly suggesting that their Title IX claim is, indeed, based upon gender stereotyping rather than sexual orientation.  Defendants further argue that, because a cause of action under Title IX for discrimination based on sexual orientation cannot exist, Plaintiffs' "bootstrapped" Title IX claim should be dismissed.  (Dkt. No. 75.)

## II.     RELEVANT LEGAL STANDARDS

Before discussing the relevant legal standards governing this action, the Court pauses to note that, although Defendants' motions are captioned as motions to dismiss for failure to state a claim or, in the alternative, motions for summary judgment, Defendants' motions are based primarily, if not exclusively, on a failure-to-state-a-claim analysis.  For example, only portions of six of Defendants' thirteen legal arguments rely on record evidence, and specifically the affidavit of James Kettrick (Dkt. No. 30, Attach. 5): (1) a portion of Defendants' notice-of-claim argument; (2) a portion of Defendants' statute-of-limitations argument; (3) a portion of Defendants' argument regarding Plaintiffs' Title IX sexual-harassment claim; (4) a portion of Defendants' argument regarding Plaintiffs' Title IX hostile-environment claim; (5) a portion of Defendants' argument regarding Plaintiffs' Equal Protection Claim; and (6) a portion of Plaintiffs' mootness argument regarding Plaintiffs' First Amendment claims.  (*See generally* Dkt. No. 30, Attach. 6 [Defs.' Memo. of Law]; Dkt. No. 56, Attach. 18 [Defs.' Second Memo. of Law].)

For the sake of brevity, the Court will set aside the fact that Defendants' motion vacillates so freely between asserting a Fed. R. Civ. P. 12(b)(6) challenge and asserting a Fed. R. Civ. P. 56 challenge–often in the same sentence–that Defendants' motion arguably violates Fed. R. Civ. P. 7(b)(1)(B),(C) (requiring that "[a] request for a court order must . . . state with particularity the grounds for seeking the order[] and . . . state the relief sought") and Local Rule 7.1(a)(1) of the Local Rules of Practice for this Court (requiring that a motion "specify . . . the rule or statute upon which [the motion is based]").[2]  The Court will also set aside the fact that, when Defendants do rely on Fed. R. Civ. P. 56, that reliance is often unnecessary in that the

---

[2]       The Court notes that Defendants' memoranda of law do not even bother to recite the legal standard governing a motion for summary judgment.

evidence relied on is duplicative of the factual allegations asserted in Plaintiffs' Amended Complaint, making that pleading subject to a Fed. R. Civ. P. 12(b)(6) challenge.  What is more important is that Defendants' filed their first motion on June 12, 2009, only two months after Plaintiffs' commenced this action on April 8, 2009.  The parties have yet to commence discovery–a fact raised by Plaintiffs in their opposition papers.  (Dkt. No. 58, at 3-5, 15, 33.)  It is well-settled that "only in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery." *Hellstrom v. U.S. Dept. of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000), *aff'd*, 46 F. App'x 651 (2d Cir. 2002); *see also Trebor Sportswear Co. v. The Ltd. Stores, Inc.*, 865 F.2d 506, 511 (2d Cir. 1989). Defendants have not persuaded the Court that this is one of those rare cases.

For these reasons, the Court denies both of Defendants' motions to the extent there are motions for summary judgment, and considers those motions only to the extent they are motions to dismiss for failure to state a claim.  The Court notes that, while Defendants stylize these motions to dismiss as ones made pursuant to Fed. R. Civ. P. 12(b)(6), in actuality they are ones made pursuant to Fed. R. Civ. P. 12(c), because an Answer has already been filed.  *Maggette v. Dalsheim*, 709 F.2d 800, 801 (2d Cir. 1983); *see also* Fed. R. Civ. P. 12(b), 12(c).  Of course, a motion for judgment on the pleadings is decided according to the same standard as a motion to dismiss for failure to state a claim.  *Maggette*, 709 F.2d at 801.  For the sake of brevity, the Court will not recite, in this Decision and Order, the well-known legal standard governing dismissals for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), but will direct the reader to the Court's decision in *Wade v. Tiffin Motorhomes, Inc.*, 05-CV-1458, 2009 WL 3629674, at *3-5 (N.D.N.Y. Oct. 27, 2009) (Suddaby, J.).

III.    ANALYSIS

Before analyzing each of Plaintiffs' various claims, the Court first turns to the issue of

whether the Board is a proper party to this action.  Defendants argue that the Board is not a

proper party to this action, and therefore must be dismissed, because (1) the school district is the

proper party, and (2) Plaintiffs have failed to allege facts plausibly suggesting that the Board was

involved in any of the alleged state or constitutional violations.

