## THE LAW FIRM OF FRANK W. MILLER
*Attorneys and Counselors at Law*
6575 Kirkville Road
East Syracuse, New York 13057
Telephone: (315) 234-9900
Fax: (315) 234-9908
cspagnoli@fwmillerlawfirm.com

Frank W. Miller

---

J. Ryan Hatch
Bryan N. Georgiady
John A. Sickinger
Charles C. Spagnoli

December 14, 2011

*Via Electronic Filing*

Hon. George H. Lowe
United States Magistrate Judge
Northern District of New York
James Hanley Federal Building
Syracuse, New York

    Re:    **Charles Patrick Pratt and A.E.P., v. Indian River Central School District, Kettrick, Decker, Brown, Davis, Gray, Turner, Henderson, and Moore**
**Northern District of New York**
**Case No.: 7:09-CV-411 (GTS/GHL)**

Dear Judge Lowe:

    We represent the Defendants in this matter. This letter is to request the Court's direction at the upcoming December 15, 2011 status conference respecting discovery issues arising out of certain disagreements between counsel for the Defendants and counsel for the Plaintiffs. We are presenting this letter in lieu of a formal motion in the hope that the Court's informal guidance will assist the parties in reaching a voluntary, mutual resolution of these issues.

    Although the parties have made substantial progress in addressing discovery issues between them, certain disagreements remain despite considerable correspondence and discussion. Defendants request the Court's direction respecting discovery issues arising in connection with three main issues:

    1.    Plaintiffs' failure to provide specific information in response to key interrogatories;

    2.    Plaintiffs' refusal to provide authorizations for the release to Defendants of Plaintiff Charles Pratt's medical records; and

Hon. George H. Lowe
December 14, 2011
Page 2

      3.      The parties' disagreement concerning an e-mail received by an employee of Defendant Indian River Central School District ("District") which is presented with this letter (herein the "Matthew e-mail"), and Plaintiffs' contentions regarding its relevance and Defendants' preservation obligations.

This letter will address each issue in turn.

Plaintiffs' Failure to Provide Specific Information in Response to Key Interrogatories

Plaintiffs have alleged that student-on-student harassment based on sexual orientation and gender occurred at the District on a regular basis over a period spanning more than ten years. In discovery responses they have listed approximately twenty-five students who allegedly have information regarding harassment, forty-eight students who allegedly engaged in harassment, and twenty teachers or staff members who allegedly have information regarding harassment.

However, the information they have provided is virtually all in generalized form – along the lines of "Students ridiculed and taunted me with exaggerated effeminate gestures, offensive gestures, and physical harassment and threats" – and they have connected specific individuals to specific incidents in a grand total of three cases. A sample of the alleged incidents regarding which no specific information has been provided are:

    1.    A student threatened Plaintiff Pratt's life;

    2.    Students pushed Plaintiff Pratt into a box;

    3.    A student mocked Plaintiff Pratt when he had a skin treatment that left white residue on his face.

It simply defies common sense that Plaintiff Pratt has no recollection of any of these individuals' identities. Nor has Plaintiff Pratt stated that he has no recollection of their identities.

In a November 30, 2011 letter, the undersigned requested specific information be provided regarding these alleged incidents and others. By letter dated December 13, 2011, and received this date, Plaintiffs' counsel refused to provide same unless Defendants provided further detail with respect to *their* interrogatory responses, although Plaintiffs provided no basis to assert that Defendants had failed to provide all information in their possession.

Plaintiffs' discovery responses included 750 pages of documents – the majority of which were originally obtained from the District itself – and, as noted above, lists of individuals who allegedly engaged in or witnessed harassment, with specific incidents connected to specific individuals in only three cases. Defendants have produced documents in electronic form comprising eighty-six files and nearly 400 megabytes of information – that is, thousands of pages. In response to Plaintiffs' grossly overbroad interrogatories demanding information

regarding every known instance of alleged harassment or bullying at the District, Defendants provided hundreds of disciplinary notices and detailed information in text form spanning *thirteen single-spaced pages*. The undersigned personally spent approximately thirty hours preparing supplemental and revised discovery responses to address requests made by Plaintiffs' counsel.

After this show of good faith, for Plaintiffs to refuse to provide the most basic information concerning their claims unless Defendants provide *yet more* irrelevant information first, is untenable and not calculated to encourage Defendants to continue their cooperative approach to these issues. The information Defendants seek is critical to prepare for the deposition of Plaintiff Pratt. Defendants request that Plaintiffs be required to provide the information in their possession.

Authorizations for the Release of Plaintiff Pratt's Medical Records

Plaintiff Pratt has alleged that he has suffered "extreme emotional distress" which led, among other things, to his experimentation with alcohol and drugs. Plaintiffs have produced medical records in their possession, but, of course, Defendants are not obligated to rely on Plaintiffs' counsel to obtain medical records for them. By e-mail dated December 8, 2011, the undersigned requested that Plaintiff Pratt execute authorizations permitting Defendants to obtain medical records from five specified care providers who had been identified as providing care in connection with Plaintiff Pratt's alleged emotional health issues and resulting substance abuse problems.