As an initial matter, the fact that Plaintiffs may be able to recover money damages from

the District does not preclude Plaintiffs from also seeking money damages against the Board.  To

the contrary, it is well-settled that a board of education may be liable for a plaintiff's claim of

discrimination (or unlawful conduct based on a discriminatory motive).[3]  Moreover, here,

Plaintiffs have alleged facts plausibly suggesting that, since "at least 1994," there has existed

within the District a longstanding and widely known problem of sexist and antigay

discrimination, and that the Board has nonetheless failed to (1) amend its written policies and

handbooks to prohibit discrimination based on sexual orientation, (2) address harassment based

on sexual orientation in any of its statements or publications, or (3) and provide adequate

training to its employees with respect to discrimination, bullying, or harassment based on sexual

---

[3]        *See Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 234-35,
251 (2d Cir. 2006) (rejecting board of education's sovereign immunity defense in case involving,
inter alia, 42 U.S.C. § 1983 and HRL); *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 182
(2005) (noting that Board of Education was on notice that it could be subjected to private suits
for intentional sex discrimination since Supreme Court's 1979 decision in *Cannon v. Univ. of
Chicago*, 441 U.S. 677, and thus could be held liable to coach of girls' high school basketball
team under Title IX for intentional retaliation on the basis of sex); *Gant ex rel. Gant v.
Wallingford Bd. of Educ.*, 195 F.3d 134, 140 (2d Cir. 1999) (noting that "schoolteachers,
administrators, and boards of education can be held liable for race discrimination-in violation of
the Fourteenth Amendment and § 1981-based on their responses to harassment, in the school
environment, of a student by other children or parents . . . [when] a plaintiff . . . show[s]
deliberate indifference on the part of the defendants themselves").

orientation or sex.  (Dkt. No. 47, at ¶¶ 80-81, 113-14, 116, 128.)[4]  Such factual allegations plausibly suggest a claim against the Board.  *See Back v. Hasting on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 128 (2d Cir. 2004) (noting that a school board may have final policy making authority in certain areas and that a decision "by a person whose edicts or acts may fairly be said to represent official policy, can, by itself, support a claim against a municipality").

For these reasons, the Court finds that the Board is a proper party to this action.

### A.    Plaintiffs' State Law Claims

As stated above in Part I.A. of this Decision and Order, Plaintiffs assert the following state law claims: (1) a violation of NYHRL § 296(6), asserted by Plaintiff Pratt against Defendants Turner, Gray, Henderson, and Davis, in their individual capacities, and Plaintiff A.E.P. against the District, the Board, Defendants Kettrick and Decker, in their official and individual capacities, and Defendant Brown, in his individual capacity; (2) a violation of NYCRL §§ 40-c and 40-d, asserted by Plaintiff Pratt against Defendants Turner, Gray, Henderson, Moore, and Davis, in their individual capacities, and Plaintiff A.E.P. against the District, the Board, Defendants Kettrick and Decker, in their official and individual capacities, and Defendant Brown, in his individual capacity; and (3) a violation of Article 1 § 8 of the New York State Constitution, asserted by Plaintiff A.E.P. against the District, the Board, Defendants Kettrick and Decker, in their official and individual capacities, and Defendant Brown, in his individual capacity.

---

[4]    As Plaintiffs point out in the memorandum of law, under New York law, the Board has the power to (1) appoint a superintendent, principals, and teachers, among other employees and personnel, *see* N.Y. Educ. Law § 2554(2), and (2) "establish . . . rules and regulations concerning the order and discipline of the schools, in the several departments thereof."  N.Y. Educ. Law § 1709.

In their motion to dismiss, Defendants argue that Plaintiffs' state law claims should be dismissed for the following four reasons: (1) Plaintiffs failed to file a Notice of Claim; (2) Plaintiffs' claims under the NYHRL and NYCRL are barred by the one year statute of limitations proscribed by New York Education Law § 3813, as well as the one year and ninety day statute of limitations proscribed by the New York General Municipal Law; (3) Plaintiff A.E.P.'s claim under Article 1 § 8 is moot; and (4) Plaintiffs have failed to allege facts plausibly suggesting a claim for violation of NYHRL § 296(6), or NYCRL §§ 40-c and 40-d.  Before turning to pleading sufficiency of the Amended Complaint with regard to these claims, the Court will address Defendants' arguments common to some or all claims.

1.     **Whether Plaintiffs Were Required to File a Notice of Claim Prior to Commencing this Action in Federal Court**

Defendants argue that, under New York law, before commencing an action against a school district in this Court, a plaintiff must comply with the Notice of Claim requirements set forth in N.Y. Gen. Mun. Law §§ 50-e and 50-i, and N.Y. Educ. Law § 3813.  Conversely, Plaintiffs argue that the Notice of Claim requirements set forth in these statutes are inapplicable to their state law claims.

As an initial matter, the Court notes that the Notice of Claim requirements set forth in N.Y. Gen. Mun. Law §§ 50-e and 50-i apply only to tort actions.  *See, e.g., Flaherty v. Massapequa Public Sch.*, 08-CV-2298, 2010 WL 4639313, at *5 (E.D.N.Y. Nov. 9, 2010) ("Section 50-e explicitly applies only to tort claims."); *EUA Cogenex Corp. v. N. Rockland Cent. Sch. Dist.*, 124 F. Supp.2d 861, 863-64 (S.D.N.Y. 2000) (noting that Section 50-e applies only to tort claims, and that Section 3813 applies to all state claims asserted against a school district). Here, Plaintiffs' claims under the NYHRL and NYCRL are not based in tort.  *See Baker v. Cnty.*

14

*of Monroe*, 47 F. Supp.2d 371, 375 (W.D.N.Y.1999) ("The Notice of Claim provisions of

General Municipal Law section 50-i do not apply to a N.Y. Human Rights Law, Executive Law

section 296, cause of action."); *Dimonda v. New York City Police Dep't*, 94-CV-0840, 1996 WL

194325, at \*6 (S.D.N.Y. Apr.22, 1996) ("[T]he most recent case law from the Appellate Division

of the New York State Supreme Court . . . hold[s] that the notice of claim provisions embodied

in §§ 50-e and 50-i are not applicable to claims of discrimination brought pursuant to Executive

Law § 296"); *Liu v. New York City Police Dept.*, 216 A.D.2d 67, 67 (N.Y. App. Div. 1 Dept.