Plaintiffs' counsel's letter of December 13 refused to provide such authorizations, arguing that Plaintiffs' counsel had agreed to provide additional records if they obtained same, and further objecting that Defendants should not be able to obtain all of Plaintiff Pratt's records from the entities in question.

The state of the law on this issue is clear and can be reviewed in a formal motion if necessary. In particular, Defendants should not be forced to rely on Plaintiffs' counsel to obtain full sets of medical records, or to determine what is and what is not relevant in connection with their client's emotional distress claim. These are not hospitals; they are four substance abuse treatment centers and a psychiatrist. Defendants request the Court's assistance in obtaining Plaintiffs' voluntary cooperation in providing such authorizations.

The "Matthew E-mail"

As noted above, this dispute concerns the "Matthew e-mail" presented with this letter. The e-mail was received by a District employee on or about September 22, 2010, after this litigation was commenced but before Plaintiffs served their initial disclosures or discovery demands. It was forwarded to other employees of the District in the normal course of business.

A review of the e-mail (hereinafter the "Matthew e-mail") demonstrates that it represents a former student's offer to speak to the Indian River High School Gay-Straight Alliance ("GSA") about his experiences with HIV and AIDS. Notably, it contains nothing pertaining to the issues raised by Plaintiffs' claims -- to wit, harassment at the District's schools or the formation and official recognition of the GSA. As such, it is the Defendants' position that the Matthew e-mail is not relevant to this litigation, and that no obligation to preserve it existed at the time it was received. Nevertheless, one or more copies of the Matthew e-mail *were* preserved.

On May 30, 2011, Plaintiffs served discovery demands including requests for production. Plaintiffs' requests for production included a broad request for all documents relating to, inter alia, the operations and activities of the GSA. Pursuant to this request, Defendants produced existing copies of the Matthew e-mail in their July, 2011 responses to Plaintiffs' production requests. The Matthew e-mail, however, was inadvertently placed within a PDF file designated as responsive to a different production request.

Plaintiffs observed references to the Matthew e-mail in other documents produced by Defendants in the July, 2011 production, but apparently failed to note that the Matthew e-mail had itself been produced. Their counsel repeatedly claimed that the Matthew e-mail was "not produced," and further complained that relatively few e-mails had been produced by Defendant. In subsequent correspondence they have frequently cited these two circumstances as bases to challenge the adequacy of Defendants' preservation efforts and discovery responses.

In response to Plaintiffs' counsel's concerns, in September, 2011 Defendants produced copies of the Matthew e-mail, and then did so again in November, 2011. The undersigned further pointed Plaintiffs' counsel to the location in the original July, 2011 production where the Matthew e-mail could be found. Defendants' counsel have also repeatedly explained to Plaintiffs' counsel the following reasons that few e-mails responsive to their discovery demands or relevant to this litigation exist:

1. The District did not widely use e-mail until 2005, after the bulk of the events alleged in Plaintiffs' complaints;

2. The District has a practice of not using e-mail to discuss matters involving specific students, including disciplinary matters such as reports of harassment, and that practice has been carefully followed;

3. The District has rarely over the years had any system for backing up e-mails beyond the ability of individual users to delete; and,

4. When it did have such a system, the backups were preserved for only a matter of months, such that anything pertaining to the bulk of the events alleged in Plaintiffs' complaints would have been deleted from the backups long before this litigation commenced in April, 2009.

Hon. George H. Lowe
December 14, 2011
Page 5

Thus, Defendants have repeatedly explained that there should never have been many e-mails relevant to this litigation; that most of the relevant e-mails would normally have been lost or deleted before the litigation commenced; and that Defendants have been diligent in searching for, identifying, preserving, and producing relevant e-mails from what existed as of April, 2009.

Defendants have further pointed out that the Matthew e-mail is not relevant to this litigation, and that in any event the Matthew e-mail was, in fact, produced with Defendants' original production in July, 2011.

Notwithstanding, Plaintiffs continue to insist that the Matthew e-mail is relevant, and that somehow Defendants must have been negligent in preserving and/or producing e-mails, even though they originally took this position based on their mistaken assumption that the Matthew e-mail was not produced with Defendants' July, 2011 discovery responses. Several exchanges of information and arguments have failed to resolve this issue between the parties.

The Defendants therefore request the Court's guidance and assistance at the December 15, 2011 status conference with respect to discovery issues relating to Plaintiffs' position.

Sincerely,

**THE LAW FIRM OF FRANK W. MILLER**

s/Charles C. Spagnoli
Bar Roll No. 507694
Attorneys for Defendants

Cc: Adam Humann, Esq., Kirkland & Ellis, LLP (via e-mail and electronic filing)
Thomas Ude, Esq., Lambda Legal (via e-mail and electronic filing)
William F. Larkin, Esq., U.S. Department of Justice (via electronic filing)