1995) ("Contrary to defendants' claim, actions against the municipality to recover for Federal

and State civil rights violations are not subject to the notice of claim requirements in General

Municipal Law § 50-i.").  As a result, Plaintiffs were not required to comply with the Notice of

Claim requirements set forth in N.Y. Gen. Mun. Law §§ 50-e and 50-i before asserting in this

action their state law claims under NYHRL and NYCRL.

   Having said that, Plaintiff A.E.P. also asserts a claim under Article 1 § 8 of the New York

State Constitution.  The New Court of Appeals has held that the notice-of-claim provisions of the

General Municipal Law § 50-i are applicable to a cause of action for "constitutional torts" in

violation of the New York State Constitution.  *See 423 S. Salina Street, Inc. v. City of Syracuse*,

68 N.Y.2d 474, 489 n.5 (N.Y. 1986), *cert. denied*, 481 U.S. 1008 (1987).  As a result, the Court

finds that Plaintiffs' failure to file a notice of claim is fatal to Plaintiff A.E.P.'s claim under

Article 1 § 8 of the New York State Constitution.  *See O'Brien v. City of Syracuse*, 54 N.Y.2d

353, 358 (1981) (dismissing tort claim based on plaintiff's failure to file notice of claim because

it "is a condition precedent to bringing a tort claim against a municipality[,]").  As a result,

Plaintiff A.E.P.'s claim under Article 1 § 8 of the New York State Constitution is dismissed.

Turning to the Notice of Claim requirement set forth in N.Y. Educ. Law § 3813, the Court notes that this requirement applies only to certain claims brought against any "school district, board of education, board of cooperative educational services, school provided for in [certain state statutes] or any officer of a school district, board of education, board of cooperative educational services, or school provided for in [certain state statutes]."  N.Y. Educ. Law § 3813. Under New York law, a school "officer" is defined to include any of the following:

> a clerk, collector, or treasurer of any school district; a trustee; a member of a board of education or other body in control of the schools by whatever name known in a . . . central school district . . .; a superintendent of schools; a district superintendent; a supervisor of attendance or attendance officer; or other elective or appointive officer in a school district whose duties generally relate to the administration of affairs connected with the public school system.

N.Y. Educ. Law § 2(13).

With regard to Plaintiff Pratt's claims under NYHRL and NYCRL, those individual-capacity claims are asserted against only Defendants Turner, Gray, Henderson, Moore, and Davis–none of whom are "officers" as that term is defined under New York law.  Rather, Defendant Davis was the Assistant Principal of Indian River High School when Plaintiff Pratt was a student;[5] Defendant Moore was a guidance counselor when Plaintiff Pratt was in Middle School; and Defendants Turner, Gray, and Henderson were District employees whose primary responsibility included monitoring student conduct at the High School.  *See Spencer v. City of New York*, 06-CV-2852, 2007 WL 1573871, at *3 (S.D.N.Y. May 30, 2007) (concluding that the

---

[5]      *See, e.g., Carlson v. Geneva City Sch. Dist.*, 679 F. Supp. 2d 355, 367 (W.D.N.Y. 2010) (agreeing with other district courts that have held that "a principal is not an officer of a school district"); *Richards v. Calvet*, 99-CV-12172, 2005 WL 743251, at *13 (S.D.N.Y. Mar. 31, 2005) (concluding that §3813 notice was not required for claims against school principal because school principals are not officers within the meaning of § 3813).

Notice of Claim provision in § 3813(1) does not apply to school employees who are not school officers within the meaning of the statute). As a result, the Court finds that Plaintiffs were not required to comply with the Notice of Claim requirements set forth in N.Y. Educ. Law § 3813 before asserting in this action Plaintiff Pratt's state law claims.

Finally, with regard to Plaintiff A.E.P.'s remaining state law claims (i.e., her claims under NYHRL and NYCRL), these claims are asserted against, among others, the District and the Board. As a result, the notice requirement set forth in § 3813 may only be excused if the Court concludes that Plaintiff A.E.P.'s claims seek to vindicate the public interest. *See Union Free Sch. Dist. No. 6 of Towns of Islip & Smithtown v. New York State Human Rights Appeal Bd.*, 35 N.Y.2d 371, 379-380 (N.Y. 1974); *Yagan v. Bernardi*, 256 A.D.2d 1225, 1225 (N.Y. App. Div. 4 Dept. 1998) ("[T]he notice of claim requirement in Education Law § 3813(1) does not apply where . . . a party seeks to vindicate a public interest.").

Plaintiff A.E.P.'s NYHRL and NYCRL claims arise out of her allegation that certain Defendants discriminated against her by, *inter alia*, not granting equal recognition and benefits to the student GSA. As a result, Plaintiff A.E.P. seeks injunctive relief requiring Defendants to provide the GSA with rights and benefits equal to those afforded other student organizations. Although Plaintiff A.E.P.'s claims are not asserted on behalf of a class, the Court finds–at least for purposes of the current motion and based on the current briefing by the parties– that Plaintiff A.E.P. has alleged facts plausibly suggesting that requiring Defendants to provide the GSA with rights and benefits equal to those afforded other student organizations vindicates a public interest. *Cf. Union Free Sch. Dist. No. 6 of Towns of Islip & Smithtown*, 35 N.Y.2d at 380 (concluding that claim asserted by N.Y. Division of Human Rights "on behalf of a class of women plaintiffs alleging that the school board's policy with respect to maternity leave was

17

discriminatory" was in the public interest).  As a result, the Court finds (again, for purposes of

the current motion and based on the current briefing by the parties) that Plaintiffs were not

required to comply with the Notice of Claim requirements set forth in N.Y. Educ. Law § 3813

before asserting in this action Plaintiff A.E.P.'s NYHRL and NYCRL claims.

**2.     Whether Plaintiffs' Claims Under NYHRL and NYCRL Are Barred
        by the Applicable Statute of Limitations**

Contrary to Defendants' argument, claims brought under NYHRL and NYCRL are

subject to a three-year statute of limitations.  N.Y. C.P.L.R. § 214(2); *see also Butler v. New*

*York Health & Racquet Club*, 08-CV-0591, 2011 WL 310333, at *15 (S.D.N.Y. Jan. 26, 2011)

("The statute of limitations is three years for claims brought under . . . the NYSHRL"); *Howe v.*

*Town of Hempstead*, 04-CV-0656, 2006 WL 3095819, at *9 n.7 (E.D.N.Y. Oct. 30, 2006)

("Section 296 of the New York State Human Rights Law, N.Y. Exec. Law § 296, . . . and New

York Civil Rights Law § 40-c allow three years from the date of injury caused by

discrimination.").  Moreover, pursuant to N.Y. C.P.L.R. § 208, the statute of limitations does not

expire until three years after the expiration of a disability, which includes infancy.  For these

reasons, the Court finds that, because Plaintiff Pratt turned eighteen on August 16, 2006, his state

law claims, which were filed on April 8, 2009, are timely.

**3.     Whether Plaintiffs' State Law Claims Should Be Dismissed Pursuant
        to Fed. R. Civ. P. 12(b)(6)**

**a.     Plaintiffs' Claims Under NYHRL**

As stated above in Part I.D. of this Decision and Order, Defendants argue that Plaintiffs'

claims under NYHRL should be dismissed because a school district is not an "education

corporation or association" within the contemplation of NYHRL, and therefore the statute does

not apply to claims by students alleging discrimination by public school districts.

18

Based on the Second Department's holding in *E. Meadow Union Free Sch. Dist. v. NYS Div. of Human Rights*, 65 A.D.3d 1342 (N.Y. App. Div. 2nd Dept. Sept. 29, 2009), *leave to appeal denied by* 14 N.Y.3d 710 (N.Y. May 6, 2010), the Court accepts Defendants' argument with regard to the District.[6]  The Court would add only two points.  First, Defendants' Amended Answer cures the former pleading deficiency that existed in Defendants' original Answer (where they admitted that the District is a non-sectarian, tax-exempt "education corporation and association").  (Dkt. No. 69, at ¶ 6.)  Second, while the Court has serious reservations in concluding that NYSHRL § 296(4) does not apply to public school districts, it is not prepared to disturb the Second Department's interpretation of New York law when the New York Court of Appeals has already declined to do so.

_____

[6]      In *East Meadow*, the Second Department noted that "the language of section 296(4) . . . prohibits various forms of discrimination by 'an education corporation or association which holds itself out to the public to be non-sectarian and exempt from taxation pursuant to the provisions of article four of the real property tax law." *E. Meadow Union Free Sch. Dist.*, 65 A.D.3d at 1343.  The court further noted that "[t]he terms 'education corporation' and 'education association' are not defined by the Executive Law." *Id*.  As a result, for a definition of these terms, the court turned to "[t]he General Construction Law, which establishes the meaning of terms not otherwise defined by statute . . . ." *Id*.  Although the General Construction Law did not define the term "education association," the court noted that "[a] corporation and an association . . . are different things. . . [and] [s]ince a School District is a corporation . . . it is not an association." *Id*.  The court further noted that the General Construction Law defines both "education corporation" and "school district," and "establishes that they are mutually exclusive." *Id*.  Specifically, the court stated as follows:

> Pursuant to General Construction Law § 65 (a), a corporation is either a public corporation, a corporation formed other than for profit, or a corporation formed for profit . . . ; it cannot be more than one of these. An "education corporation" is a type of corporation formed other than for profit . . . [and] [a] "school district," by contrast, is a type of "municipal corporation."  Since a "municipal corporation" is a public corporation . . ., a school district is a public corporation.  Hence, a school district cannot be an "education corporation" within the meaning of Human Rights Law § 296 (4).

*Id*.  As a result, the court concluded that "the School District . . . is not an 'education corporation or association' within the meaning of Executive Law." *Id*. at 1344.

In addition, having found that NYHRL § 296(4) does not apply to the District, the Court finds that Plaintiffs' aiding and abetting claims against the individual Defendants must be dismissed. *See, e.g.*, *DeWitt v. Lieberman*, 48 F. Supp.2d 280, 293 (S.D.N.Y. 1999) (noting that, when a plaintiff asserts a claim of aiding and abetting liability under the NYHRL, "liability must first be established as to the employer/principal before accessorial liability can be found as to an alleged aider and abettor"). In reaching this conclusion, the Court pauses to note that apparently the law in the Circuit is still that "a defendant who actually participates in the conduct giving rise to a discrimination claim may be held personally liable under [§ 296(6), the aiding and abetting provision,]"[7] even when the employer has been found not liable for discrimination. *See Evans-Gadsden v. Bernstein Litowitz Berger & Grossman, LLP*, 332 F. Supp.2d 592, 598 (S.D.N.Y. 2004) ("Pursuant to § 296(6), one of two showings must be made: (1) that the employer has already been found liable for discrimination; or (2) a lesser showing, that the individual employee participated in the conduct giving rise to the discrimination claim."). However, where, as here, NYHRL does not even apply to the employer, a finding that the statute nonetheless applies to its employees flies in the face of logic. As a result, for purposes of the current motion and based on the current briefing by the parties, the Court finds to be inapposite those cases holding that employees may be liable for aiding and abetting each other, even when the NYHRL claim against the employer has been dismissed (on the merits or on grounds of qualified, absolute or sovereign immunity).

For these reasons, Plaintiffs' claims under NYHRL are dismissed.

---

[7]      *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir.1995) (holding that individuals cannot be held personally liable for either Title VII or NYHRL sexual harassment or hostile work environment violations, but may be liable under the aiding and abetting provision set forth in NYHRL § 296[6]), *abrogated on other grounds, Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998).

### b.      Plaintiffs' Claims Under NYCRL

As stated above in Part I.D. of this Decision and Order, Defendants argue that Plaintiffs' claims under the NYCRL should be dismissed because Plaintiffs failed to allege facts plausibly suggesting that any Defendant engaged in any act that placed any person in reasonable fear of physical injury.  Based on the current record, the Court rejects Defendants' argument.

NYCRL § 40-c(2) states as follows:

> [n]o person shall, because of race, creed, color, national origin, sex, marital status, sexual orientation or disability, as such term is defined in section two hundred ninety-two of the executive law, be subjected to any discrimination in his or her civil rights, *or* to any harassment, as defined in section 240.25 of the penal law, in the exercise thereof, by any other person or by any firm, corporation or institution, or by the state or any agency or subdivision of the state.

NYCRL § 40-c(2) (emphasis added).  In other words, a plaintiff may state a claim for violation of NYCRL § 40-c(2) by alleging either (1) that he was subjected to discrimination of his civil rights, *or* (2) that he was subjected to harassment while exercising his civil rights.

Here, Plaintiffs' Amended Complaint alleges that Defendants violated NYCRL § 40-c(2) by subjecting Plaintiff Pratt to discrimination based on sex and sexual orientation, and violated NYCRL § 40-d by aiding and inciting others to do the same.  (Dkt. No. 47, at ¶¶ 196, 197, 203, 204.)  In addition, Plaintiffs' Amended Complaint alleges that Defendants violated NYCRL § 40-c(2) by subjecting Plaintiff A.E.P. to discrimination on the basis of perceived sexual orientation and anti-gay animus.  (*Id*. at ¶ 215.)  Such allegations plausibly suggest claims under NYCRL § 40-c(2) and § 40-d.

For these reasons, Plaintiffs' claims under NYCRL survive Defendants' motions to dismiss.

**B.      Plaintiff Pratt's Claim Under Title IX**

As stated above in Part I.D. of this Decision and Order, Defendants seek the dismissal of Plaintiff Pratt's Title IX claim because Plaintiffs failed to allege facts plausibly suggesting that Plaintiff Pratt was (1) discriminated against because of his sex, (2) subjected to a hostile educational environment of which Defendants were made aware, or (3) treated less favorably than similarly situated individuals who did not share a protected status with him.  Based on the current record, the Court rejects each of Defendants' arguments.

"In order to state a claim under Title IX, a plaintiff must allege that []he has been 'excluded from participation in, . . . denied the benefits of, or . . . subjected to discrimination under' any educational program receiving federal funding on the basis of gender." *Crandell v. New York Coll. of Osteopathic Med.*, 87 F. Supp.2d 304, 314 (S.D.N.Y. 2000) (quoting 20 U.S.C. § 1681[a]).  "'Discrimination' is defined as disparate provision of programs, aid, benefits or services or inequitable application of rules or sanctions." *Crandell*, 87 F. Supp.2d at 314 (quoting 45 C.F.R. § 86.31 [2000]).  "It includes both quid pro quo and hostile educational environment sexual harassment." *Id.*  Plaintiff Pratt's Title IX claim appears based primarily on a theory of hostile educational environment.

"[U]nder Title IX, a plaintiff may state a claim of discriminatory harassment based upon a hostile educational environment by alleging th[e following]: (1) []he is a member of a protected group; (2) []he was subjected to unwelcome sexual harassment in the form of sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature; (3) the harassment was based on sex; (4) the harassment was sufficiently severe or pervasive so as to alter the conditions of h[is] education and create an abusive educational environment; and (5) some basis for institutional liability has been established." *Folkes v. New York Coll. of*

*Osteopathic Med. of New York Inst. of Tech.*, 214 F. Supp.2d 273, 281 (E.D.N.Y. 2002).[8]

"To establish institutional liability for sexual harassment under Title IX, the plaintiff must show that 'an official who . . . has authority to address the alleged discrimination and to institute corrective measures on the [institutional] recipient's behalf has actual knowledge of discrimination . . . and fails adequately to respond.'" *Folkes*, 214 F. Supp.2d at 282 (quoting *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 [1998]).  "Moreover, the official's response 'must amount to deliberate indifference to discrimination.'"  *Id.* (quoting *Gebser*, 524 U.S. at 290).

A sex stereotyping claim is legally cognizable under Title VII.  *See Price Waterhouse v. Hopkins*, 490 U.S. 228, 251-52 (1989) (holding that harassment based on sex stereotyping constituted discrimination on the basis of sex under Title VII).  Similarly, harassment based on nonconformity with sex stereotypes is a legally cognizable claim under Title IX.[9]  *See Riccio v. New Haven Bd. of Educ.*, 467 F. Supp. 2d 219, 226 (D. Conn. 2006) ("The language set forth in

---

[8]     In undergoing this analysis, it is important to keep in mind that a hostile environment claim may span transitions between classrooms, grades, and schools.  *See Riccio*, 467 F. Supp. 2d at 227 (noting that the "term 'pervasive' implies that something is widespread," which includes harassment that followed the plaintiff from school to school, from eighth grade to ninth); *Theno v. Tonganoxie Unified Sch. Dist. No. 464*, 377 F. Supp. 2d 952, 968 (D. Kan. 2005) (holding that a rational trier of fact could find that harassment was pervasive because it transcended from one school to another and continued unabated throughout the school year); *cf. Davis*, 526 U.S. at 633-35, 653-54 (holding that a Title IX claim based student-on-student harassment spanning the winter holidays and spring break was sufficient to survive a motion to dismiss for failure to state a claim).

[9]     Courts examine Title VII precedent when analyzing discrimination "on the basis of sex" under Title IX.  *See Davis, Davis v. Monroe Co. Bd. of Educ.*, 526 U.S. 629, 631 (1999) (holding that Title VII agency principles do not apply under Title IX, however Title VII precedent was relevant to expound on gender-based harassment); *Franklin v. Gwinnett Cnty. Pub. Schs.*, 503 U.S. 60, 74 (1992) (concluding that Title VII precedent was the basis for recognizing a Title IX private cause of action for sexual harassment).

the OCR Guidance and the holding in Oncale clearly support the conclusion that a female

student, subjected to pejorative, female homosexual names by other female students, can bring a

claim of sexual harassment under Title IX.").  In addition, allegations of harassment based on

sexual orientation do not defeat a sex stereotyping harassment claim.  *See Riccio*, 467 F. Supp.

2d at 226.

Defendants do not dispute that the District is a recipient of federal education funding.

Moreover, Plaintiffs have alleged facts plausibly suggesting that Plaintiff Pratt was harassed and

discriminated against based on his sex, including nonconformity, or perceived nonconformity, to

sexist stereotypes.  For example, Plaintiffs have alleged that "aspects of [Plaintiff Pratt's]

expressive gestures and manner of speaking were of a nature stereotypically associated with

females[,]" and, based on the nonconformity, or perceived nonconformity, Plaintiff Pratt was

repeatedly called names like "pussy," "sissy," and "girl," and was mocked with effeminate

gestures.  (Dkt. No. 47 at ¶¶ 20, 35-39, 54, 59.)  Furthermore, Plaintiffs have alleged facts

plausibly suggesting that the harassment was severe and pervasive enough to cause Plaintiff Pratt

to withdraw from school.  (*Id*. at ¶¶ 76-79.)  Finally, Plaintiffs have alleged facts plausibly

suggesting that the Board and District had actual knowledge that Plaintiff Pratt was being

harassed, yet failed to respond to the sexist harassment despite responding to harassment of other

students on other grounds.  (*Id*. at ¶¶ 122, 130-31.)

For these reasons, Plaintiffs' Title IX claim survives Defendants' motions to dismiss.

**C.**     **Plaintiff Pratt's Claims Under the Equal Protection Clause**

As stated above in Part I.D. of this Decision and Order, Defendants seek the dismissal of

Plaintiff Pratt's equal protection claims because (1) the Supreme Court does not consider

individuals classified based on sexual orientation to be part of a suspect class, (2) Plaintiffs

24

failed to allege facts plausibly suggesting that the District enacted a classification based on sexual orientation, and (3) Plaintiffs failed to allege facts plausibly suggesting the existence of a hostile educational environment.  Based on the current record, the Court rejects Defendants' arguments.

As an initial matter, Defendants are correct that the Supreme Court has not recognized sexual orientation as a suspect classification, warranting strict scrutiny.  *See, e.g., Price-Cornelison v. Brooks*, 524 F.3d 1103, 1113 n.9 (10th Cir. 2008) (collecting cases). However, if the State (or one of its agencies) violates the Equal Protection Clause by creating a disadvantage for homosexuals, the State's conduct must have a "rational relationship to legitimate governmental aims."  *Johnson v. Johnson*, 385 F.3d 503, 532 (5th Cir. 2004); *see also Quinn v. Nassau Cnty. Police Dep't*, 53 F. Supp.2d 347, 356-57 (E.D.N.Y. 1999) (noting that the Supreme Court has found that government discrimination against homosexuals, in and of itself, violates the Equal Protection Clause) (citing *Romer v. Evans*, 517 U.S. 620 [1996]).

Here, Plaintiffs have alleged facts plausibly suggesting that the District, the Board, and Defendants Kettrick, Decker, Davis, Turner, Gray, Henderson, and Moore discriminated against Plaintiff Pratt because of his sex and sexual orientation, and were deliberately indifferent to antigay harassment of him by other students and faculty.  (Dkt. No. 47 at ¶¶ 1-2, 4, 20, 34 & n.1, 37-40, 46, 50, 53-55, 57, 59, 65-66, 71, 92-93, 121, 129-31, 165-67.)  Moreover, as noted above in Part III.B. of this Decision and Order, Plaintiffs have alleged facts plausibly suggesting that the harassment (based on Plaintiff Pratt's sex and sexual orientation) was severe and pervasive enough to cause Plaintiff Pratt to withdraw from school.[10]  In addition, Plaintiffs have alleged

---

[10]     "Section 1983 sexual harassment claims that are based on a 'hostile environment' theory . . . are governed by traditional Title VII 'hostile environment' jurisprudence."  *Hayut v.*

facts plausibly suggesting that the individual Defendants had actual knowledge that Plaintiff

Pratt was being harassed, yet failed to take remedial action.  (Dkt. No. 47 at ¶¶ 41, 58-59, 65,

122, 130-31.)[11]  For these reasons, Plaintiffs' equal protection claims survive Defendants'

motions to dismiss.[12]

### D.    Plaintiffs' Claims Under the First Amendment and EAA

As stated above in Part I.D. of this Decision and Order, Defendants seek the dismissal of

Plaintiffs' claims under the First Amendment and EAA because a GSA Club of the type

referenced in the Amended Complaint is currently operating in the District, and therefore these

claims are moot.  Defendants further argue that Plaintiffs have failed to allege facts plausibly

suggesting a claim under the First Amendment.

---

*State Univ. of New York*, 352 F.3d 733, 744-45 (2d Cir.  2003) (citations omitted) (relying on Title VII hostile environment precedent to define the legal standard under the Equal Protection Clause); *Sauerhaft v. Bd. of Educ. of the Hastings-On-Hudson Union Free Sch. Dist.*, 05-CV-9087, 2009 WL 1576467, at *6 n.11 (S.D.N.Y. June 2, 2009) (applying same standard under Title IX and the Equal Protection Clause in its analysis of severity and pervasiveness).

[11]    The Court recognizes that Plaintiffs have also alleged equal protections claims based on (1) Defendant Kettrick's refusal to allow a student GSA, and (2) direct harassment carried out by Defendants Gray and Turner.  However, because Defendants' motions to dismiss do not specifically address the merits of these claims, the Court need not, and does not, address them in this Decision and Order.

[12]    The Court rejects Defendants' argument that they are entitled to qualified immunity because, contrary to Defendants' belief, at the time of the alleged conduct, it was clearly established that "discrimination on the basis of sexual orientation could violate the Equal Protection Clause of the Constitution."  *Pugliese v. Long Island R.R. Co.*, 01-CV-7174, 2006 WL 2689600, at *5 (E.D.N.Y. Sept. 19, 2006) (rejecting defendants' qualified immunity argument because "[t]he existence of a high profile and widely publicized case, such as *Romer* [*v. Evans*, 517 U.S. 620 (1996)], is sufficient notice of the potential for a constitutional violation . . . [and] [i]t [wa]s therefore . . . objectively reasonable that [defendants] should have been aware of the legal implications of discriminating on the basis of sexual orientation").

With regard to Defendants' first argument, for the sake of brevity, the Court will set aside the fact that this argument is based on record evidence that the Court has already found to be impermissible for purposes of the pending motions. *See*, *supra*, Part III of this Decision and Order. Rather, the Court will proceed to the merits of Defendants' argument.

As an initial matter, "voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice" unless it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 189 (2000); *accord Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 127 S.Ct. 2738, 2751 (2007). The party asserting voluntary cessation bears the burden of showing that "(1) there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Lamar Adver. v. Town of Orchard Park*, 356 F.3d 365, 375 (2d Cir. 2004).

Here, Plaintiffs concede that a GSA Club of the type referenced in the Amended Complaint is currently operating in the District. However, Plaintiffs allege in their Amended Complaint that the "District still does not grant equal recognition and benefits to the student GSA." (Dkt. No. 47 at ¶ 104.) This allegation goes beyond a mere allegation that the GSA Club has not been permitted to operate in the District, and extends to an allegation that the GSA Club does not enjoy recognition and benefits equal to those of other school clubs in the District. Such an allegation is not addressed by Defendants' argument.

Furthermore, even assuming, for the sake of argument, that Defendants have established that the GSA Club receives benefits, rights, and privileges on an equal basis to that afforded other students and student groups, Plaintiffs' claim for money damages based on Defendants'

27

unequal treatment leading up to the point of equal treatment remains meritorious.  *See Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health*, 532 U.S. 598, 608-09 (2001) (holding that, "so long as the plaintiff has a cause of action for damages, a defendant's change in conduct will not moot the case"); *Alive v. Hauppauge Sch. Dist.*, 08-CV-1068, 2009 WL 959658, at *4 (E.D.N.Y. Apr. 6, 2009) (noting that "Second Circuit precedent adopts a broad view of this rule, indicating that claims for nominal damages are sufficient to prevent mootness, provided that some form of damages are specifically sought in the complaint").  For each of these reasons, the Court rejects Defendants' first argument.

Turning to Defendants' second argument (i.e., regarding the pleading sufficiency of Plaintiffs' First Amendment claim),[13] Defendants argue that Plaintiffs' Amended Complaint fails to state a claim under the First Amendment because the District need not maintain the limited public forum of extracurricular activities.  The Court agrees with Defendants that the District is not required to maintain the limited public forum of extracurricular activities.[14]  However, Plaintiffs do not dispute this point of law.  Rather, Plaintiffs allege that Defendants have violated their rights under the First Amendment by maintaining a limited public forum (comprised of extracurricular student groups permitted to meet on school premises and access certain privileges and resources), and discriminating against them (by refusing to allow Plaintiff Pratt to form a

---

[13] Defendants do not argue that Plaintiffs' EAA claim should be dismissed for failure to state a claim upon which relief can be granted.  As a result, the Court need not, and does not, consider whether Plaintiffs' EAA claim states a claim upon which relief can be granted.

[14] *Byrne v. Rutledge*, 623 F.3d 46, 54 (2d Cir. 2010) ("[T]he government may permissibly restrict content by prohibiting *any* speech on a given topic or subject matter.") (emphasis in original); *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 106 (2001) ("The State may be justified 'in reserving [its forum] for certain groups or for the discussion of certain topics.'").

GSA, refusing to allow a GSA to meet at school or otherwise have official recognition, and threatening to close the existing GSA) based on the viewpoint of their intended speech.  (Dkt. No. 47 at ¶¶ 92, 140, 142, 150, 154, 159.)[15]  These allegations plausibly suggest a claim under the First Amendment.[16]  For these reasons, the Court rejects Defendants' second argument.

As a result, Plaintiffs' claims under the First Amendment and EAA survive Defendants' motions to dismiss.

### E.    Plaintiffs' Claim for Punitive Damages Against the District

As stated above in Part I.D. of this Decision and Order, Defendants argue that Plaintiffs' claim for punitive damages must be dismissed because they may not be imposed against a school district.  The Court agrees with Defendants.  *See Pierce ex rel. Pierce v. Sullivan W. Cent. Sch. Dist.*, 379 F.3d 56, 58 n.3 (2d Cir. 2004) (citing *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247 [1981]).  As a result, Plaintiffs' claim for punitive damages against the District is dismissed.

---

[15]    Plaintiffs allege that the "purpose" of the GSA was (and is) "to educate the school community about the importance of tolerance, inclusion, and respect–regardless of sexual orientation, gender identity, and gender expression–and to bring attention to the harmful consequences of discriminatory conduct."  (Dkt. No. 47, at ¶ 85.)

[16]    *Good News Club*, 533 U.S. at 108-11 (concluding that New York State school district had engaged in viewpoint discrimination by refusing to allow a private Christian organization for children to hold weekly after-school meetings in the limited public forum of school cafeteria because school district acknowledged it would allow other groups that taught or promoted to children moral and character development to use the school building); *see also Gay-Straight Alliance of Yulee High Sch. v. Sch. Bd. of Nassau*, 602 F. Supp.2d 1233, 1237-38 (M.D. Fla. 2009) (concluding that high school students were likely to succeed on merits of their claim that school board's denial of their application to form organization focusing on combating antigay harassment and discrimination and educating school community about those issues violated EAA and First Amendment despite board's contentions that organization would be disruptive, there was no limited open forum at high school regarding sexual orientation discussion, and group's message violated state's abstinence only policy); *accord, Boyd Cnty. High Sch. Gay Straight Alliance v. Bd. of Educ. of Boyd Cnty.*, 258 F. Supp.2d 667, 688-91 (E.D. Ky. 2003).

**ACCORDINGLY,** it is

**ORDERED** that Defendants' motions for summary judgment (Dkt. Nos. 30, 56) are

**DENIED** without prejudice; and it is further

**ORDERED** that Defendants' motions to dismiss for failure to state a claim (Dkt. Nos.

30, 56) are **GRANTED in part** and **DENIED in part** in the following respects:

(1) Plaintiffs' claims under the NYHRL, Plaintiff A.E.P.'s claim under Article 1 § 8 of

the New York State Constitution, and Plaintiffs' claim for punitive damages against the

District are **DISMISSED** for failure to state a claim upon which relief can be granted;

and

(2) the remainder of Plaintiffs' claims survive Defendants' motions to dismiss for failure

to state a claim.

Dated: March 28, 2011
        Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge